[Doc. Nos. 47, 51, 78]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

CAROL BELL, on behalf of
herself and those similarly
situated,

        Plaintiff,

  v.

LOCKHEED MARTIN CORPORATION,

        Defendant.

Civil No. 08-6292 (RBK/AMD)

**MEMORANDUM OPINION
AND ORDER**

Presently before the Court are two pretrial motions concerning the scope of discovery in this putative class action suit concerning alleged gender discrimination by Defendant, Lockheed Martin Corporation, and a motion concerning the timing of discovery given that the class has not yet been certified pursuant to FED. R. CIV. P. 23. Specifically, Plaintiff, Carol Bell, has filed a motion [Doc. No. 47] seeking to compel Defendant to produce company-wide discovery, including information relating to other Business Areas of Defendant and job levels higher than the positions held by Plaintiff, for a time period beyond the temporal scope of production proposed by Defendant. Defendant has filed a motion [Doc. No. 51] seeking a protective order limiting discovery and deposition questions to issues of gender and precluding Plaintiff

from conducting discovery and asking deposition questions about race or age, and a motion [Doc. No. 78] to bifurcate discovery to first address class certification issues, and to address issues solely relating to the merits of this case after the class certification stage.  The Court held oral argument on the motions and has considered the arguments of counsel and the submissions of the parties.  For the reasons that follow, Plaintiff's motion to compel company-wide discovery is granted in part and denied in part, Defendant's motion for a protective order is denied, and Defendant's motion to bifurcate discovery is denied.

Plaintiff initiated this action on December 23, 2008 by filing a complaint asserting a claim under Title VII of the Civil Rights Act of 1964 and 1991 as amended, 42 U.S.C. §§ 2000e et seq. (hereinafter, "Title VII"), on behalf of a putative class defined as "[a]ll persons who are female and who were, are, or will be employed by Lockheed Martin Corporation in 'E' or 'L' designated positions at levels 3, 4, 5 or 6[1] in the United States of America from March 21, 2007, through the date of the final disposition of

---

1. Plaintiff contends that Defendant designates employment positions by code, with positions designated by an "L" for leadership positions, and positions designated by an "E" for exempt positions.  (First Am. Compl. [Doc. No. 17] ¶ 25.)  Each position is also purportedly designated by a numerical code, such that "L3", for example, designates an entry-level leadership position, and any position specified as "L7" or "E7" or above designates a director-level position or above.  (Id. at ¶¶ 25, 26.)

this Action[.]"   (Proposed Second Am. Compl. [Doc. No. 42-3] ¶
20.)[2]   Plaintiff also asserts a claim under the New Jersey Law
Against Discrimination, as amended, N.J. Stat. Ann. § 10:5-1 et
seq. (hereinafter, "NJLAD"), on behalf of a proposed subclass
defined as "[a]ll persons who are female and who were, are, or will
be employed by Lockheed Martin Corporation in 'E' or 'L' designated
positions at level 3, 4, 5 and 6 in the State of New Jersey from
December 23, 2006, through the date of the final disposition of
this Action[.]" (Id. at ¶ 21.)   Plaintiff generally alleges in
this action that Defendant "discriminates against its salaried
female employees by advancing male employees more quickly than
equally or more qualified female employees through middle
management and into upper management level positions, and
discriminates in compensation to these female employees, including
with respect to pay grade, annual and promotional increases, merit
pay increases and bonuses." (First Am. Compl. [Doc. No. 17] ¶ 1.)
Plaintiff further alleges that the disparities between male and
female employees "are the result of policies and practices that

---

2.   Plaintiff refers to the proposed Second Amended Complaint in
her motion papers.  For purposes of these motions, the operative
pleading is the First Amended Complaint filed on March 16, 2009.
However, because the parties consented to the motion to amend
insofar as Plaintiff requests leave to amend the class
definitions, the Court refers herein to the class and subclass as
defined in the proposed Second Amended Complaint.  (See Consent
Order [Doc. No. 191], Apr. 19, 2010.)

purposefully discriminate against women," including a practice whereby open director-level positions and positions considered "stepping stones" to director-level positions are not posted on Defendant's intranet, thereby purportedly precluding female employees from learning about and applying for such positions. (Id. at ¶¶ 1, 39.) Other policies and practices that allegedly discriminate against female employees include purportedly paying female employees less than similarly-situated male employees, assigning female employees lower job classifications and/or salaries within the same job classification than similarly-situated male employees, reliance on "subjective, inconsistently applied criteria in performance reviews, assignments, training, pay and promotional decisions," "reviewing and rating female employees less favorably than men," providing less training and support for female employees, and failing to promote female employees "through middle management and into upper level positions." (Id. at ¶ 51.)

Plaintiff also asserts in the First Amended Complaint individual claims for retaliation and gender discrimination. Specifically, Plaintiff avers that she has worked for Defendant for twenty-one years and is currently employed in Mt. Laurel, New Jersey within the "MS2 business unit of the Electronic Systems

business area of Defendant." (Id. at ¶¶ 53, 54.)[3] Plaintiff avers that from June 2005 to the present, she has held an "L6" position as a Senior Manager, Subcontract Administration who reports to Douglas Goerke, Director of Sourcing. (Id. at ¶ 54.) Plaintiff contends that throughout this period, she has applied for positions "outside her business area, outside her business unit, and outside her then current geographical location," but "[i]n several instances," purportedly less-qualified male applicants were offered the positions. (Id.)

In the motion to compel company-wide discovery, Plaintiff seeks a ruling on "the general scope of discovery" in this action, rather than an order compelling particular responses to Plaintiff's discovery requests. (Mem. of Law in Supp. of Pl.'s Mot. To Compel (hereinafter, "Pl.'s Br.") [Doc. No. 47-2] 2.) The motion is brought because Defendant purportedly provided in discovery only those documents and information relevant to Plaintiff's Business Area, and only with respect to grade levels below the director level, for the period March 20, 2007 to the present, with the exception of data produced from Defendant's human resources

---

3.   Plaintiff avers that Defendant is "organizationally divided into four 'business areas' and a corporate function: Aeronautics, Electronic Systems, Information Systems and Global Services ('IS & GS'), Space Systems, and Corporate (also referred to as Enterprise Operations)." (First Am. Compl. [Doc. No. 17] ¶ 24.) "Each business area includes multiple business units[.] . . ." (Id.)

database, for which Defendant has produced data from March 20, 2007 to March 16, 2009.  (Id. at 3, 21.)[4]  Plaintiff argues that in light of the allegations of the class action complaint, her discovery requests seeking company-wide discovery are relevant under Rule 26 of the Federal Rules of Civil Procedure.  (Id. at 15-16, 18.)  In this regard, Plaintiff contends that she requires information concerning director-level positions to support her allegation that female employees have been denied promotional opportunities or have slower career advancement than male employees.  (Id. at 19.)  Plaintiff also argues that company-wide discovery is necessary to meet the burden required to obtain class certification in light of the Third Circuit's ruling in In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 316 (3d Cir. 2008), because she will need to demonstrate that Defendant's common policies and practices have a disparate impact on females and that there is evidence of a pattern or practice of gender discrimination.  (Id. at 16, 18.)  Additionally, Plaintiff seeks an order defining the relevant time period for production of documents, as Plaintiff sought through her document requests

---

4.   At oral argument, defense counsel represented that Defendant has provided certain corporate policies that apply across-the-board to all Business Areas, but has not produced documents that apply only to those Business Areas in which Plaintiff has not worked.  (Transcript of Jan. 19, 2010 Hearing [Doc. No. 177], at 91:4-17.)

production of documents from March 21, 2005, which is two years prior to the class period defined in the First Amended Complaint, to the present; documents from December 23, 2005, which is one year prior to the subclass period for the NJLAD claims, to the present; and documents from March 1995 through the present for computerized or electronic data and databases. (Id. at 21.)[5] Plaintiff argues that production of such information will not pose an undue burden to Defendant. (Id. at 22-23.)

In opposition, Defendant argues that company-wide discovery is not relevant to Plaintiff's claims because Defendant is comprised of different Business Areas and Business Units, each of which purportedly has discretion to implement policies, practices, and procedures, and consequently information relating to policies and procedures in Business Areas and Business Units other than those in which Plaintiff worked allegedly has no bearing on Plaintiff's claims. (Def.'s Br. in Opp. to Pl.'s Mot. to Compel (hereinafter, "Def.'s Opp. Br.") [Doc. No. 65] 4.) Defendant also argues that Plaintiff's discovery requests are vague and overbroad, requiring

---

5.   Plaintiff represents that she seeks electronic data dating back to 1995 because "that was the date of the merger between Martin Marietta and Lockheed Corporation." (Reply Mem. of Law in Further Supp. of Pl.'s Mot. to Compel Company-Wide Discovery [Doc. No. 104] 8 n.2.) Plaintiff contends that she requires "all data residing on the systems with respect to both Class members and comparators because of the potential significance of experience and job history on any statistical analysis performed." (Id.)

production of substantial amounts of information, and represents that it already spent more than $1.6 million responding to Plaintiff's discovery requests. (Id. at 5-7, 10-11.) Further, Defendant asserts that Plaintiff's alleged "mere conclusory allegations" of a company-wide policy or practice are insufficient to justify broad, company-wide discovery. (Id. at 17.) Defendant also argues that Plaintiff seeks irrelevant discovery and that she is not entitled to discovery about executive-level positions because she does not allege that she applied for such positions. (Id. at 20.) With respect to the temporal scope of discovery, Defendant contends that Plaintiff can only obtain discovery as of March 20, 2007, the beginning of the class period, because discovery purportedly "cannot properly extend to those outside the putative class." (Id. at 16.) Defendant additionally contends that even assuming Plaintiff seeks relevant information, at this stage of the litigation she should only be entitled to discovery on class certification issues. (Id. at 21-23.)[6] Finally, Defendant addresses the purported burden that would be imposed should Defendant be compelled to respond to Plaintiff's discovery requests, and argues that Plaintiff should be required to share in the costs that would be incurred if Defendant is compelled to

---

6.  This argument is the basis of Defendant's motion for bifurcation of discovery and will be addressed infra in the context of the motion to bifurcate.

produce discovery.  (Id. at 26-32.)

In reply, Plaintiff states that Defendant focuses on unrelated issues and fails to address the relevant inquiry – that is, whether the company-wide information sought by Plaintiff is relevant and discoverable. (Reply Mem. of Law in Further Supp. of Pl.'s Mot. to Compel Company-Wide Discovery (hereinafter, "Pl.'s Reply Br.") [Doc. No. 104] 1.)  Plaintiff argues that merits discovery is appropriate at this stage of the litigation because the Court may consider the merits of the case in deciding class certification issues. (Id. at 4.)  Plaintiff disputes that she is entitled only to information about job levels she applied for, arguing that her allegations of company-wide policies entitle her to discovery about director level positions to demonstrate that such policies result in females being denied promotional opportunities and having slower career advancement than male employees.  (Id. at 6.)  Plaintiff also asserts that she is entitled to discovery beyond the class period, including discovery that extends a reasonable number of years prior to the class period.  (Id. at 8.)  Plaintiff challenges Defendant's assertion of burden, arguing that Defendant has not established that production of the discovery sought by Plaintiff would be unduly burdensome.  (Id. at 9-14.)

As this Court set forth in Hite v. Peters, No. Civ. A. 07-4492, 2009 WL 1748860, at *3 (D.N.J. June 19, 2009), "parties may

'obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.] . . .'" Hite, 2009 WL 1748860, at *3 (quoting FED. R. CIV. P. 26(b)(1)). Additionally, "the Court may . . . permit for 'good cause' discovery of matters that are 'relevant to the subject matter involved in the action.'" Id. "'Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" Id.; see also Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 104 (D.N.J. 1990) ("[I]t is important to distinguish the right to obtain information by discovery from the right to use it at trial."). Thus, "relevancy is more liberally and broadly construed at the discovery stage than at trial." Hite, 2009 WL 1748860, at *3 (citing Nestle, 135 F.R.D. at 104). "The party resisting discovery 'has the burden of clarifying, explaining and supporting its objections.'" Id. (citing Nestle, 135 F.R.D. at 104). "Once the party resisting discovery meets this requirement, however, the burden is placed on the proponent of the discovery request to show that the information sought is relevant." Id. In the context of Title VII cases, "courts have been cautioned not to impose unnecessary limitations on discovery . . ." Kresefsky v. Panasonic Commc'n and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996). However, the scope of discovery in Title VII cases must be "'tailored to the issues involved in the

particular case.'" Id. (internal quotation omitted).

Plaintiff relies on Gutierrez v. Johnson & Johnson, No. Civ. A. 01-5302, 2002 U.S. Dist. LEXIS 15418, at *1 (D.N.J. Aug. 15, 2002), in support of her motion to compel company-wide discovery. In Gutierrez, the plaintiffs filed a putative class action seeking to represent a class of persons of African or Hispanic descent who were employed by the defendant, a company that had thirty-two operating companies in eleven states throughout the United States. Id. at *2. The plaintiffs' theory of class-wide discrimination was "that decentralized and subjective decision-making permits individual managers at the local level to make discriminatory decisions." Id. at *5. The defendant sought a protective order to preclude company-wide discovery, arguing that the court should adopt a staged approach to discovery wherein the plaintiffs could obtain discovery from the companies at which the named plaintiffs were employed and thereafter, if warranted, obtain discovery from the defendant's other companies. Id. at *12. In denying the motion for a protective order, the Special Master noted that "[i]n employment discrimination cases, Courts generally grant wide latitude to a plaintiff or plaintiffs who seek to conduct company wide discovery" and that the relevant issue is "the extent to which the case involves a common employment policy or practice." Id. at *10-11 (citations omitted). The Special Master further noted that

all parties will benefit from broad discovery, as the court, when ruling on class certification, "will have the necessary data before it to determine if the requirements of Fed. R. Civ. P. 23(a) are met." Id. at *14.

In this case, as in Gutierrez, Plaintiff asserts a general theory of class-wide discrimination that Defendant's uniform policies and procedures afford subjective decision-making authority to directors and officers, purportedly permitting these decision-makers to act in a discriminatory manner. According to the allegations in the First Amended Complaint, discrimination against female employees occurs because company-wide policies permit excessive subjectivity in determining eligibility requirements for promotion within the company. (First Am. Compl. [Doc. No. 17] ¶ 35.) Additionally, Plaintiff alleges that because open positions at Level 7 and above are not required to be posted on the corporate intranet, these positions are only made known through word of mouth, and successful candidates are purportedly disproportionately male. (Id. at ¶ 39.) Thus, Plaintiff has asserted a disparate impact theory in her First Amended Complaint and, as noted in Gutierrez, "that is all that is required at this stage to permit discovery to proceed." Gutierrez, 2002 U.S. Dist. LEXIS 15418, at *19. Accordingly, the Court finds that Plaintiff has demonstrated the relevance of company-wide discovery at this time.

12

In so finding, the Court notes that the parties submitted certifications in an effort to demonstrate whether Defendant is a single, cohesive corporate entity, as argued by Plaintiff, or a "complex organization comprised of multiple entities and their varied subcomponents," as argued by Defendant. (See Pl.'s Br. 5-6; Def.'s Opp. Br. 18.)[7]   However, Plaintiff's allegations in the First Amended Complaint of uniform company policies and practices, such as the averments that "[r]egardless of business area, the policies relating to pay, assignment and promotion are uniform," and a corporate-wide policy that does not require open positions at level 7 and above to be posted on the corporate intranet (see First Am. Compl. [Doc. No. 17] ¶¶ 29, 36), are sufficiently asserted to lead this Court to conclude that discovery into other Business

_____

7.   Specifically, Plaintiff submitted a Declaration of Jennifer Grissom, Esquire dated October 16, 2009 [Doc. No. 47-3], to which is attached, inter alia, printouts from Defendant's website, a copy of a document titled "Job Codes, Job Descriptions," a copy of a document titled "LMPeople Employee Reference Guide," and portions of the deposition transcripts of Bonnie Young, Defendant's Corporate Director of Compensation, Allison Bresnahan, Defendant's Business Analyst for the LMPeople Team, and Lisa Flores, Defendant's Staffing Systems Manager/LMCareer System Manager.  Plaintiff also submitted a Certification of Carol Bell dated November 30, 2009 [Doc. No. 105], and a Certification of Carol A. Mager, Esq. in Further Support of Plaintiff's Motion to Compel dated November 30, 2009 [Doc. No. 106], to which is attached, inter alia, a printout from Defendant's website, portions of a 2005 Lockheed Martin Investor Conference, and a document titled "2008 Salary Equity Training." Defendant submitted a Certification of Chanda Guth dated November 9, 2009 [Doc. No. 66], and a Certification of Tracey Staley dated November 9, 2009 [Doc. No. 67].

13

Areas and Business Units constitutes relevant discovery under Rule
26(b).[8]  See Etienne v. Wolverine Tube, Inc., 185 F.R.D. 653, 656
(D. Kan. 1999) ("A party does not have to prove a prima facie case
to justify a request which appears reasonably calculated to lead to
the discovery of admissible evidence.").

The Court rejects Defendant's position that Plaintiff is not
entitled to discovery concerning the director level and above
because Plaintiff does not allege that she applied for jobs at such
levels.  (Def.'s Opp. Br. 20.)  In the First Amended Complaint,
Plaintiff alleges on behalf of a putative class that female
employees are not promoted to director-level positions at the same
rate as male employees due to uniform, company-wide policies and
practices.  (See Pl.'s Reply Br. 6.)  Plaintiff is entitled under
Rule 26 standards to discovery in support of this allegation on

---

8.   Although Defendant characterizes Plaintiff's allegations as
conclusory, Plaintiff has asserted in the First Amended Complaint
a factual basis for her contention that Defendant employs uniform
corporate-wide policies and practices.  For example, Plaintiff
alleges that Defendant has a People Compensation Planning System
called "FOCUS", and that Defendant "maintains uniform human
resources procedures relating to compensation as evidenced by the
FOCUS program which charges the Corporate compensation group with
maintaining uniform salary grade ranges for each job code."
(First Am. Compl. [Doc. No. 17] ¶ 32.)  Additionally, Plaintiff
avers that Defendant imposes company-wide criteria, called
"Exempt Bench Mark Level Criteria," which purportedly set
identical minimum education and experience requirements for
levels 4 through 7, thereby purportedly "eliminating all but
subjective criteria with regard to education and experience."
(Id. at ¶ 35.)

behalf of the putative class, including information about director-level positions.   Notably, for class certification purposes, Plaintiff may rely on an expert's statistical analysis of the amount of time it takes female employees to reach director-level positions, which would necessarily require discovery of information about director-level employees.   See Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 161 (N.D. Cal. 2004), aff'd, 474 F.3d 1214 (9th Cir. 2007), reh'g en banc, 2010 WL 1644259, at *1 (9th Cir. Apr. 26, 2010).[9]   Similarly, discovery about director-level employees is necessary to determine whether those employees were, in fact, similarly situated individuals to Plaintiff and the class. Conversely, Defendant may rely on information about director-level employees to demonstrate that such employees were not similarly situated to Plaintiff and advanced due to their individual attributes rather than a policy of discriminating based upon gender. Therefore, information about director-level employees will be necessary to determine whether promotion disparities exist and, if so, whether they are attributable to gender discrimination rather than non-discriminatory reasons.   Discovery of information

---

9.   As noted in Dukes, "[u]se of statistical analysis to raise an inference of class-wide discrimination and satisfy commonality is well accepted."   Dukes, 222 F.R.D. at 154 (citation omitted). The Ninth Circuit found that "the district court's review of statistics showing discrimination regarding promotions was also not an abuse of discretion."   Dukes v. Wal-Mart Stores, Inc., 2010 WL 1644259, at *28 (9th Cir. Apr. 26, 2010).

about director-level positions is, consequently, relevant under Rule 26 standards.[10]

The Court similarly rejects Defendant's assertion that Plaintiff is not entitled to discovery concerning Business Areas other than those areas in which Plaintiff has worked. Plaintiff's class claims are not limited to the Business Area in which Plaintiff has worked; rather, Plaintiff seeks to assert a claim on behalf of female employees in all of Defendant's Business Areas. Thus, the scope of the claims in this case extends beyond the specifics of Plaintiff's individual claims, and Plaintiff is therefore entitled under Rule 26 to discovery concerning all Business Areas in support of her proposed class claim.[11]

_____

10. Additionally, the Court will not deny Plaintiff discovery on director-level positions on the basis that she did not apply for such positions, when one of Plaintiff's claims is that "open positions at the L7 and E7 level and above are not posted," and thus are not made known to all employees, because corporate policy does not require such open positions to be posted on the company intranet. (First Am. Compl. [Doc. No. 17] ¶¶ 36, 39.)

11. The Court notes that Plaintiff has also filed a motion for leave to amend the complaint to add two new plaintiffs who worked in different Business Areas than Plaintiff. The Court addresses the motion to amend by separate Order. Plaintiff asserts that "[t]he fact that [proposed] Plaintiffs Abt and Walker are additional class representatives does not undermine the sufficient allegations in the First Amended Complaint and the consequent entitlement to Company-wide discovery." (Pl.'s Reply Mot. Seeking Leave to Submit a Second Am. Compl. [Doc. No. 108] 11.) The Court agrees with Plaintiff that Plaintiff's allegations on behalf of a putative class spanning all Business Areas are sufficient to entitle Plaintiff to discovery of other Business Areas, regardless of whether Ms. Abt and Ms. Walker are

Additionally, as noted supra, Plaintiff contends in the First Amended Complaint that she has applied for positions "outside her business area, outside her business unit, and outside her then current geographical location," but "[i]n several instances," a purportedly less-qualified male applicant was offered the position." (First Am. Compl. [Doc. No. 17] ¶ 54.)

As to the temporal scope of discovery, Plaintiff seeks discovery dating back two years with respect to the class for the Title VII claims, one year with respect to the subclass for the NJLAD claims, and fifteen years with respect to electronic data. (Pl.'s Br. 21.)  Defendant argues that Plaintiff is not entitled to discovery concerning persons who are not members of the putative class. (Def.'s Opp. Br. 16) (citing Hughes v. LaSalle Bank, N.A., No. Civ. A. 02-6384, 2004 WL 414828, at *2 (S.D.N.Y. Mar. 4, 2004)).  However, Hughes does not address the temporal scope of discovery in a Title VII case.  Cases examining the scope of discovery in a Title VII action permit discovery for a time period that predates the plaintiff's claims.  See, e.g., Owens v. Sprint/United Mgmt. Co., 221 F.R.D. 649, 656 (D. Kan. 2004) (permitting discovery for two-and-a-half year period prior to alleged discriminatory conduct); Lyoch v. Anheuser-Busch Co., Inc., 164 F.R.D. 62, 67 (E.D. Mo. 1995) ("Information regarding

_____

also named plaintiffs in this case.

17

defendant's employment practices prior to plaintiff's employment may be relevant to establishing a pattern or practice of discrimination and showing that Defendant's proffered reason for disparate treatment is a pretext for discrimination."); Robbins v. Camden City Bd. of Educ., 105 F.R.D. 49, 63 (D.N.J. 1985) ("Courts have commonly extended the scope of discovery to a reasonable number of years prior to the defendant's alleged illegal action."). See also Harris v. Pub. Serv. Elec. & Gas Co., No. Civ. A. 05-2003, 2007 U.S. Dist. LEXIS 5412, at *9 (D.N.J. Jan. 24, 2007) ("Courts have recognized the relevance of a defendant's conduct in the years prior to the event in question and have 'commonly extended the scope of discovery to a reasonable number of years prior to the defendant's alleged illegal action.'") (internal citation omitted); Gaul v. Zep Mfg. Co., No. Civ. A. 03-2439, 2004 U.S. Dist. LEXIS 1990, at *5 (E.D. Pa. Feb. 5, 2004) ("'It is well established that discovery of conduct predating the liability period of a Title VII lawsuit is relevant and courts have commonly extended the scope of discovery to a reasonable number of years prior to the liability period of a Title VII lawsuit.'") (internal citation omitted).

The Court notes that discovery seeking information relating to "other charges of discrimination which may have been raised against defendant by its employees in the past" is, as a "general proposition," relevant because "the existence of a pattern of . .

. discrimination in a job category may well justify an inference that the practices complained of were motivated by" improper factors.  <u>Robbins</u>, 105 F.R.D. at 58.  The Court shall thus permit Plaintiff to obtain information for the class period and predating the class period for a period of two years.[12]  Plaintiff's motion to compel company-wide discovery is therefore granted in part. Defendant shall be required to produce relevant discovery concerning all Business Areas and Business Units and concerning director-level positions and above.  However, to the extent Plaintiff seeks documents dating back fifteen years, such request is denied, as the Court has limited discovery to the class period and information predating the class period for two years.

The Court notes Defendant's assertion that responding to Plaintiff's discovery requests would impose an undue burden on Defendant.  Although Defendant has purportedly spent more than $1.6 million in responding to discovery requests, Plaintiff asserts that Defendant unilaterally determined the scope of discovery it would provide, without any agreement from Plaintiff.  (<u>See</u> Pl.'s Reply Br. 11-12.)  The Court finds that the expense incurred thus far does not, at this time, excuse Defendant from producing any further

---

12.  Plaintiff sought discovery predating the subclass period for one year, <u>i.e.</u>, from December 23, 2005 to the present.  Such discovery would be subsumed within discovery predating the class period for two years.

discovery.  Moreover, Plaintiff does not seek through the present motion an order requiring Defendant to provide specific responses to Plaintiff's First Request for Production of Documents.  (Pl.'s Br. 2.)  Plaintiff only seeks an Order defining the general scope of discovery.  (Id.)  Accordingly, at this time the Court need not address Defendant's burden argument.  The Court will resolve burden issues in deciding the pending motion to compel Defendant to provide specific discovery responses.[13]

Also before the Court is Defendant's motion for a protective order.  In her First Request for Production of Documents, Plaintiff sought documents that, Defendant asserts, "could call for the disclosure of information related to the race or age of Lockheed Martin employees."  (Def.'s Br. in Supp. of its Mot. for a Protective Order [Doc. No. 52] 3.)  Additionally, Plaintiff allegedly sought documents concerning race, age, or any protected classifications other than gender.  (Id. at 4.)  In responding to discovery, Defendant redacted or did not produce "information related to race, age, or any other protected classification besides gender."  (Id. at 6.)  Defendant characterizes Plaintiff's

---

13.  Plaintiff filed a motion [Doc. No. 180] to compel the production of documents responsive to the specific requests set forth in Plaintiff's First, Second, and Third Requests for Production of Documents, Plaintiff's First Set of Interrogatories, and Plaintiff's Notice of Deposition pursuant to FED. R. CIV. P. 30(b)(6), which motion remains pending at this time.

discovery requests as a "fishing expedition" and asserts that discovery should be limited, under Federal Rule of Civil Procedure 26(b)(1), to inquiries about the same type of discrimination alleged by Plaintiff, i.e., gender discrimination. (Id. at 9, 11.) Defendant thus moves for a protective order "barring [Plaintiff] from asking for information – whether in the form of documents or electronic information or in depositions or in any other aspect of discovery – about discrimination on the basis of race, age, or any protected characteristic other than gender[.]" (Id. at 11-12.)

   In opposition to Defendant's motion, Plaintiff asserts that Defendant fails to demonstrate good cause for a protective order. (Mem. of Law in Opp. to Def.'s Mot. for a Protective Order [Doc. No. 76] (hereinafter, "Pl.'s Opp. Br.") 5.) Plaintiff argues that to demonstrate a pattern or practice of discrimination, and to demonstrate disparate impact, her expert will need to conduct a statistical analysis that considers common variables, such as race, age and gender, that may explain any disparity in treatment of Defendant's employees. (Id. at 6.) Plaintiff also contends that information about the race and age of Defendant's employees is relevant under Third Circuit law, which purportedly provides that evidence of an employer's treatment of protected categories of persons other than the plaintiff's protected class is relevant to a "full scale analysis" of the impact of Defendant's personnel practices. (Id. at 8-9.) Additionally, Plaintiff argues that if

Defendant discriminated against another protected class of employees, that evidence would support Plaintiff's claim that Defendant has also discriminated on the basis of gender. (Id. at 9-10.) At oral argument, Plaintiff further asserted that if Defendant attempts to address discrimination of certain protected classes but makes no attempt to address gender discrimination in the workplace, such conduct may demonstrate Defendant's intent to discriminate on the basis of gender. (Transcript of Dec. 8, 2009 Hearing [Doc. No. 120], at 66:1-24.)

In reply, Defendant represents that it is "willing to stipulate that there is no correlation for statistical purposes between sex and race and/or age." (Def.'s Reply Br. in Further Supp. of Mot. for a Protective Order (hereinafter, "Def.'s Reply Br.") [Doc. No. 100] 2.) Defendant also notes that experts conduct a statistical analysis in a sex discrimination case to look at possible "legitimate, non-discriminatory" factors for the disparities in pay, and asserts that race and age, by their nature, "could never be non-discriminatory explanations" for disparities in pay. (Id. at 3.) Further, Defendant argues that Plaintiff can utilize service dates, rather than age information, in conducting her analysis. (Id. at 3-4.)

Pursuant to Federal Rule of Civil Procedure 26(c), a court may enter a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense[.]"   FED. R. CIV. P. 26(c)(1).   Upon a showing of good cause, the Court may "forbid[] the disclosure or discovery," or may "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters[.]"   Id.   The party seeking a protective order bears the burden of demonstrating that good cause exists to limit or foreclose discovery.   See id.   In addition, a party seeking a protective order is required to demonstrate a "particular need for protection." Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d. Cir. 1986). However, the party seeking discovery must first demonstrate the relevance before the party seeking a protective order must demonstrate good cause.

There is no dispute that Plaintiff does not assert any claims in this case, individually or on behalf of the class, concerning race or age discrimination. (See Pl.'s Opp. Br. 1.) Plaintiff asserts that she requires race and age information for two purposes: first, such data is necessary for purposes of conducting a statistical analysis, and second, anecdotal evidence of other types of discrimination, if any, would allegedly be relevant to demonstrate Defendant's attitude toward female employees, which would demonstrate whether Defendant has discriminated against females.

With respect to the statistical analysis, Plaintiff submitted a certification from her proposed expert, Linda A. Bell, Ph.D., in

23

which Dr. Bell indicates that she will conduct a regression analysis "to determine whether and to what extent Lockheed's practices have a disparate impact on women at the Company, and whether women at Lockheed are treated less favorably than men in terms of promotion and compensation." (Cert. of Linda A. Bell, Ph.D., Nov. 20, 2009 [Doc. No. 76-11] 2 ¶¶ 2, 3.) Dr. Bell represents that "it would be highly unusual and an incomplete analysis to exclude those variables [race, age, and gender] from the multivariate test that would be part of any complete analysis of data." (Id. at 3 ¶ 6.) Dr. Bell also notes that although the parties contemplated a stipulation that "race and/or age and gender are not correlated and, therefore, not relevant to the analysis," in her opinion such data "should be included in a full statistical analysis[.]" (Id. at 3 ¶ 8.) Additionally, in a supplemental certification, Dr. Bell states that "[i]n an analysis of gender, it is critical to include all demographic data available such as race, age, education, family background, etc., in order to ascertain the *independent* effect of gender on salary, rank, or promotion." (Cert. of Linda A. Bell, Ph.D., Dec. 29, 2009 [Doc. No. 155] 2 ¶ 2) (emphasis in original).[14]  Dr. Bell further states that "it is

---

14. By letter dated January 4, 2010 from Cheryl M. Stanton, Esquire, Defendant objected to Dr. Bell's supplemental certification because the Court only requested a supplemental certification that clarified a statement in Dr. Bell's original certification, and the supplemental certification purportedly addressed additional issues. Defendant argued that the

absolutely essential that age and race be included for our statistical work at the outset of our analysis." (Id. at 2 ¶ 3.) Defendant's proposed expert, Janet R. Thornton, Ph.D., in response asserts that she does not "believe that age, race, and ethnicity data are necessary" to conduct a statistical analysis in this case and that inclusion of such data may bias the outcome of the analysis. (Cert. of Janet R. Thornton, Ph.D. 2 ¶ 4.)

Defendant's arguments, however, are in essence objections based upon the admissibility of the information that Plaintiff's expert asserts must be considered in conducting a statistical analysis. Such determination is more appropriate in the context of a motion concerning the reliability of an expert opinion under the standards enunciated in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). In deciding a discovery motion, the Court must focus on whether the information, under FED. R. CIV. P. 26, is relevant to the claims or defenses of the parties. As noted above, Plaintiff's expert has stated in a certification that notwithstanding Defendant's willingness to stipulate that there is no correlation for

---

supplemental certification constituted "an improper surreply for further argument" on the protective order motion. (Letter from Cheryl M. Stanton, Esq., Jan. 4, 2010.) The Court permitted Defendant an opportunity to respond to Dr. Bell's supplemental certification. By letter dated February 9, 2010 from Ms. Stanton, Defendant submitted a certification of Janet R. Thornton, Ph.D.. The Court has considered all of these certifications in deciding the protective order motion.

statistical purposes between sex and race and/or age, she requires both age and race data to conduct a statistical analysis to support Plaintiff's discrimination claims.[15]   Accordingly, such data is relevant under Rule 26 standards and is therefore discoverable, and the Court shall not in the discovery context preclude Plaintiff from obtaining data that her expert asserts is required, based solely on the arguments raised by Defendant in opposition to this motion.

With respect to anecdotal information of discrimination of other protected classes, the Court also finds that such information, as limited by Plaintiff's counsel at oral argument on December 8, 2009, is relevant under Rule 26 standards.   (See Transcript of December 8, 2009 Hearing [Doc. No. 120], at 66:1-17.) Defendant argues that the weight of the authority supports a finding that discovery about any protected classes other than

---

15.  At oral argument, the Court inquired as to whether Plaintiff could utilize data concerning years of service as a proxy for data concerning the age of employees.  (Transcript of Dec. 8, 2009 Hearing [Doc. No. 120], at 64:24-65:3.)  Dr. Bell addresses in her supplemental certification why she contends years of service is not an appropriate measure for purposes of a statistical analysis.  (Cert. of Linda A. Bell, Ph.D., Dec. 29, 2009, 2 ¶ 4.)  Dr. Thornton disputes this assertion.  (Cert. of Janet R. Thornton, Ph.D. 2 ¶ 5.)  The Court finds that age data is relevant discovery under Rule 26 standards in light of Dr. Bell's assertion that she requires age data, rather than information concerning years of service, to conduct her statistical analysis.  However, the Court makes no finding as to the appropriate measure (i.e., age versus years of tenure) for a statistical analysis for purposes of admissibility under the Federal Rules of Evidence.

gender is not relevant to the claims and defenses in this case.
The Court notes that discovery of other protected classes was
precluded in Robbins, where the plaintiff alleged discrimination on
the basis of age and race, and the court found that the plaintiff's
interrogatories were overbroad because they contained no
limitations as to the "type of discrimination alleged (sex, race,
age, etc.)" and because "there is no relevance in information that
would support charges of discrimination based on sex, religion,
national origin or any other basis." Robbins, 105 F.R.D. at 58,
61-62. See also Prouty v. Nat'l R.R. Passenger Corp., 99 F.R.D.
545, 546 (D.D.C. 1983) ("Because plaintiff only alleges age
discrimination, he is not entitled to any information pertaining to
race."); Zahorik v. Cornell Univ., 98 F.R.D. 27, 31 (N.D.N.Y. 1983)
(although "evidence of general patterns of discriminatory treatment
by an employer is relevant even in the individual disparate
treatment case[,]" plaintiffs in sex discrimination case may not
"conduct a general 'fishing expedition' into areas unrelated to
their claims such as . . . discrimination claims based on factors
other than sex."). However, subsequent to the Robbins decision,
the Third Circuit noted that in demonstrating that an employer's
proffered reason for a disparity is pretextual, a plaintiff in a
Title VII action may "come forward with sufficient evidence from
which a factfinder could reasonably conclude that an illegitimate
factor more likely than not was a motivating or determinative cause

27

of the adverse employment decision (e.g., by showing that the employer in the past had subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer has discriminated against other members of his protected class *or other protected categories of persons*).” <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994) (emphasis supplied). At oral argument, Plaintiff limited the anecdotal evidence as follows: “All we would be asking about and all we believe we’re entitled to discover is if and how Lockheed Martin identifies and assesses other forms of discrimination vis-a-vis gender and what, if any, steps they take to remedy the other forms of discrimination they find.” (Transcript of Dec. 8, 2009 Hearing [Doc. No. 120], at 66:9-13.) This evidence sought by Plaintiff, the Court finds, is relevant under Rule 26 to the issue of whether there is gender discrimination in the workplace. Therefore, the Court concludes that this information sought by Plaintiff is discoverable in this case.

The Court notes Defendant's argument that Plaintiff's failure to object to the redaction of age and race data from the documents produced since September 15, 2009 warrants a protective order precluding discovery of such information at this time. (Def.'s Reply Br. 12; Cert. of Danuta B. Panich, Esq. Submitted in Further Supp. of a Mot. for Protective Order (hereinafter, "Panich Cert.")

28

[Doc. No. 101] 4 ¶¶ 11-13.)  However, during the time period of such production, the parties were contemplating a stipulation "that age and race would not make a difference in a regression analysis[.]" (Cert. of Carol A. Mager, Esq. in Opp. to Def.'s Mot. for a Protective Order [Doc. No. 76-1] 2 ¶ 6, 3 ¶ 10.)  Thereafter, Plaintiff's expert determined that even if Defendant was to agree to such stipulation, "this is data that should be included in a full statistical analysis of this sort." (Cert. of Linda A. Bell, Ph.D., Nov. 20, 2009 [Doc. No. 76-11] 3 ¶ 8.)  Given this procedural history, the Court does not find that Plaintiff waived the right to seek age and race data based upon a failure to insist upon production of such information at an earlier time.

The Court must also address Defendant's assertion that production of race and age data at this time, after Defendant has already redacted such information in its various document productions, is unduly burdensome.  Defendant contends that "[t]o require Lockheed Martin to now re-review and undo all redactions of race and/or age data would result in a significant and wasteful duplication of effort for the production of documents on which it already has spent considerable time and money." (Def.'s Reply Br. 14-15; see also Panich Cert. ¶ 15.)  Defendant does not provide a detailed certification setting forth the expense that would be incurred by producing unredacted versions of those documents that

have already been produced,[16] nor does the Court find that such
production would be unduly burdensome.  In light of the relevance
of such information under Rule 26 as set forth above, the Court
does not find good cause to preclude discovery of such information
on burden grounds.  Therefore, Defendant's motion for a protective
order is denied.[17]

Also before the Court is Defendant's motion to bifurcate
discovery such that the parties first conduct discovery on class
certification issues and then address merits issues.  Defendant
contends that the weight of authority dictates that merits
discovery that has no bearing on class certification should only be
conducted after a class has been certified, particularly when pre-
certification merits discovery would impose substantial costs on
the defendant.  (Def.'s Br. in Supp. of Mot. to Bifurcate Discovery
(hereinafter, "Def.'s Br.") [Doc. No. 79] 7.)  Defendant concedes

---

16.  Defendant submitted detailed certifications in connection
with Plaintiff's motion [Doc. No. 47] to compel company-wide
discovery to demonstrate the expense incurred by Defendant thus
far in responding to Plaintiff's discovery requests.  Defendant
has not, however, submitted a certification to demonstrate the
cost of producing at this time unredacted documents.

17.  The Court notes Plaintiff's request that if the Court denies
the motion for a protective order, Defendant be compelled to
produce a witness to respond to certain questions posed during
the deposition of Christine Neigh.  (Pl.'s Opp. Br. 3 n.2.)  The
Court will not address in the context of the motion for a
protective order the issue of a re-deposition.  Plaintiff may
raise this issue by way of formal motion after Defendant produces
race and age information.

that "some" merits-based discovery is necessary prior to class certification but argues that "a merits inquiry 'that is not necessary to determine a Rule 23 requirement' is not allowed before a class certification decision." (Id. at 7-8) (citing In re Hydrogen Peroxide, 552 F.3d at 317).  Further, Defendant asserts that allowing full merits discovery at this stage of the litigation is "inefficient and inappropriate," because it "inflicts on Lockheed Martin alone the extraordinary burden to spend enormous time, resources, and multiple millions of dollars" before the Court reaches a decision on a certification motion. (Id. at 9.)  At oral argument, Defendant acknowledged that under In re Hydrogen Peroxide, Plaintiff has the burden of proving by a preponderance of the evidence all of the elements of FED. R. CIV. P. 23(a) and (b). (Transcript of Jan. 19, 2010 Hearing [Doc. No. 177], at 75:19-22.) Defendant, however, argued that staged discovery is appropriate, because in the In re Hydrogen Peroxide opinion, the Third Circuit cited with approval the Advisory Committee Notes to the 2003 Amendments to Rule 23, which state that "'it is appropriate to conduct controlled discovery into the merits limited to those aspects relevant to making the certification decision on an informed basis.'" (Id. at 77:1-18) (quoting In re Hydrogen Peroxide, 552 F.3d at 319 n.20).[18]

18. Defendant also relied at oral argument on the Third Circuit's citation to a report by the Standing Committee on Rules of Practice and Procedure that "'[a] certain amount of discovery may be appropriate during this period to illuminate issues

In opposition, Plaintiff asserts that at the class certification stage, she requires sufficient discovery to meet her burden of demonstrating how her claims will be tried on a class-wide basis. (Mem. of Law in Opp. to Def.'s Mot. to Bifurcate Discovery [Doc. No. 118] 4.) Limiting discovery at the pre-certification stage will purportedly prejudice Plaintiff in her efforts to obtain class certification. (Id. at 5.) Plaintiff also notes that merits discovery will be necessary even if class certification is denied, because Plaintiff represents that she will continue to assert her individual claims. (Id.) Further, Plaintiff argues that Defendant fails to establish that conducting merits discovery at this time constitutes an undue burden. (Id. at 8-9.) At oral argument, Plaintiff's counsel represented that Plaintiff is not opposed to the concept of staged discovery. (Transcript of Jan. 19, 2010 Hearing [Doc. No. 177], at 81:20-21.) Plaintiff asserted, for example, that she does not require at this time electronic discovery of all individual custodians for Plaintiff, or discovery on damages. (Id. at 81:22-82:1.)

Defendant, in its reply brief, clarifies that the bifurcation it proposes will not deprive Plaintiff of obtaining the discovery she needs to support her class-certification motion. (Reply Br. in Supp. of Def.'s Mot. to Birfurcate Discovery [Doc. No. 164] 1, 7-

_____

bearing on certification.'" (Transcript of Jan. 19, 2010 Hearing [Doc. No. 177], at 77:19-22) (quoting In re Hydrogen Peroxide, 552 F.3d at 319 n.20).

8.)   Defendant agrees to provide merits-based discovery that is relevant to certification issues, while limiting discovery on merits or damages issues that are not relevant to certification. (Id. at 5.)

The Third Circuit has concluded that a party seeking class certification must prove by a preponderance of the evidence each fact necessary to meet the requirements of Federal Rule of Civil Procedure 23.   In re Hydrogen Peroxide, 552 F.3d at 320.   The district court, in deciding a class certification motion, must conduct a "'thorough examination of the factual and legal allegations,'" and the court "may 'consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.'" Id. at 317 (citations omitted).  Thus, some inquiry into the merits may be appropriate at the class certification stage to the extent that the merits overlap with the criteria of Rule 23.  Id. at 317 n.17.  The Third Circuit noted that the district court, under the holding of Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974), should not conduct a merits inquiry "that is not necessary to determine a Rule 23 requirement."  Id. at 317. However, the Third Circuit did not hold that bifurcation of discovery is mandated, as argued by Defendant.  (Def.'s Br. 7-8.) Although the scope of the court's inquiry at the class certification stage may be circumscribed, clearly the court is

required to consider merits issues if necessary to resolve class certification issues, which supports permitting pre-certification merits discovery.

In this case, given Plaintiff's burden at the class certification stage of producing evidence in support of the merits to the extent there is overlap with the requirements of Rule 23, the Court shall deny without prejudice Defendant's motion to bifurcate discovery. However, the parties agreed at oral argument that discovery should be staged in part, and that all discovery related to class certification should be conducted first, and discovery which solely relates to merits should be conducted at a later time. (Transcript of Jan. 19, 2010 Hearing [Doc. No. 177], at 105:5-13.) Additionally, as noted supra, Plaintiff has agreed that damages discovery can be stayed pending a decision on class certification. Therefore, in light of the parties' agreement on a staged approach to discovery, Defendant may object to specific discovery requests as not related in any way to class certification issues, but the Court will not formally bifurcate discovery at this time.[19]

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

---

19. This issue can be further addressed in the context of specific responses to specific discovery requests in connection with the pending motion to compel [Doc. No. 180].

IT IS on this 23rd day of June 2010,

**ORDERED** that Plaintiff's motion [Doc. No. 47] to compel company-wide discovery shall be, and is hereby, **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant's motion [Doc. No. 51] for a protective order shall be, and is hereby, **DENIED**; and it is further

**ORDERED** that Defendant's motion [Doc. No. 78] to bifurcate discovery shall be, and is hereby, **DENIED WITHOUT PREJUDICE** to Defendant's right to object to specific discovery requests as not related to class certification issues.


s/ Ann Marie Donio
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Robert B. Kugler