## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **CAROL BELL, LINDA ABT AND MAXINE WALKER on behalf of themselves and those similarly situated** | : : : : : : | **CIVIL ACTION NO. 08-6292** |
| | : | **Electronically Filed** |
| **Plaintiffs,** | : : | |
| **v.** | : : : | |
| **LOCKHEED MARTIN CORPORATION** | : : : | **CLASS ACTION** |
| | : : | **JURY TRIAL DEMANDED** |
| | : : | |
| **Defendant.** | : : | **(Assigned to Honorable Judge R. Kugler)** |

## SECOND AMENDED COMPLAINT

### INTRODUCTION

1.     Plaintiffs, Carol Bell, Linda Abt and Maxine Walker by and through their

undersigned attorneys, bring this Second Amended Complaint against their employer

Lockheed Martin Corporation and its wholly owned or controlled subsidiaries

(hereinafter referred to as "Lockheed Martin" or "Defendant") or "the company" on behalf

of themselves and all other similarly situated present and former female employees of

Defendant who held either leadership ("L") or exempt ("E") positions designated 3, 4, 5

or 6.  Carol Bell, Linda Abt, and Maxine Walker (hereinafter referred to as "Plaintiffs")

bring this "glass ceiling" and pay disparity Class Action to redress Defendant's unlawful and continuing company-wide policies and practices of gender discrimination. Plaintiffs and the Class they seek to represent charge that Lockheed Martin discriminates against its salaried female employees by advancing male employees more quickly than equally or more qualified female employees through middle management and into upper management level positions, and discriminates in compensation to these female employees, including with respect to pay grade, annual and promotional increases, merit pay increases and bonuses.  Director level positions are the entry level positions within Lockheed Martin for which stock options and other enhanced compensation is available.  Upon information and belief, less than twenty percent of the director level and above positions are held by women and women at all salaried grades are paid less than men with substantially similar performances and responsibilities. These disparities cannot be explained by any justified business policies. Rather they are the result of policies and practices that purposefully discriminate against women. These practices include failure to post open positions at the director level as well as at lower levels for positions that are designated stepping stones to the director level positions.

2.    This action seeks to end Lockheed Martin's discriminatory practices and to make Plaintiffs and the Class members whole for their losses, and for punitive damages.

## PARTIES

3.    Plaintiff Carol Bell ("Plaintiff Bell") is an individual, who at all relevant times, including the present, resides in Mount Laurel, New Jersey.  Plaintiff Bell is currently employed by Lockheed Martin.

2

4.      Plaintiff Bell is a female.

5.      Plaintiff Linda Abt ("Plaintiff Abt") is an individual, who at all relevant times, including the present, resides in Downingtown, Pennsylvania.  Plaintiff Abt is currently employed by Lockheed Martin.

6.      Plaintiff Abt is a female.

7.      Plaintiff Maxine Walker ("Plaintiff Walker") is an individual, who at all relevant times, including the present, resides in Flower Mound, Texas.  Plaintiff Walker is currently employed by Lockheed Martin.

8.      Plaintiff Walker is a female.

9.      Defendant, Lockheed Martin Corporation is a global security and advanced technology company.  It is a Maryland corporation, headquartered in Bethesda, Maryland.  According to its website, www.lockheedmartin.com, Defendant employs about 140,000 people worldwide and operates in 500 cities and 46 states throughout the United States.  Lockheed Martin is principally engaged in the research, design, development, manufacture and integration of advanced technology systems, products and services.  The majority of its business is with the U.S. Department of Defense and the U.S. federal government agencies.  It is the largest provider of information technology services, systems integration, and training to the U.S. Government.   Lockheed Martin reported 2008 revenues of $42.7 billion.

10.      Defendant is engaged in an industry affecting interstate commerce and regularly conducts business in the State of New Jersey.

11.      At all times material to this action, Defendant was an employer within the meaning of the state and federal laws which form the basis of this action, and employed

3

more than five hundred (500) employees at any one time.

12.    At all times material to this action, Defendant acted by and through authorized agents, servants, contractors and/or employees acting within the course and scope of their employment with Defendant or authorized by Defendant and in furtherance of Defendant's business.

### JURISDICTION AND VENUE

13.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

14.    The causes of action set forth in this Second Amended Complaint arise under Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII") and The New Jersey Law Against Discrimination, as amended, N.J.S.A. §10:5-1, *et seq.* ("NJLAD").

15.    This Court has federal question jurisdiction over the Title VII claims (Counts I, II, V, VI, and VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331 and 1343(a) and supplemental jurisdiction over New Jersey claims (Count III and IV) pursuant to 28 U.S.C. §1367 because the amount in controversy exceeds five million dollars.

16.    Venue is proper in this district under 28 U.S.C. §1391(b)(c) and 42 U.S.C. §2000(e)-5(f) because events giving rise to the claims occurred within this district, Plaintiff Bell and the Subclass are employed within this district, and Defendant transacts business and is found in this district.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES AND TIMELY SUIT

17.    All conditions precedent to the institution of this suit have been fulfilled with regard to Plaintiff Bell's federal claims.  On January 15, 2008, April 11, 2008, April

4

25, 2008 and December 19, 2008, Plaintiff Bell timely filed charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").  The January 15, 2008 Charge was amended on April 15, 2008.  True and correct copies of these four (4) Charges are attached hereto collectively as Exhibit 1.  On December 22, 2008, Notices of Right to Sue were issued in connection with Plaintiff Bell's first three Charges which are attached hereto collectively as Exhibit 2.  On July 7, 2009, the Notice of Right to Sue was issued for Plaintiff Bell's fourth Charge, which is attached hereto as Exhibit 3.  On September 29, 2009, Plaintiff Bell timely filed a fifth charge of discrimination and retaliation with the EEOC.  A true and correct copy of the Charge is attached hereto as Exhibit 4.

18.    All conditions precedent to the institution of this suit have been fulfilled with regard to Plaintiff Abt's federal claims.  On April 21, 2009, Plaintiff Abt timely filed a charge of discrimination with the EEOC.  A true and correct copy of the Charge is attached hereto as Exhibit 5.  On July 9, 2009, a Notice of Right to Sue was issued in connection with Plaintiff Abt's Charge which is attached hereto as Exhibit 6.  On October 7, 2009, Plaintiff Abt will file a second charge of discrimination and retaliation with the EEOC.

19.    All conditions precedent to the institution of this suit have been fulfilled with regard to Plaintiff Walker's federal claims.  On August 27, 2009, Plaintiff Walker timely filed a charge of discrimination with the EEOC.  A true and correct copy of the Charge is attached hereto as Exhibit 7.  On September 28, 2009, Plaintiff Walker requested a Notice of Right to Sue in connection with Plaintiff Walker's Charge which is on file with the EEOC.

## CLASS ALLEGATIONS

20.    Plaintiffs bring Count I (Title VII discrimination) pursuant to Federal Rules of Civil Procedure 23 on behalf of the following Class, defined as:  All persons who are female and who were, are, or will be employed by Lockheed Martin Corporation in "E" or "L" designated positions at levels 3, 4, 5 or 6 in the United States of America from March 21, 2007, through the date of the final disposition of this Action (hereinafter "the Class").

21.    Plaintiff Bell brings Count III (NJLAD) pursuant to Federal Rules of Civil Procedures 23  on behalf of the following Subclass of the Class, defined as follows:  All persons who are female and who were, are, or will be employed by Lockheed Martin Corporation in  "E" or "L" designated positions at  level 3, 4, 5 and 6 in the State of New Jersey from December 23, 2006, through the date of the final disposition of this Action (hereinafter "the Subclass").

22.    The Class and Subclass are so numerous that joinder of all members is impractical.  As of December 23, 2008, the Class consisted of at least 16,946 present and former female employees of Lockheed Martin.  As of December 23, 2008, the Subclass consisted of at least 729 present and former female employees of Lockheed Martin.  Given the large number of Class members and their geographical dispersion, it is impracticable for all Class members and for all Subclass members to join in the individual litigation.

23.    There are questions of law and of fact common to the Class and Subclass, including, but not limited to:

a) whether Defendant's common operating policies, procedures and

6

practices, including with regard to promotion and pay, have a disparate impact on women in violation of Title VII and/or the NJLAD, and whether this disparate impact is justified by any business necessity;

b)  whether Defendant's common operating policies, procedures and practices which result in the disparate treatment of women violate Title VII and/or the NJLAD;

c)  whether Defendant has engaged in a pattern and practice of intentional disparate treatment of its female employees in violation of Title VII and/or the NJLAD; and,

d)  whether Plaintiffs and the Class and Subclass are entitled to the relief prayed for in this Complaint.

24.    Plaintiff Bell is a member of the Class and Subclass and the claims of Plaintiff Bell are typical of the claims of the Class and Subclass.

25.    Plaintiff Bell will fairly and adequately protect the interest of the members of the Class and Subclass.  Plaintiff Bell has no interests that are antagonistic to other members of the Class or Subclass.  Additionally, Plaintiff Bell has retained counsel who are competent and experienced in the prosecution of employment and complex class action litigation.  Plaintiff Bell will vigorously prosecute this case on behalf of the Class and Subclass.

26.    Plaintiff Abt is a member of the Class and the claims of Plaintiff Abt are typical of the claims of the Class.

27.    Plaintiff Abt will fairly and adequately protect the interest of the members of the Class.  Plaintiff Abt has no interests that are antagonistic to other members of the

7

Class. Additionally, Plaintiff Abt has retained counsel who are competent and experienced in the prosecution of employment and complex class action litigation. Plaintiff Abt will vigorously prosecute this case on behalf of the Class.

28.     Plaintiff Walker is a member of the Class and the claims of Plaintiff Walker are typical of the claims of the Class.

29.     Plaintiff Walker will fairly and adequately protect the interest of the members of the Class. Plaintiff Walker has no interests that are antagonistic to other members of the Class. Additionally, Plaintiff Walker has retained counsel who are competent and experienced in the prosecution of employment and complex class action litigation. Plaintiff Walker will vigorously prosecute this case on behalf of the Class.

30.     Class certification is appropriate under Rules 23(b)(2) because Defendant has acted or refused to act in a manner generally applicable to the Class and Subclass, thereby making appropriate declaratory relief and/or final injunctive relief and other equitable relief on a Class and Subclass-wide basis to end Lockheed Martin's discriminatory policies, procedures and practices.

31.     Class certification also would be appropriate under Rule 23(b)(3). The common issues of law and fact presented in this Second Amended Complaint predominate over any individual issues. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Lockheed Martin's personnel policies, procedures and practices are uniform and discriminatory. The expense and burden of individual litigation makes it impractical for the members of the Class and Subclass to pursue individual litigation to vindicate their rights.

32.     Plaintiffs are not aware of any problems that would militate against the maintenance of this action as a class action.

## FACTUAL ALLEGATIONS

33.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

34.     Lockheed Martin employs more than 140,000 people. It is the largest information technology services supplier to the United States government.  Lockheed Martin is organizationally divided into four "business areas" and a corporate function: Aeronautics, Electronic Systems, Information Systems and Global Services ("IS & GS"), Space Systems and Corporate (also referred to as "Enterprise Operations").  Each business area includes multiple business units employing thousands of employees in multiple locations throughout the United States.  Defendant's employees are eligible for and routinely apply for transfers and promotions across business areas, business units and geographic locations.  The human resources functions for all of Lockheed Martin are controlled by the Corporate Human Resources department.  The policies, practices and procedures referenced herein are common to all business areas, units and locations of Lockheed Martin.

35.     Two of Lockheed Martin's salaried position job code designations are "L" and "E."  The   "L" level designates a leadership position.  L3 is the entry level leadership position.  The "E" level designates an exempt position.  E3 is the entry level exempt position. The Class consists of women designated E 3, 4, 5 or 6 and L 3, 4, 5 or 6.  These are all salaried positions.

36.     Any position specified as L7 and above or E7 and above (i.e., L7, L8,  L9,

9

E7, E8 or E9) is considered a Director-level position or above.  Compensation for Director-level positions and above includes higher base salary, bonuses, stock options and/or significantly enhanced employee benefits that are not available in lower level designated 3 through 6 positions.

37.     As of December 23, 2008, there are well in excess of several thousand female employees of Lockheed Martin in L or E level positions, L3 through L6 and E3 through E6.

38.     Upon information and belief, based on available information concerning the gender identity of those in the Lockheed Management Incentive Compensation Program (generally L7 and above), 17.5% or a total of 317 of Defendant's employees designated L7 or E7 or above are female.  Further, upon information and belief, Plaintiffs estimate that fewer than half of these 317 women in positions 7 or above are outside of the Human Resources, Ethics and Communication departments, the three traditionally female departments.

39.     Lockheed Martin employs uniform employment and personnel policies throughout the United States. Lockheed Martin's Corporate (Enterprise Operations) business area includes the human resource functions common to the entire corporation. That corporate function maintains the company-wide personnel policies and procedures, including the corporate-wide salary grade ranges by job code, various electronic databases and the Human Resources intranet content. Regardless of business area, the policies relating to pay, assignment and promotion are uniform. Lockheed Martin regularly audits for compliance with their uniform company policies and procedures.

40.     Defendant maintains a corporate intranet which makes available to all Human Resources employees of Defendant (as well as certain other employees), a uniform set of Human Resources procedures.  In addition since September 24, 2007, Defendant has had an on-line tool called HR Metrics (visible in the HR Professionals section of the LM People intranet) which enables Human Resources employees throughout the company to produce a variety of reports "either business specific or enterprise wide to analyze attrition statistics, female and minority representation, compensation data and more."

41.     The personnel patterns and practices of Defendant that result in the gender-based discrimination alleged herein including pay discrimination and discrimination in promotions are systemic and reflected in and caused by Corporate policies and practices which are uniform throughout the various business areas and units of Defendant's United States operations.

42.     FOCUS is the Lockheed Martin People Compensation Planning System maintained by Defendant's Corporate ("Enterprise Operations") business area. Defendant maintains uniform Human Resources procedures relating to compensation as evidenced by the FOCUS program which charges the Corporate compensation group with maintaining uniform salary grade ranges for each job code.

43.     All information concerning compensation is stored in Defendant's "Lockheed Martin People," designated "LMP," database which includes electronically loaded and maintained records for all employees.  The FOCUS system is used to generate reports and analysis by salary grade level and to monitor conformity with Lockheed Martin policies.  Salary planning data by salary grade level is generated for

11

the entire Lockheed Martin population. Salary grade ranges by job code are decided at the Corporate level; their use is mandatory throughout Defendant; however, there is substantial discretion in setting salary within the salary ranges. The Corporate compensation function monitors compliance.

44.    There are more than 4,000 leaders and functional representatives with employee relations and compensation responsibilities. The rules and procedures for internal recruiting and selection are uniform throughout Defendant and are enforced throughout the Corporate human resources and audit functions. As described below, these policies permit, indeed, require excessive subjectivity in their implementation.

45.    Lockheed Martin imposes company-wide subjective criteria for determining education and experience requirements for promotion. Published Lockheed Martin Corporation criteria called "Exempt Bench Mark Level Criteria" describe minimum education and experience requirements for positions at all levels. Typically, the descriptions of minimum education and experience required for levels 4 through 7 are identical, effectively eliminating all but subjective criteria with regard to education and experience. For instance, for Program Managers and Subcontract Program Managers (L304/L749), a large job grouping within the company, "Typical Minimum Education and Experience" is identically described at levels 4 through 7: "Appropriate degree from an accredited college or equivalent experience/combined education, with professional experience and specialized training commensurate with assignment." Thus, Lockheed Martin provides no meaningful distinctions among the levels 4 through 7, rather it maintains a company-wide policy of excessive subjectivity in determining minimum requirements for selection for levels 4 through 7. This excessive

subjectivity results in discrimination based on gender in advancement, pay grade and compensation.

## PROMOTION DISPARATIES BASED ON GENDER

46.     It is the expressed, company-wide policy of Lockheed Martin that open positions at the L7 and E7 level and above are not posted.  This policy of not posting open positions that are above level 6 is documented in Defendant's corporate-wide policy, CPS-521 §§ 5.15 through 6.2.

47.     Most open positions at the lower levels,  L3, L4, L5, L6, E3, E4, E5 and E6, are posted for open application on Defendant's internal intranet, "Career Network, LM Careers,"  a company-wide online system used, *inter alia*,  for posting and processing job applications.  There is an icon "Apply for a Job" for positions below level 7.  With respect to these L6 and below positions (in contrast to its policy for L7 positions and above), Lockheed Corporate recognizes the extent to which posting open positions provides employees with a measure of uniform and transparent treatment: "The minimum posting period for any job is seven calendar days.  During this time, any employee who bids for the position must be considered for it. The hiring element must either interview the employee for the position, or provide the employee with the basis for the decision not to interview." (CPS-521 § 6.3, "Recruitment and Hiring Practices-corporate headquarters/corporate policy statement CPS-521/revision No. 7/effective December 18, 2006/copyright 2006 Lockheed Martin Corporation/current policies and procedures" as posted on Defendant's Intranet).

48.     Throughout Defendant, the classification "Executive Position" is uniformly set at level 7 or above with a base salary of $100,000 or more.  Recruitment is

controlled through the Corporate-wide "Executive Recruiting" office in the Staffing

Services department in Corporate Human Resources, which assigns one of its staff

members to perform the search (CPS-521 § 5.15).  As described hereinafter, even

below the level 7 designation, there is selectivity in posting positions which is

sanctioned by the Corporate company-wide policy that excludes "growth promotions"

from the requirement to post (CPS-521 § 5.15- 6.2).  Defendant's policy CPS-521

excludes from posting requirements, *inter alia*, Executive Positions (level 7 or above

and base salary of $100,000) and "growth promotion"  positions as well as Leadership

Development Program position rotations and other corporate sponsored rotational

programs or initial placements following Leadership Development Programs ("LDPs").

These policies are enforced by the Corporate business area on a company-wide basis

throughout the US.  "Any deviation from this [the foregoing] policy requires the prior

approval of the corporate Senior Vice President Human Resources or designee."(CPS-

521 § 8.5).

49.    As a result of Lockheed Martin's uniform policies limiting posting, and in

contrast to level 3-6 positions, there is no way for an employee to learn of a level 7

opening or a level 6 growth and advancement track position, other than through word of

mouth.  Further, there is no process by which employees can assert their interest in

applying for vacancies at the L7 level and above or promotion track level 6 positions

exempted from the posting requirements.   Historically and continuing through the

present, selection for these positions is made overwhelmingly by male directors and

officers of Defendant and the successful candidates have been disproportionately male.

There is no business justification for failure to use the established Lockheed Martin

14

recruitment and hiring procedures (CPS-521 § 6.3) for filling promotion track level 6 positions and level 7 positions.

50.     Throughout Defendant, the four business areas each conduct Talent Assessments and Development ("TAD").  The applicable managers have a once a year session where they put the names of every level 5 and above employee on a grid with sections based on the Performance Assessments Ratings from the annual performance reviews as well as a subjective assessment of "potential."  Throughout Defendant, these sessions are overwhelmingly conducted by men.  Open positions designated as "Leadership Positions," for which posting is also not required, even at the level 6 are filled through TAD.  There is no business justification for failing to use established Lockheed Martin recruitment and promotion procedures (CPS-521 § 6.3) for Leadership Positions at level 6.

51.     By way of further example, within the "Program Management" job classification, a very large classification of positions within the company, historical attendance at Senior Program Management Leadership Development Programs ("LPD") for L designated positions from inception through December 2007 has been disproportionally male.  Attendance is restricted to those employees nominated by a Vice President.  Vice Presidents are overwhelmingly male.  Over the entire period of its operation, 116 women have attended Program Management LDPs (17.1%) and 561 men have attended (82.9%).  Upon information and belief, women have been consistently and substantially underrepresented in Senior Program Management LDPs and for other job groupings.  There is no business justification for the substantial underrepresentation of female employees at senior Leadership Development Programs

15

of Lockheed Martin.

52.     There is also a company-wide policy that prior to promotion to a level 7 position, an employee must have been identified as a "Hi-Pot" (short for high potential) on a Performance by Potential Chart (called the "9-Blocker Chart") or be directly recommended by their supervisor.  There is a process for determining "Hi-Pot" at meetings, the details of which are not shared with employees.  Employees are not made aware who the selectors are or what criteria they use when evaluating candidates. Upon information and belief, the applicant must have a current annual performance appraisal rating of 1 or 2 (out of a possible 1 through 5).  Subjective and intentionally discriminatory performance appraisals (overwhelmingly performed by men) for 5 and 6 level positions combined with a "bell curve" rating system (which requires a designated distribution of performance ratings among a small group of employees rated by a common manager) result in women being disproportionately rated 3 (average) or below, effectively eliminating the possibility of being designated as a "Hi-Pot."  These performance ratings also directly impact the annual percentage pay increase that a Lockheed Martin employee receives.

53.     There is also a company-wide system of creating "stretch assignments" (also called growth positions) and designating them as a pre-requisite to promotion eligibility, even at the 4-6 level.  A "stretch assignment" is an opportunity to learn about another job in the company and it is usually a high visibility assignment.  "Stretch assignments" are generally considered necessary for advancement and are another exception to the posting requirement of CPS-521 § 6.3. There are no objective criteria or process for creation or selection of "stretch assignments."  Further, a "sponsor" (the

16

vast majority of whom are men) is very important to ultimately receiving a "stretch assignment."  "Stretch assignments" are created for and filled by men, rather than women, in disproportionate numbers. There is no business justification for the disproportionate selection of men for "stretch assignments."

54.    One example of Defendant's failure to promote female employees is Marlene Stringer.  Ms. Stringer was hired by Defendant in or about September 2005, for a Client Relationship Position in the Information Technology ("IT") department.  Her current department is the Data Centric Solutions group, which is part of the "Global Services" subgroup of Defendant's IS & GS division.  In this role, Ms. Stringer had performed tasks relating to both internal and external cyber security contracts for the US Department of Health and Human Services and the US Centers for Disease Control ("CDC").  Ms. Stringer has been a L6 (senior manager) since her hire.

55.    Ms. Stringer reports to Alan Small, Director of CDC Contracts (L6).  Mr. Small reports to Nick Patterson, Director (L7) who reports to Senior Vice President, Bob Davis.  Ms. Stringer is one of four individuals reporting to Mr. Small; the other three are all men.  Ms. Stringer is one of only two female managers in the entire department at her work location.

56.    In or about October 2007, Ms. Stringer applied to be a Program Director for CDC Contracts.  At the time, the job was an L7 position, although it has since been downgraded to an L6 position.  The job was posted, but it was not timely posted to give notice to all applicants.  The position was awarded to her current supervisor, Mr. Small, an outside hire who, upon information and belief, is less qualified than Ms. Stringer.  Ms. Stringer was never interviewed for the position and was never told why her application

was apparently not reviewed.

57.     Defendant failed to promote Ms. Stringer into the Program Director for CDC Contracts position because of her sex and this continues to detrimentally affect her compensation to this day.

58.     In or about January 2009, Ms. Stringer learned that Nick Patterson had been officially named as the Business Unit Director (L7).  Mr. Patterson had been "acting" in this position since the previous director, Gene Walker, was assigned to another business unit in the company.  This director position, however, was never posted, so Ms. Stringer never had a chance to formally apply.  There was never any reason given as to why she or others were not considered for the position.  Upon information and belief, Ms. Stringer is more qualified, more experienced, and has performed better at Lockheed Martin than Mr. Patterson.

59.     Defendant failed to promote Plaintiff Stringer into the Business Unit Director position because of her sex and this continues to detrimentally affect her compensation to this day.

60.     Lockheed Martin's aforesaid policies restricting posting of open positions as well as its policies and practices for selecting employees for Leadership Positions, stretch positions, growth positions, Leadership Development Programs, rotational programs and "Hi-Pot," each have a disparate impact on its female employees. These policies result in women advancing more slowly than men and have no business justification.

61.     Lockheed Martin's aforesaid policies restricting posting of open positions as well as its policies and practices for selecting employees for Leadership Positions,

18

stretch positions, growth positions, Leadership Development Programs, rotational programs, and "Hi-Pot," each constitute disparate treatment of its female employees.

62.    Plaintiffs and the Class are or were female employees of Lockheed Martin who were denied promotional opportunities or have slower career advancement than men as a result of their gender.

**PAY DISPARATIES**

63.    The aforesaid policies also have resulted and continue to result in women being paid less than similarly situated men.

64.    Upon information and belief based on available information, at the 3, 4, 5 and 6 levels females are (a) disproportionately paid less than men who perform substantially similar work, with similar or lesser skills and experience, and (b) disproportionately rated lower than men as a result of the "bell curve" forced rating systems of Defendant and their lower selection rates for stretch positions, leadership training and other advancement track opportunities, resulting in lower compensation.

65.    Upon information and belief, in the limited instances where women are awarded entry level senior management positions, they are often graded lower and/or paid less than customary for the positions and responsibilities.  The allegations concerning Plaintiff Bell as hereinafter set forth illustrate this.  By way of further example, Linda Raymond, a retired former Senior Manager was the only woman 6G Leader (for the second largest business unit of Maritime Systems Sensors ("MS2") located in Syracuse, New York).  When she was replaced by a man, Stephen Wylong, he was made a director as a L7 and was eligible for management incentive compensation.  Subsequently, Mr. Wylong was replaced by Mr. Bellino who retained Mr.

19

Wylong's L7 salary even though Mr. Bellino did not have a college degree.  In another instance, Nancy McLoda, site leader at the Manassas, Virginia, location of MS2, was only made a Director even after many years of serving in a director-level function; when she was finally made an L7 Director, she was not simultaneously made eligible for management incentive compensation.

66.     By way of further illustration, the Supplier Diversity program is a company-wide program impacting Global Supply Chain Management of all business areas of Lockheed Martin.  At present, there are four managers of Supplier Diversity reporting to Global Supply Chain management, one for each of the Lockheed Martin business areas: Aeronautics, IS & GS, Space Systems and Electronic Systems.  For years, there has been only one female among them, Elaine Mayfield, who has the highest number of direct reports (in this case small business liaison officers) reporting to her.  In addition, Ms. Mayfield is the only one among the four who has compliance responsibility, However, Ms. Mayfield was the only one among the four who was a manager rather than a senior manager. Recently, one of the male managers was replaced by a woman who was given a lesser title and salary grade despite taking on all of the responsibilities of the replaced male.

67.     Additionally, since at least 2005, Ms. Stringer has been paid less than her male comparators and categorized at a lower level grade than her comparators.

68.     In or about January 2009, Ms. Stringer was rated as "Exceptional" in her performance evaluation.  ("Exceptional" is the highest of five possible rankings.)  Mr. Small then downgraded her rating to "High Contributor."  When Ms. Stringer asked why, she was told that Human Resources had instructed him to downgrade certain evaluation

20

scores to meet "ethnic/gender levels."

69.    Defendant has a "Special Awards Program" where successful managers can receive periodic cash rewards for their accomplishments.  Over the past three and a half years Ms. Stringer has observed that the other three managers in her division and at her level, who are all male, have received cash payments under this Special Awards Program while she has not received such payments.  Upon information and belief, her management has resulted in significantly greater performance in her group than the other managers have delivered in their respective groups.

70.    Defendant gives managers discretion to allot bonuses to their subordinates.  After completing reviews of her subordinates in January 2009, Ms. Stringer did not allocate all the bonus money that had been allotted to her group due to her decisions about her group's performance.  Ms. Stringer was told by her superiors that she must allocate all of the monies allotted to her group.  However, in doing this, Ms. Stringer knew that her group would show a decreased profitability due to this extra expenditure.  This decreased profitability could affect her rating and performance reviews.  Upon information and belief, male managers in Ms. Stringer's division were not given similar orders to allocate all bonus moneys and therefore were able to show better profitability that benefited their performance ratings.

71.    Another example of Defendant's pattern and practice of grading female employees lower and/or paying them less than customary for their positions and responsibilities occurred in June 2009 when Janine Yablonski replaced John Caroselli in Defendant's Future Surface Combatant Programs.  Mr. Caroselli had been a Program Director, which, upon information and belief, was a L7 position; however, when Ms.

21

Yablonski took over Mr. Caroselli's job she was given the title of Program Manager, which, upon information and belief, was a L6 position.  Upon information and belief, since Ms. Yablonski is a lower-grade employee she is being paid less than Mr. Caroselli was.

72.     This pattern and practice of unequal pay, promotion, training and opportunity is not the result of random, non-discriminatory factors.  Rather, Lockheed Martin has acted and continues to act in a pattern and practice of intentional sex discrimination in pay, training, advancement and promotion by utilizing policies and practices that have an adverse impact on female employees that is without business necessity.

73.     As set forth above, these practices include:

- Paying female employees less  than similarly situated men;

- Assigning female employees lower job classification and/or salaries within the same job classification than similarly situated men;

- Failing to post promotional opportunities and L7 positions;

- Relying on subjective, inconsistently applied criteria in performance reviews, assignments, training, pay and promotional decisions;

- Reviewing and rating female employees less favorably than men;

- Providing less training and support for female employees, including fewer "stretch assignments" and other training and advancement opportunities; and,

- Failing to promote women through middle management and into upper

22

level positions.

74.    Sex has been and continues to be a motivating and/or determining factor in Defendant's discriminatory treatment of Plaintiffs and the Class.

## ALLEGATIONS OF PLAINTIFF BELL

75.    Plaintiff Bell is a current female employee of Lockheed Martin.  She is employed in Mount Laurel, New Jersey as a Senior Manager, Subcontract Administration within the MS2 business unit of the Electronic Systems business area of Defendant.  She maintains a L6 job grade.

76.    At various times from June of 1978 until the present, Plaintiff Bell worked at Defendant holding Leadership rated ("L-rated") positions, for a total of approximately twenty-one (21) years.  From February 2003 until April 2004, she worked as a Level 4 (L4) Procurement Engineer.  Plaintiff Bell was then transferred to Level Five (L5) Program Manager (pay grade E5G).  From June 2005 to the present, Plaintiff Bell has been employed as a Level 6 (L6) Senior Manager, Subcontract Administration (pay grade E6L), currently reporting to Douglas Goerke, Director of Sourcing.  Plaintiff Bell has worked at the Defendant's facility in Mount Laurel, New Jersey throughout this period. As set forth in subsequent paragraphs, throughout the relevant time period, and typical of an employee career path at Defendant, Plaintiff Bell applied for positions outside her business area, outside her business unit, and outside her then current geographical location.  In several instances, the successful but less qualified male applicant came from outside Plaintiff Bell's business area and unit and from outside his incumbent business area and unit.  For instance, in March 2008, Plaintiff Bell applied for and was denied a position for which Dan Feeney was selected.  At the time, Mr. Feeney

23

was Senior Program Manager for Subcontract Management within the IS & GS

business area and was promoted to Director of Subcontract Management in Corporate

Operations Excellence and Program Management Organization within the Corporate

Enterprise Operations business area. Mr. Feeney had been promoted through

successively more responsible positions in all of Defendant's other business areas:

Electronic Systems, Space Systems, IS & GS, and Global Supply Chain.

77.     At present, Plaintiff Bell is employed in Mount Laurel, New Jersey. Since

June 2005, Plaintiff Bell has been a Senior Manager, Subcontract Administration within

the MS2 business unit of the Electronic Systems business area of Defendant. On or

about June 13, 2005, Plaintiff Bell was transferred from an L5 Program Manager (pay

band E5G) to L6 Subcontract Administrator ("SCA"). As an L6 SCA, although a grade

level above L5 Program Manager position, the "L" pay band of this new position is lower

than the "G" pay band designation Plaintiff Bell had for her previous position.

78.     Plaintiff Bell now believes but does not have information to substantiate

that she has been paid less than comparable male employees. Plaintiff Bell has been

paid less than comparable male employees during the entire time she has held the SCA

designation. Defendant pays the Subcontract Program Manager ("SPM") position within

the Electronic Systems business unit on a higher pay band than the SCA position, even

though the two positions were previously on the same pay band and are comparable in

terms of function and responsibility. Very few women are SPMs, whereas, a far greater

percentage of the SCAs are women. Consequently, the vast majority of female workers

in the SCA/SPM pay group have been relegated to a pay band with a lower

compensation range.

24

79.     In or about December 2005, Plaintiff Bell received a performance review from her supervisor, Mr. Goerke.  She was designated "Successful Contributor."  This is the middle (3) rating of five possible ratings:  "Exceptional Contributor" (the highest); "High Contributor;" "Successful Contributor;" "Basic Contributor;" and, "Unsatisfactory" (the lowest).  Plaintiff Bell was not happy with this rating because she had met or exceeded the performance goals and objectives that were set for her and there were no criticisms of her performance through the year.  The only explanation Mr. Goerke offered Plaintiff Bell was that she needed to "network more."  This rating resulted in a lower salary increase than a "High Contributor," or an "Exceptional Contributor" would have received.

80.     Plaintiff Bell discussed with Mr. Goerke the fact that as a result of the June 2005 transfer she was now on a lower pay band (L as opposed to G), even though her position had a higher grade level (L6 as opposed to L5).  Plaintiff Bell explained that given her job duties and experience level, Plaintiff should be on the G pay band. Plaintiff Bell also discussed this issue with Ms. Monet Cleveland-Nathaniel, Director of HR. Plaintiff Bell was told that they "would look into it."

81.     In or about late 2005/early 2006, Plaintiff Bell had a discussion with Joseph Gonsiewski, Director of Operations and Facilities, a L7 employee who reported to Mr. Jim Thomas, President of Operations and Supply Chain Management within the Electronic Systems business area (Mr. Goerke also reports to Mr. Thomas).  Mr. Gonsiewski said he was looking for another assignment since the two-year rotation on his then current position was ending soon.  Plaintiff Bell met with Ms. Cleveland-Nathaniel and expressed her interest in Mr. Gonsiewski's L7 position.  Plaintiff Bell

25

asked what she needed to do to be included on the slate of candidates for this position. She was advised that she should meet with Mr. Robert Fiorentini, Vice President of Operations for MS2; Ms. Yvonne Hodge, Vice President of Quality for MS2; and, Mr. Philip Goslin, Director of Procurement.

82.    As instructed, Plaintiff Bell met with Mr. Fiorentini on or about April 10, 2006.  He told Plaintiff Bell that pursuant to Defendant's policy, to be considered for any Director positions, Plaintiff had to be considered a "Hi-Pot" and be in a favorable position on the "9-Blocker" Chart.  Since Mr. Goerke had rated Plaintiff Bell only "Successful Contributor" instead of one of the two higher ratings ("High Contributor" or "Exceptional Contributor"), Plaintiff Bell was not in a favorable position on the 9-Blocker Chart.

83.    Plaintiff Bell also spoke with Mr. Goslin in or about May 2006.  His advice was to consider a lateral move to another business unit even though she had no interest in doing that.

84.    Plaintiff Bell never met with Ms. Hodge who cancelled the meeting five times.

85.    On or about September 28, 2007, Plaintiff Bell learned that Mr. Robert O'Brien (male) was the successful applicant for Mr. Gonsiewski's former position.  Mr. O'Brien was previously a Facilities Director.  He came from the MS2 unit of the Electronic Systems business area.  The formal announcement of the promotion revealed that Mr. O'Brien's educational background was almost identical to Plaintiff Bell's.  This position was never posted, and Plaintiff Bell was never given an opportunity to finally apply for it or be interviewed.  The decision maker was Mr. Jim Thomas.

26

86.     In or about July 2006, Plaintiff Bell attended a Sourcing Excellence Council meeting with Mr. Goerke and a summer intern in Virginia.  Prior to arriving, Plaintiff Bell had arranged to meet for dinner with Dan Fitzpatrick, a Sourcing Director from the Orlando, Florida facility.  Plaintiff Bell was explicitly invited by Mr. Fitzpatrick; however, when Plaintiff Bell contacted Mr. Goerke that evening he was already at dinner with Mr. Fitzpatrick.  Mr. Goerke intentionally excluded Plaintiff Bell from this networking opportunity even though one of his criticisms of Plaintiff Bell had been that she needed to "network more."  Plaintiff Bell had dinner that night with the summer intern.

87.     In or about November 2006, Plaintiff Bell applied for a position in the IS & S (now called "IS & GS") business area.  The job was a Senior Manager, Subcontract Program Management reporting to Mr. Brad Magro.  The position was L6 SPM, G grade with a $6,000 minimum increase over her then current salary.  Since the job was an L6 position, it was posted on the company-wide Career Network.  Plaintiff Bell applied for the position but was never interviewed, even though the job description for this position was the same as the job Plaintiff Bell was then currently holding.   In February 2007, Plaintiff Bell learned that the position was awarded to Mr. Daniel Feeney (male), who, upon information and belief, was less qualified than she for this position.  Mr. Feeney came from the Corporate Operations/Enterprise business area.  Because this was an SPM position, it was paid at the higher "L" band and would have been a step toward an L7 position.  The decision maker was Brad Magro.

88.     In or about December 2006, Plaintiff Bell learned through word of mouth that there was a Director-level position open.  The position was formerly held by Mr.

27

Dave Zalewski in the Materiel Acquisition Center Mid-Atlantic within the Region

Electronic Systems business area.  Pursuant to Defendant's policies, this position was

not posted even though it was subsequently downgraded to a L6 SPM level.  Plaintiff

Bell contacted Ms. Cleveland-Nathaniel to express her interest.  Ms. Cleveland-

Nathaniel said she would try to get Plaintiff Bell on the slate of candidates.  She later

told Plaintiff Bell that the position had already been filled by Michael Lubrano (male),

who was formerly a Senior Manager in MS2 Moorestown within the Electronic Systems

business area.  The decision maker was Phil Goslin (male).  Plaintiff Bell was never

given the opportunity to apply for this position or be interviewed.  Upon information and

belief, Mr. Lubrano was less qualified for this position than Plaintiff Bell.

   89.  In or about late December 2006, Plaintiff Bell had another performance

review with Mr. Goerke.  Again, Mr. Goerke gave her the middle rating (3):  "Successful

Contributor."  While acknowledging that Plaintiff Bell was "fully successful" in meeting

performance goals and objectives for the year, he criticized Plaintiff Bell for not using

her skills as a "certified black belt" to exercise her "ability to lead" events.  Plaintiff Bell

had met or exceeded every goal that had been set for her and had met with Mr. Goerke

regularly throughout the previous twelve months to review her goals, objectives and

progress.  In these earlier meetings, he never mentioned the criticism he offered at the

December 2006 review.  Again, this rating resulted in a lower pay increase than Plaintiff

Bell would have received had she been rated "High Contributor" or "Exceptional

Contributor."

   90.  Plaintiff Bell again discussed with Mr. Goerke the fact that her pay band

had still not been increased to be on par with the SPM position.  Plaintiff Bell also

showed him the job description for the IS & S SPM position for which she was passed over. She stated that since that job and her current job were substantially the same, she asserted that they should be paid at equivalent levels. Mr. Goerke said that he would "speak with HR" about it. Mr. Goerke never again talked to Plaintiff Bell about it.

91. During the performance review Mr. Goerke assured Plaintiff Bell that hiring managers did not consider a candidate's performance review rating in the selection process and that a rating of "3" would have no bearing on potential career opportunities. Plaintiff Bell investigated and found that the "LM Careers" procedures clearly state that the performance rating is submitted along with the resume for all future jobs applied for in the company. In an effort to have her performance rating reconsidered, Plaintiff Bell submitted this information by email to Mr. Goerke on January 17, 2007, who responded: "In the past, I have never seen a PRS rating on a Bidder Resume that was pulled from LM People."

92. Plaintiff Bell discussed her performance rating with a coworker, Oliver Cueff (male), who also was reviewed by Mr. Goerke. Mr. Cueff was very happy with his rating. Mr. Goerke gave Mr. Cueff a better rating than Plaintiff Bell even though Mr. Cueff had alienated his entire staff, which Mr. Goerke knew.

93. Shortly thereafter, Plaintiff Bell complained to Ms. Cleveland-Nathaniel that she felt she was being discriminated against because she was female. Plaintiff Bell asked if women were fairly represented in the distribution (of performance ratings), but Ms. Cleveland-Nathaniel said she did not have the relevant data available. Plaintiff Bell explained the history of the positions she had been passed over for (and not even interviewed for), the unfair performance reviews that she received, the lack of support

29

from her supervisor, and the unfair standard to which she was continuously being subjected.  Ms. Cleveland-Nathaniel response was, "We got to get you out of there."

94.     On or about May 11, 2007, Plaintiff Bell had a discussion with Mr. Thomas, President of Operations and Supply Chain Management, in which Plaintiff Bell again expressed her interest in a Director-level position.  On or about August 28, 2007, Plaintiff Bell had a follow-up discussion with Mr. Thomas and told him that she was ready for a "stretch assignment."  Mr. Thomas told Plaintiff Bell that he did not think she was ready to take on this responsibility because she had not performed well on a previous project.  This was completely untrue.  Mr. Goerke had failed to advise Mr. Thomas of the work Plaintiff Bell had been doing which qualified her for a "stretch assignment."  Mr. Thomas and Plaintiff Bell agreed that Plaintiff Bell would continue to send her progress reports to Mr. Goerke, but that Plaintiff Bell would also copy Mr. Thomas.  He also said that he would look into finding a mentor for Plaintiff Bell since he admitted that a sponsor/mentor is important for any successful application to a Director-level position.  Mr. Thomas has never followed up on helping Plaintiff Bell in finding a sponsor/mentor.

95.     The promotion of Mr. O'Brien to Director of Operations and Facilities on October 1, 2007, left open his former position, Director of Facilities and Business Services, a L7 position within the MS2 business unit, Electronic Systems business area.  Plaintiff Bell spoke with Ms. Cleveland-Nathaniel's replacement, Gregory Holden, the new Human Resources Director (male), about this vacant Director position.  He strongly encouraged Plaintiff Bell to speak to Katina Williams, Human Resources Representative (female), and the hiring manager, Mr. David Broadbent.  Plaintiff Bell sent her resume

30

to Mr. Broadbent on October 1, 2007, noting her relevant experience and educational background.  Mr. Broadbent responded the same day that they were building the slate of candidates and that he would ensure that Plaintiff Bell's name was considered.

96.     On or about October 14, 2007, Plaintiff Bell called Ms. Williams who advised that Mr. Broadbent was finalizing the slate of candidates.  Plaintiff Bell followed up with Ms. Williams several times but could not get in touch with her, so Plaintiff Bell emailed Mr. Broadbent on or about November 9, 2007.  He responded to Plaintiff Bell the same day via telephone.  Among other things, Mr. Broadbent told Plaintiff Bell that she was not interviewed for the position because she did not have any relevant experience.  Plaintiff Bell discussed with him her understanding that at a Director-level position, the ability to manage and lead is more important than specific subject matter knowledge, since you have experts in the field reporting to you.  Plaintiff Bell asked Mr. Broadbent what operations experience he had when he became Vice President of Operations.  He admitted that he had none, adding the explanation that he had experts in this area reporting to him.  Plaintiff Bell told him that she felt that Defendant was applying different rules for different categories of people and asked him how many women were considered for this position.  He said that no women had been considered.

97.     On or about November 19, 2007, Plaintiff Bell met with Mr. Holden to discuss her conversation with Mr. Broadbent the previous week.  Plaintiff Bell asked Mr. Holden why Defendant could not find a single qualified candidate that was female.  Mr. Holden did not answer the question; instead, he asked whether Plaintiff Bell ever considered consulting (i.e. leaving Defendant's employment).  Among other things, Plaintiff Bell told him that she had never seen a woman get a "stretch assignment" and

fail but she had seen plenty of men get "stretch assignments" and fail.  Plaintiff Bell speculated that this is because Defendant is never willing to take a risk with a woman. When a female gets what is called a "stretch assignment," it is usually something for which she is already overqualified and is not a stretch at all, while men are often given opportunities well out of their normal business area.  Plaintiff Bell also showed Mr. Holden a copy of Mr. Broadbent's organizational chart and asked him: "What's wrong with this picture?" (as there were no women in his organization).  Mr. Holden said he was sure that if there were a qualified female candidate Mr. Broadbent would consider them.

98.     On or about December 7, 2007, Plaintiff Bell had her performance review with Mr. Goerke.  Again, he gave Plaintiff Bell the middle rating (3): "Successful Contributor" even though Plaintiff Bell met or exceeded every goal.  Plaintiff Bell told him she felt she was not given one of the two highest ratings because she is a woman and felt he was saving the higher ratings for the men.  Upon information and belief, supervisors are required to distribute their evaluative ratings of the employees they evaluate according to a "bell curve," and supervisors are only allowed to give a limited number of Exceptional (1) or High (2) Contributor ratings.  Plaintiff Bell asked how many women he rated Exceptional or High, and he said that he was not sure.  Plaintiff Bell told him that she believed that women were not fairly represented during the ranking/rating sessions.  His response was that there was one woman (of the thirteen present) among the team:  Barbie Bigelow, Chief Information Officer.  Again, this rating resulted in a lower pay increase than Plaintiff Bell would have received had she been rated "High Contributor" or "Exceptional Contributor."

32

99.   On or about January 2, 2008, Plaintiff Bell learned that Mr. Broadbent promoted another male, James Morris, formerly a Senior Manager in Manassas, Virginia in the MS2 business unit of the Electronic Systems business area into a position at MS2, Moorestown, New Jersey.  Upon information and belief, Mr. Morris had not complained of discrimination.  This position was not posted and Plaintiff Bell was never interviewed for it.  Upon information and belief, Mr. Morris was less qualified for this position than Plaintiff Bell.  Mr. David Broadbent was the decision maker.

100.   On or about January 11, 2008, Plaintiff Bell applied for a promotion to the position of Principle Project Specialist, grade E6H, reporting to Mr. Stephen Wylong in the MS2 business unit of the electronic systems business area.  Plaintiff Bell was interviewed twice but was not awarded the position.  Mr. Robert Garner was awarded the position.  Upon information and belief, Mr. Garner had not complained of discrimination.  Also, upon information and belief, Mr. Garner was less qualified for this position than Plaintiff Bell.  Mr. Wylong was the decision maker.

101.   Plaintiff Bell filed an EEOC Charge of Discrimination on January 15, 2008, complaining of sex discrimination.  A copy of the charge was sent to Defendant's counsel on the day it was filed.  Since filing the Charge, Plaintiff Bell was subjected to additional discrimination based on her sex and retaliation for complaining about the same.

102.   In March 2008, Plaintiff Bell learned that Mr. Feeney of IS & GS had been again promoted to a newly created job, Subcontract Program Director, a L7 position within the Corporate business area reporting to Mr. John Hatch, Vice President.  Mr. Hatch was the decision maker.  This position was never posted.  Upon information and

33

belief, Mr. Feeney was less qualified for this position than Plaintiff Bell, and he had not complained of discrimination like she had.

103.    Plaintiff Bell filed EEOC Charges of Discrimination on April 11, 2008 and April 25, 2008 complaining of sex discrimination.  Copies of the charges were sent to Defendant's counsel on the days that they were filed.  Since filing the Charges, Plaintiff Bell was subjected to additional discrimination based on her sex and retaliation for complaining about the same.

104.    In June 2008, Plaintiff Bell applied for an open position Program Management, Subcontract Senior Manager, Grade 6G within the MAC-MAR business unit of the Electronic Systems business area.  Plaintiff Bell was interviewed in August 2008.  This was the fourth job in Mr. Broadbent's organization that Plaintiff Bell had applied for (this organization has all men reporting into him).  Plaintiff Bell had previously applied for one reporting to Mr. Broadbent, one reporting into Bob Engle (who reports into Mr. Broadbent), one reporting to Vince Dothard (who reports to Mr. Engle), and this one reporting (dotted line reporting) to Steve Reuter (who reports to Vince Dothard).  On August 14, 2008, Plaintiff Bell learned that she was not awarded the position.  The position was awarded to Kevin Hickey, who is male and less qualified than Plaintiff Bell.  Upon information and belief, Mr. Hickey had not complained of discrimination.  The decision makers were Mr. Michael Roche (male) and Mr. Steve Reuter (male).

105.    In July 2008, Plaintiff Bell applied for a Subcontract Program Director, a L7 position in the Enterprise/Corporate business area.  Plaintiff Bell was not interviewed.  On September 29, 2008, Plaintiff Bell learned that the position had been awarded to Mr.

34

Lee Withington, formerly in the Aeronautics business area.  The position was not posted.  Upon information and belief, Plaintiff Bell was more qualified for the position than Mr. Withington.  Also, upon information and belief, Mr. Withington had not complained of discrimination.  The decision maker was Mr. Hatch.

106.    In July 2008, Plaintiff Bell learned of an open position as a Corporate Enterprise Program Management Director.  Plaintiff Bell asked Doug Goerke to present her as an applicant to John Hatch.  Plaintiff Bell sent over her resume for the position to Mr. Hatch on July 17, 2008.  Plaintiff Bell was not interviewed despite the fact that other less well qualified applicants were.  The position was not posted.  Mr. Hatch was the decision maker.

107.    In addition, throughout 2007 and 2008, Plaintiff Bell learned of and applied for the following positions at the L6G grade level for which she was not interviewed.  Plaintiff Bell believes that in each instance she was a qualified candidate and should have been interviewed.  Also, in each instance, the decision maker was male.  These positions include:

> a)  Program Management Senior.  Level 6G (USAF Aircraft Tire/FASI); (requisition number 6816BR and 7017BR);
>
> b)  Program Management, Senior Manager 6G (Norway New Frigate); (requisition number 18344BR);
>
> c)  Program Management, Senior Manager 6G (Aegis); (requisition number 2441BR);
>
> d)  Program Management, Senior Manager 6G (Canada Halifax); (requisition number 86660 BR); and,

35

e) Program Management, Senior Manager, 6G (Deepwater); (requisition number 24064BR).

108.   In November 2008, Plaintiff Bell learned that an open position as Program Management, Senior Manager was filled by Mr. Brian Frasco.  Plaintiff Bell was not interviewed for the position even though she was more qualified than Mr. Frasco. Additionally, upon information and belief, Mr. Frasco had not complained of discrimination.  Mr. Frasco now reports to Timothy Fuhr.  There are eight direct reports to Mr. Fuhr, none of whom are female.

109.   In November 2008, Plaintiff Bell also learned that David Lahta (male) was promoted to a Director-level position for which she was more qualified.  Upon information and belief, Mr. Lahta had not complained of discrimination.  The position was never posted.

110.   Plaintiff Bell filed an EEOC Charge of Discrimination on December 19, 2008, complaining of sex discrimination.  A copy of the charge was sent to Defendant's counsel on the day it was filed.  Since filing the Charge, Plaintiff Bell was subjected to additional discrimination based on her sex and retaliation for complaining about the same.

111.   After the filing of the original Complaint, in February 2009, Plaintiff Bell received a merit increase as well as a "discretionary salary adjustment."  On information and belief, Plaintiff Bell's discretionary salary adjustment was an "Equity Adjustment- EEO related salary adjustment" as defined in the Lockheed Martin FOCUS Discretionary Adjustment policy.

112.   As stated in the Lockheed Martin Human Resources policies: "Equity

36

Adjustment-EEO-related salary adjustments.  Adjustments are based on in-depth

compa-ratio analysis to correct discrepancies for which there was not clear

documentation of rationale based on legitimate business factors.  The adjustments are

discussed with management and entered into FOCUS by HR/Compensation."  Plaintiff

Bell believes that Lockheed Martin has made a series of these EEO adjustments as a

result of the filing of Plaintiff Bell's Complaint and because it knows that it underpays its

salaried female employees, including Plaintiffs and the Class.  The Lockheed Martin

FOCUS system has the capacity of reporting all EEO adjustments for any given period.

113.    On February 5, 2009, Plaintiff Bell applied for a Senior Program Manager

(S-SBMD PPMP Implementation Lead) position in the MS2 business unit in

Moorestown, New Jersey.  This was a L6 position, and Plaintiff Bell learned of it through

the company-wide Career Network.[1]  Plaintiff Bell was interviewed for this position on or

about March 11, 2009.  Plaintiff Bell learned on or about April 2, 2009, that Defendant

chose Mary Johnson for the position.  Plaintiff Bell was told that Ms. Johnson was

chosen in part because Ms. Johnson had customer interface experience at the admiral

level.  Typically employees with customer interface experience at the admiral level are

Directors or Vice Presidents, which are L7 and above positions.  Ms. Johnson is

overqualified for this L6 position and is another example of a female employee having a

lower grade job than male employees with similar or lesser qualifications.  Additionally,

upon information and belief, Ms. Johnson has not complained of discrimination.  The

---

[1] The job requirement for this position included a requirement of being a Level 2 (L2) Program Manager. Upon information and belief, as female employees have experienced promotional disparities based on their gender and are not well represented at higher job levels, this job requirement has a disparate impact upon female employees in violation of Title VII and has no business justification.

decision-maker was Carmen Valentino (male).

114.    On April 24, 2009, Plaintiff Bell applied for a Program Management Senior Manager position in the MS2 business area in Moorestown, New Jersey.  This was a L6 position, and Plaintiff Bell learned of it through the company-wide Career Network. Plaintiff Bell was not interviewed for this position.  On May 19, 2009, Plaintiff Bell learned that the position had been awarded to Spiros Koulas, a male employee, who, upon information and belief, had not complained of discrimination.  Upon information and belief, Plaintiff Bell was more qualified for the position than Mr. Koulas.  The decision maker was Allan Croly (male).

115.    In June 2009, Plaintiff Bell learned that Mike Mahon was promoted to a Director-level position for which she was more qualified.  Upon information and belief, Mr. Mahon had not complained of discrimination.  The position was never posted.

## ALLEGATIONS OF PLAINTIFF ABT

116.    Plaintiff Abt is a current female employee of Lockheed Martin in its King of Prussia, Pennsylvania office.  She was an employee of Martin Marietta when Martin Marietta and Lockheed merged, and she has been employed by Lockheed Martin for over fifteen (15) years.  Beginning in approximately November 2003, Plaintiff Abt was the Manager of Management and Data Systems' Engineering Leadership Development Program ("ELDP") and was a L5 manager.  During that time, she worked in Defendant's IS & GS business unit.

117.    In or around late 2007, Plaintiff Abt applied for a position in Defendant's Enterprise Information Services ("EIS") unit through the company-wide Career Network. Plaintiff Abt was awarded the position, and she became a Resource Manager on or

38

about January 15, 2008, which was also a L5 position.

118.    In October, 2008, Defendant re-organized and Plaintiff Abt was given the title of Software Development Analysis Manager and remained a L5 manager.  That same month, the EIS unit began being known as Enterprise Business Services ("EBS").

119.    In December 2008, there was another re-organization in which Plaintiff Abt kept her title and L5 grade.  Plaintiff Abt began reporting to Bonnie Eicher with this re-organization.  Ms. Eicher reported to Bettye Smith, Director of Technical Operations Software.  At that time, Plaintiff Abt was the only female out of six (6) individuals reporting to Ms. Eicher.  Out of the twenty-two (22) individuals reporting to Ms. Smith in the level above Plaintiff Abt, only seven (7) were female.

120.    As of August 17, 2009, Plaintiff Abt is a System Integration Analyst Senior Staff.  Plaintiff Abt is no longer a L5 manager; now she has been downgraded to an E5 employee.

121.    In or about December 2007, Plaintiff Abt was given an unfairly negative review because of her sex by her supervisor at the time, Don Hauser (male).  Mr. Hauser had frequently made comments displaying a bias against females, to the point where sometimes he would comment that if he didn't stop himself, Plaintiff Abt (or other female employees) might end up "smacking him" because of his offensive comments. Additionally, Plaintiff Abt did not laugh at Mr. Hauser's sexist jokes.  Upon information and belief, that unfair review has effected and continues to effect, Plaintiff Abt's compensation and opportunities for advancement.

122.    Upon information and belief, since at least January 2008, Plaintiff Abt has been paid less than her male comparators and categorized at a lower level grade than

comparable male employees despite performing comparable work. Prior to that time, Plaintiff Abt does not know what comparable male employees were paid.

123.   In or about December 2008, Plaintiff Abt was given an annual performance evaluation by an individual who had only supervised her for approximately two (2) months and who did not take into account her contributions in the previous position which she had held for ten (10) months. This evaluation gave Plaintiff Abt an overall score of "Basic" which was not warranted by her performance ("Basic" is the fourth out of five possible ratings, above only "Unsatisfactory.").

124.   Upon information and belief, Defendant's Enterprise Operations centrally assigns "quotas" for each department of how many people need to receive each type of scores and, if too many employees receive high scores, Defendant will instruct that some scores be lowered, regardless of that employee's actual performance. Upon information and belief, Plaintiff Abt's score, rather than any male comparator, was lowered based on these quotas rather than on her actual performance.

125.   As a result of the December 2008 re-organization, when Plaintiff Abt was reporting to Ms. Eicher, she was the only female out of 6 individuals reporting to Ms. Eicher. Upon information and belief, three (3) of her male comparators were in L6 positions, including John Bradish who had essentially the same job as Plaintiff Abt. Mr. Bradish had the "West Coast" portion of the "Web Team" and Plaintiff Abt had the "East Coast" portion. Plaintiff Abt also was working as an Engineering Manager on a special project, a responsibility which Mr. Bradish did not have. As a result of being graded below her male colleagues, or otherwise, Plaintiff Abt receives lower compensation than male employees.

40

126.    In or about January 2009, Defendant posted on its company-wide "Career Network" an opening for Plaintiff Abt's former job, which she had held successfully from 2003 until January 2008.  Although Defendant had kept Plaintiff Abt at the L5 level while she was in that position, a L6 employee assumed her job duties.  At the time that the position was posted in January 2009; however, the duties had been split into two jobs, one to be filled by a L5 manager and one to be filled by a L4 manager.  Plaintiff Abt was qualified and had successfully performed each of the jobs as she had previously been responsible for the duties of both positions simultaneously.  Out of all of the applicants, Defendant selected five (5) individuals for interviewing, only one of whom (Plaintiff Abt) was female.  Plaintiff Abt and one other male, Michael Thornton, were selected for a second interview.

127.    On or about March 4, 2009, Plaintiff Abt was informed that the L5 position had gone to Mr. Thornton, a male with less experience and fewer qualifications. Mr. Thornton had never even held a manager-level position before, much less the exact job duties at issue, as Plaintiff Abt had.  Plaintiff Abt was told by a member of the interview team that allegedly Mr. Thornton had performed better during the interview and had better "past performance."  Plaintiff Abt was also told that "upper management" had gotten involved.  These reasons are a pretext for sex discrimination, as Plaintiff Abt had been told by a member of the interview panel that she was "hands down" the best candidate and had given the best interview.  Plaintiff Abt also was advised that out of the six members of the panel, four had selected Plaintiff Abt for the position but "management" had intervened to select Mr. Thornton.

128.    The L4 position also was awarded to a male, William D'Abbenne, who did

41

not have as much seniority with Defendant as Plaintiff Abt did, and who was less qualified than Plaintiff Abt for the position as he did not have experience with the exact job duties at issue like Plaintiff Abt had.  Plaintiff Abt was not interviewed for this position.

129.   Plaintiff Abt filed an EEOC Charge of Discrimination on April 21, 2009, complaining of sex discrimination.  A copy of the charge was sent to Defendant's counsel on April 27, 2009.  Since filing the Charge, Plaintiff Abt has been subjected to additional discrimination based on her sex and retaliation for complaining about the same.

130.   In July 2009, Plaintiff Abt's department adopted a new promotion policy that an employee must receive one of the two highest performance review ratings, "High Contributor" or "Exceptional Contributor" to be eligible for promotion.  Due to Defendant's "bell curve" evaluation system in which male employees provide subjective ratings that result in women being disproportionately rated 3 (average) or below, this new policy has an adverse impact on female employees, including Plaintiff Abt, who seek promotions.

131.   During the week of August 10, 2009, Plaintiff Abt was told that Defendant would undergo a re-organization.  On or about August 13, 2009, Plaintiff Abt received an e-mail with her new title and grade level, System Integration Analyst Senior Staff (E5).  Plaintiff Abt also learned that her new manager was Knute Leidal (male).  With this re-organization Plaintiff Abt had been downgraded from a L5 manager to an E5 employee.  She lost her direct reports who would instead report to Steve Boffa (L5), John Yichuck (L5), and Patrick Vondra (L6), all male employees whom Defendant let

42

keep their job grades in the re-organization.  Upon information and belief, none of these male employees had complained of discrimination.

132.   When Plaintiff Abt saw her new job title and job description, she sent an e-mail to Ms. Eicher and Mr. Leidal to express her concern that her new job and title did not match her skill set and that she was being set up to fail.  Her new job required a skill set that Plaintiff Abt had not had in her twenty-year career.  Plaintiff Abt knew that other positions, such as System Engineer Senior Staff and Database Analyst Senior Staff positions, were available and better suited to her skill set, so she offered to take on one of these positions instead.

133.   Approximately two (2) weeks later, Plaintiff Abt met with Mr. Leidal and again expressed her concern that she was being set up to fail with the new position. Plaintiff Abt said that she was concerned that she would be rated as a "Basic Contributor" again since she did not have the skill set for the position and that a second "Basic Contributor" rating would result in her being placed on a Performance Improvement Plan ("PIP").  Then a PIP could be used to justify her termination later. Mr. Leidal told Plaintiff Abt that job titles did not matter and that she should not worry about being set up to fail.  Mr. Leidal did not change her job title or grade.

134.   After this meeting, Plaintiff Abt attended a meeting in which Sharon Watts, the Vice President of Technical Operations, explained that Defendant was changing its performance review policy this year to consider and base an employee's review rating in part on an employee's skill set in comparison with other employees who have the same job title.  Thus, Plaintiff Abt's new title that does not match her skill set will make it difficult for her to compete with her peers and receive a positive performance review

43

rating this year.  A second performance rating of "Basic Contributor" will result in a PIP, which will eliminate Plaintiff Abt's ability to be promoted and also will result in her receiving less compensation.

## ALLEGATIONS OF PLAINTIFF WALKER

135.   Plaintiff Walker was hired by Defendant in or about 2003 for a Lead Position in the Human Resources department (E4) of the Aeronautics business unit. Plaintiff Walker's current position is Project Management (E4) in the Human Resources department of Aeronautics.

136.  Since 2003, Plaintiff Walker has been paid less than her male comparators.  By way of example only, Al Butler, a Recruiter (E4), is paid more than Plaintiff Walker.

137.   In or about January or February 2009, Defendant failed to promote Plaintiff Walker into an open position (University Relations Manager) (L5) because of her sex, and this continues to detrimentally affect her compensation to this day.

138.   Plaintiff Walker was told in or about March 2009 that with regard to Defendant's failure to promote her into the University Relations Manager position that another applicant, Eric Williams (male) was a better choice.  This stated reason was a pretext for sex discrimination, as Plaintiff Walker has college recruiting experience, which is required for the position; whereas, Mr. Williams does not.  Also, Plaintiff Walker has more leadership experience than Mr. Williams.

139.   As set forth more fully above, Plaintiffs' sex and the sex of the Class and the Subclass was a motivating and/or determinative factor in Defendant's discriminatory treatment of Plaintiffs, the Class and the Subclass.

44

140.    As set forth more fully above, Defendant's compensation practices and policies, "bell curve" evaluation system, mentoring/sponsors policies, "stretch" positions policies, and posting and promotion policies have the intention and effect of discriminating against Plaintiffs, the Class and the Subclass.

141.    As set forth more fully above, Defendant's compensation practices and policies, "bell curve" evaluation system, mentoring/sponsors policies, "stretch" positions policies, and posting and promotion policies result in disparate impact against Plaintiffs, the Class and the Subclass.

**COUNT I**

**SEX DISCRIMINATION UNDER TITLE VII**

**Plaintiffs Bell, Abt and Walker and the Class**

142.    Plaintiffs incorporate by reference as if fully set forth herein, the allegations of paragraphs 1 through 141 above.

143.    This claim is brought on behalf of Plaintiffs and the Class they represent.

144.    The foregoing conduct violates Title VII.

145.    Plaintiffs filed charges of discrimination against Lockheed Martin which are attached as Exhibits 1, 4, 5, and 7 and incorporated herein by reference.  From the filing of the first EEOC charge, the class nature of Plaintiffs' charges has been known to Defendant.

146.    Lockheed Martin has and continues to maintain procedures and practices for making decisions about promotions, assignments and compensation that is excessively subjective and which have an adverse impact on its female employees, including Plaintiffs and the Class. These procedures and practices have no business

45

justification.

147.    Lockheed Martin has intentionally discriminated against Plaintiffs and the
Class and has maintained procedures and practices for making decisions about
promotions, assignments and compensation that are excessively subjective and through
which it discriminates against its female employees, including Plaintiffs and the Class.
By committing the foregoing acts of discrimination against Plaintiffs and the Class,
Defendant has willfully and intentionally engaged in unlawful sexual discrimination in
violation of Title VII.

148.    The sex of Plaintiffs and the Class was a motivating and/or determination
factor in Defendant's treatment of Plaintiffs and the Class.

149.    The foregoing conduct of Defendant  was intentional, malicious, wanton,
outrageous under the circumstances and performed either recklessly or with callous
indifference to Plaintiffs' and the Class' federally protected rights.  This was done by and
with the knowledge of Defendant's upper management and warrants the imposition of
punitive damages.

150.    Defendant has caused and continues to cause Plaintiffs and all Class
members substantial losses in earnings, promotional opportunities, training, mentoring
and other employment benefits.

151.    As a direct and proximate result of Defendant's violation of Title VII,
Plaintiffs and the Class will continue to suffer irreparable injury and monetary damages
unless and until this Court grants the relief requested herein.

152.    Plaintiffs and the Class represent that they have no plain, adequate or
complete remedy in law to redress the wrongs alleged herein, and the injunctive relief

sought in this action is the only means of securing complete and adequate relief. Plaintiffs and the Class are now suffering and will continue to suffer irreparable injury from Defendant's discriminatory acts and omissions.

153.   Plaintiffs and the Class are entitled to the relief requested in the Prayer for Relief below, including declaratory and injunctive relief.

154.   Plaintiffs and the Class are entitled to recover punitive damages as a result of Defendant's malice and/or reckless indifference to their protected rights.

155.   No previous application has been made for the relief requested herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Bell, Abt and Walker and the Class pray that the Court grant relief as follows:

a)   Certification of Count I as a Class Action on behalf of the proposed Class;

b)   Designation of Plaintiffs as representatives of the Class;

c)   Appointment of Console Law Offices, LLC; Doffermyre Shields Canfield & Knowles, LLC; and Giskan Solotaroff Anderson & Stewart, LLP as Class Counsel of record for the Class pursuant to Federal Rule of Civil Procedure 23(g);

d)   A declaratory judgment that the practices complained of herein are unlawful and violate Title VII;

e)   An adjudication that Defendant's violations of Title VII were willful;

f)   A preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and all persons acting in concert with them, as provided by law, to prohibit each of the unlawful practices, policies, and patterns set forth herein;

g)      An Order that Defendant  employ some method to confirm that future

decisions affecting employee pay, assignments to promotion track positions, and

promotions are made without regard to sex, including, but not limited to, hiring an

expert Industrial Psychologist to review Defendant's employment practices and

develop new practices, a Labor Economist/Statistician to conduct a pay equity

analysis, and an external advisor concerning equal employment opportunity and

diversity initiatives to monitor the promotion and retention of female employees;

adjusting pay discrepancies that have been based on gender so that female

employees are paid the same as their male colleagues for doing the same or

similar work; posting all job positions and promotional opportunities; eliminating

the "bell curve" evaluation system; and providing equal training opportunities to

all qualified employees;

h)      An Order that Defendant institute sufficient policies to deter and prevent

discrimination based on sex in pay, assignments to promotion track positions and

promotion;

i)      An Order that Defendant institute a policy which provides for appropriate

remedial and corrective action for violators of said policies;

j)      An Order instating Plaintiffs and the Class to their rightful positions and

adjusting their compensation, including wages and benefits to those which would

have been attained but for Defendant's discriminatory practices;

k)      An award to Plaintiffs and the Class of damages suffered as a result of

Defendant's unlawful conduct including back pay, front pay, instatement,

promotion, payment of lost compensation and benefits, and such other legal or

48

equitable relief as to the Court deems appropriate to effectuate the purposes of all statutes pled;

l)      An award to Plaintiffs and the Class of exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

m)      An award of reasonable attorney's fees and costs incurred by and on behalf of Plaintiffs and the respective Class to be paid by Defendant;

n)      Pre-judgment and post-judgment interest, as provided by law; and,

o)      Such other further legal or equitable relief as this Court deems necessary, just and proper.

**COUNT II**

**RETALIATION UNDER TITLE VII**

**Plaintiff Bell**

156.   Plaintiff Bell incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 155 above.

157.   Defendant retaliated against Plaintiff Bell for questioning the discriminatory behavior and motivation of Defendant with respect to its female employees, for claiming that she and the other female employees were being discriminated against and asking that the discrimination be corrected, and for filing the original, First Amended, and instant Complaint.

158.   Defendant's retaliation included, but was not limited to, Defendant's failing to select Plaintiff Bell for subsequent promotions despite her being the most well-qualified candidate; underrating Plaintiff Bell's performance evaluations; failing to

49

correct her pay disparity based on gender; failing to select Plaintiff Bell for any Leadership Institute, stretch or other advancement track assignments; and, failing to facilitate a mentor/sponsor for Plaintiff Bell.

159.  Plaintiff Bell's complaints of discrimination were a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff Bell.

160.  By committing the foregoing acts of discrimination and retaliation against Plaintiff Bell, Defendant has willfully and intentionally engaged in unlawful retaliation in violation of Title VII.

161.  As a direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant in violation of Title VII, Plaintiff Bell has incurred in the past and will in the future incur damages, including without limitation, loss of wages and benefits, pain and suffering, embarrassment, humiliation, mental anguish, sustained loss of future earnings, severe emotional and psychological distress, loss of self-esteem, loss of enjoyment of life, and loss of future earning capacity, the full extent of which is not known at this time.  Plaintiff Bell is entitled to declaratory and injunctive relief, back pay, front pay or reinstatement, compensatory and punitive damages and interest due thereon as well as attorneys' fees and costs and such other damages and relief as allowed by law or in equity.

162.   The foregoing conduct of Defendant was intentional, malicious, wanton, outrageous under the circumstances and performed either recklessly or with callous indifference to Plaintiff Bell's federally protected rights.  It was done by and with the knowledge of Defendant's upper management and warrants the imposition of punitive damages.

163.   As a direct and proximate result of Defendant's violation of Title VII, Plaintiff Bell will continue to suffer irreparable injury and monetary damages unless and until this Court grants the relief requested herein.

164.   Plaintiff Bell is entitled to the relief requested in the Prayer for Relief below, including declaratory and injunctive relief.

165.   No previous application has been made for the relief requested herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bell prays that the Court grant relief as follows:

a)     A declaratory judgment that the practices complained of herein are unlawful and violate Title VII;

b)     An adjudication that Defendant's violations of Title VII were willful;

c)     A preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and all persons acting in concert with them, as provided by law, to prohibit each of the unlawful practices, policies, and patterns set forth herein;

d)     An Order that Defendant employ some method to confirm that future decisions affecting employee pay, assignments to promotion track positions, and promotions are made without regard to complaint status, including, but not limited to, hiring an expert Industrial Psychologist to review Defendant's employment practices and develop new practices, a Labor Economist/Statistician to conduct a pay equity analysis, and an external advisor concerning equal employment opportunity and diversity initiatives to monitor the promotion and retention of employees who have complained of sex discrimination; adjusting pay

51

discrepancies that have been based on complaint status so that employees who have complained of sex discrimination are paid the same as their colleagues who have not complained of sex discrimination for doing the same or similar work; posting all job positions and promotional opportunities; eliminating the "bell curve" evaluation system; and providing equal training opportunities to all qualified employees;

e) 	An Order that Defendant institute sufficient policies to deter and prevent retaliation based on an employee's complaint status in pay, assignments to promotion track positions and promotion;

f) 	An Order that Defendant institute a policy which provides for appropriate remedial and corrective action for violators of said policies;

g) 	An Order instating Plaintiff Bell to her rightful positions and adjusting her compensation, including wages and benefits to those which would have been attained but for Defendant's retaliatory practices;

h) 	An award to Plaintiff Bell of all damages suffered as a result of Defendant's unlawful conduct including back pay, front pay, instatement, promotion, payment of lost compensation and benefits, compensatory damages, and such other legal or equitable relief as to the Court deems appropriate to effectuate the purposes of all statutes pled;

i) 	An award to Plaintiff Bell of exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

j) 	An award of reasonable attorney's fees and costs incurred by and on behalf of Plaintiff Bell to be paid by Defendant;

52

k)    Pre-judgment and post-judgment interest, as provided by law; and,

l)    Such other further legal or equitable relief as this Court deems necessary, just and proper.

## COUNT III

## SEX DISCRIMINATION UNDER NJLAD

### Plaintiff Bell and the Subclass

166.    Plaintiff Bell incorporates herein by reference paragraphs 1 through 165 above, as if set forth herein in their entirety.

167.    This claim is brought on behalf of Plaintiff Bell and the Subclass she represents. Plaintiff Bell filed charges of discrimination against Lockheed Martin which are attached as Exhibits 1 and 4 and incorporated herein by reference.  From the filing of her first EEOC charge, the class nature of Plaintiff Bell's charge has been known to Defendant.

168.    Defendant, by the above-described discriminatory acts, has violated the NJLAD.

169.    Lockheed Martin has and continues to maintain procedures and practices for making decisions about promotions, assignments and compensation that are excessively subjective and which have an adverse impact on its female employees, including Plaintiff Bell and the Subclass. These procedures and practices have no business justification.

170.    Lockheed Martin has intentionally discriminated against Plaintiff Bell and the Subclass and has maintained procedures and practices for making decisions about promotions, assignments and compensation that are excessively subjective and through

which it discriminates against its female employees, including Plaintiff Bell and the Subclass. By committing the foregoing acts of discrimination against Plaintiff Bell and the Subclass, Defendant has willfully and intentionally engaged in unlawful sexual discrimination and harassment in violation of the NJLAD.

171.    Members of Defendant's upper management had actual participation in and/or willful indifference to the wrongful conduct described herein, and Defendant's conduct warrants the imposition of punitive damages.

172.    As a direct and proximate result of Defendant's violations of the NJLAD, Plaintiff Bell and the Subclass have sustained the injuries, damages and losses set forth herein, and have incurred attorney's fees and costs.

173.    Plaintiff Bell and the Subclass are entitled to the relief requested in the Prayer for Relief below, including declaratory and injunctive relief.

174.    Plaintiff Bell and the Subclass are now suffering, and will continue to suffer, irreparable harm and monetary damages as a result of Defendant's discriminatory acts unless and until this Court grants the relief requested herein.

175.    No previous application has been made for the relief requested herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bell and the Subclass pray that the Court grant relief as follows:

a)    Certification of Count III as a Class Action on behalf of the proposed Subclass;

b)    Designation of Plaintiff Bell as representative of the Subclass;

c)    Appointment of Console Law Offices, LLC; Doffermyre Shields Canfield &

54

Knowles, LLC; and Giskan Solotaroff Anderson & Stewart, LLP as Class Counsel of record for the Subclass pursuant to Federal Rule of Civil Procedure 23(g);

d)      A declaratory judgment that the practices complained of herein are unlawful and violate the NJLAD;

e)      An adjudication that Defendant's violations of the NJLAD were willful;

f)      A preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and all persons acting in concert with them, as provided by law, to prohibit each of the unlawful practices, policies, and patterns set forth herein;

g)      An Order that Defendant  employ some method to confirm that future decisions affecting employee pay, assignments to promotion track positions, and promotions are made without regard to sex, including, but not limited to, hiring an expert Industrial Psychologist to review Defendant's employment practices and develop new practices, a Labor Economist/Statistician to conduct a pay equity analysis, and an external advisor concerning equal employment opportunity and diversity initiatives to monitor the promotion and retention of female employees; adjusting pay discrepancies that have been based on gender so that female employees are paid the same as their male colleagues for doing the same or similar work; posting all job positions and promotional opportunities; eliminating the "bell curve" evaluation system; and providing equal training opportunities to all qualified employees;

h)      An Order that Defendant institute sufficient policies to deter and prevent discrimination based on sex in pay, assignments to promotion track positions and

55

promotion;

i)      An Order that Defendant institute a policy which provides for appropriate remedial and corrective action for violators of said policies;

j)      An Order instating Plaintiff Bell and the Subclass to their rightful positions and adjusting their compensation, including wages and benefits to those which would have been attained but for Defendant's discriminatory practices;

k)      An award to Plaintiff Bell and the Subclass of damages suffered as a result of Defendant's unlawful conduct including back pay, front pay, instatement, promotion, payment of lost compensation and benefits, and such other legal or equitable relief as to the Court deems appropriate to effectuate the purposes of all statutes pled;

l)      An award to Plaintiff Bell and the Subclass of exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

m)      An award of reasonable attorney's fees and costs incurred by and on behalf of Plaintiff Bell and the respective Subclass to be paid by Defendant;

n)      Pre-judgment and post-judgment interest, as provided by law; and,

o)      Such other further legal or equitable relief as this Court deems necessary, just and proper.

## COUNT IV

## RETALIATION UNDER THE NJLAD

### Plaintiff Bell

176.   Plaintiff Bell incorporates herein by reference paragraphs 1 through 175 above, as it set forth herein.

177.   Defendant, by the above-described retaliatory acts, has violated the NJLAD.

178.   Said violations were intentional and willful.

179.   Members of Defendant's upper management had actual participation in, or willful indifference to, the wrongful conduct described herein and Defendant's conduct warrants the imposition of punitive damages.

180.   As a direct and proximate result of Defendant's violations of the NJLAD, Plaintiff Bell has sustained the injuries, damages and losses set forth herein, and has incurred attorney's fees and costs.

181.   Plaintiff Bell is now suffering, and will continue to suffer, irreparable harm and monetary damages as a result of Defendant's retaliatory acts unless and until this Court grants the relief requested herein.

182.   Plaintiff Bell is entitled to the relief requested in the Prayer for Relief below, including declaratory and injunctive relief.

183.   No previous application has been made for the relief requested herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Bell prays that the Court grant relief as follows:

a)   A declaratory judgment that the practices complained of herein are

unlawful and violate the NJLAD;

b)      An adjudication that Defendant's violations of the NJLAD were willful;

c)      A preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and all persons acting in concert with them, as provided by law, to prohibit each of the unlawful practices, policies, and patterns set forth herein;

d)      An Order that Defendant employ some method to confirm that future decisions affecting employee pay, assignments to promotion track positions, and promotions are made without regard to complaint status, including, but not limited to, hiring an expert Industrial Psychologist to review Defendant's employment practices and develop new practices, a Labor Economist/Statistician to conduct a pay equity analysis, and an external advisor concerning equal employment opportunity and diversity initiatives to monitor the promotion and retention of employees who have complained of sex discrimination; adjusting pay discrepancies that have been based on complaint status so that employees who have complained of discrimination are paid the same as their colleagues who have not complained of sex discrimination for doing the same or similar work; posting all job positions and promotional opportunities; eliminating the "bell curve" evaluation system; and providing equal training opportunities to all qualified employees;

e)      An Order that Defendant institute sufficient policies to deter and prevent retaliation based on an employee's complaint status in pay, assignments to promotion track positions and promotion;

58

f)      An Order that Defendant institute a policy which provides for appropriate remedial and corrective action for violators of said policies;

g)      An Order instating Plaintiff Bell to her rightful positions and adjusting her compensation, including wages and benefits to those which would have been attained but for Defendant's retaliatory practices;

h)      An award to Plaintiff Bell of all damages suffered as a result of Defendant's unlawful conduct including back pay, front pay, instatement, promotion, payment of lost compensation and benefits, compensatory damages, and such other legal or equitable relief as to the Court deems appropriate to effectuate the purposes of all statutes pled;

i)      An award to Plaintiff Bell of exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

j)      An award of reasonable attorney's fees and costs incurred by and on behalf of Plaintiff Bell to be paid by Defendant;

k)      Pre-judgment and post-judgment interest, as provided by law; and,

l)      Such other further legal or equitable relief as this Court deems necessary, just and proper.

## COUNT V

## SEX DISCRIMINATION UNDER TITLE VII

### Plaintiff Abt

184.    Plaintiff Abt incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 183 above.

185.    This claim is brought on behalf of Plaintiff Abt.

186.   The foregoing conduct violates Title VII.

187.   Plaintiff Abt filed a charge of discrimination against Lockheed Martin which is attached as Exhibit 5 and incorporated herein by reference.

188.   Lockheed Martin has and continues to maintain procedures and practices for making decisions about promotions, assignments and compensation that is excessively subjective and which have an adverse impact on its female employees, including Plaintiff Abt. These procedures and practices have no business justification.

189.   Lockheed Martin has intentionally discriminated against Plaintiff Abt and has maintained procedures and practices for making decisions about promotions, assignments and compensation that are excessively subjective and through which it discriminates against its female employees, including Plaintiff Abt.   By committing the foregoing acts of discrimination against Plaintiff Abt, Defendant has willfully and intentionally engaged in unlawful sexual discrimination in violation of Title VII.

190.   The sex of Plaintiff Abt was a motivating and/or determination factor in Defendant's treatment of Plaintiff Abt.

191.   As a direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant in violation of Title VII, Plaintiff Abt has incurred in the past, and will in the future incur, damages, including without limitation, loss of wages and benefits, pain and suffering, embarrassment, humiliation, mental anguish, sustained loss of future earnings, severe emotional and psychological distress, loss of self esteem, loss of enjoyment of life and loss of future earning capacity, the full extent of which is not known at this time.  Plaintiff Abt is entitled to declaratory and injunctive relief, front pay or reinstatement, compensatory and punitive damages and interest due

thereon as well as attorneys' fees and costs and such other damages and relief as allowed by law or in equity.

192.   The foregoing conduct of Defendant was intentional, malicious, wanton, outrageous under the circumstances and performed either recklessly or with callous indifference to Plaintiff Abt's federally protected rights.  This was done by and with the knowledge of Defendant's upper management and warrants the imposition of punitive damages.

193.   As a direct and proximate result of Defendant's violation of Title VII, Plaintiff Abt will continue to suffer irreparable injury and monetary damages unless and until this Court grants the relief requested herein.

194.   Plaintiff Abt is entitled to the relief requested in the Prayer for relief below, including declaratory and injunctive relief.

195.   No previous application has been made for the relief requested herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Abt prays that the Court grant relief as follows:

a)      A declaratory judgment that the practices complained of herein are unlawful and violate Title VII;

b)      An adjudication that Defendant's violations of Title VII were willful;

c)      A preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and all persons acting in concert with them, as provided by law, to prohibit each of the unlawful practices, policies, and patterns set forth herein;

d)      An Order that Defendant  employ some method to confirm that future

61

decisions affecting employee pay, assignments to promotion track positions, and promotions are made without regard to sex, including, but not limited to, hiring an expert Industrial Psychologist to review Defendant's employment practices and develop new practices, a Labor Economist/Statistician to conduct a pay equity analysis, and an external advisor concerning equal employment opportunity and diversity initiatives to monitor the promotion and retention of female employees; adjusting pay discrepancies that have been based on gender so that female employees are paid the same as their male colleagues for doing the same or similar work; posting all job positions and promotional opportunities; eliminating the "bell curve" evaluation system; and providing equal training opportunities to all qualified employees;

e)   An Order that Defendant institute sufficient policies to deter and prevent discrimination based on sex in pay, assignments to promotion track positions and promotion;

f)   An Order that Defendant institute a policy which provides for appropriate remedial and corrective action for violators of said policies;

g)   An Order instating Plaintiff Abt to her rightful positions and adjusting her compensation, including wages and benefits to those which would have been attained but for Defendant's discriminatory practices;

h)   An award to Plaintiff Abt of all damages suffered as a result of Defendant's unlawful conduct including back pay, front pay, instatement, promotion, payment of lost compensation and benefits, compensatory damages, and such other legal or equitable relief as to the Court deems appropriate to effectuate the purposes

62

of all statutes pled;

i)      An award to Plaintiff Abt of exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

j)      An award of reasonable attorney's fees and costs incurred by and on behalf of Plaintiff Abt to be paid by Defendant;

k)      Pre-judgment and post-judgment interest, as provided by law; and,

l)      Such other further legal or equitable relief as this Court deems necessary, just and proper.

## COUNT VI

## RETALIATION UNDER TITLE VII

### Plaintiff Abt

196.   Plaintiff Abt incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 195 above.

197.   Defendant retaliated against Plaintiff Abt for questioning the discriminatory behavior and motivation of Defendant with respect to its female employees, for claiming that she and the other female employees were being discriminated against and asking that the discrimination be corrected.

198.   Defendant's retaliation included, but was not limited to, Defendant's demoting Plaintiff Abt from a management position to a position for which she is being set up to fail.

199.   Plaintiff Abt's complaints of discrimination were a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff Abt.

200.   By committing the foregoing acts of discrimination and retaliation against

63

Plaintiff Abt, Defendant has willfully and intentionally engaged in unlawful retaliation in violation of Title VII.

201.   As a direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant in violation of Title VII, Plaintiff Abt has incurred in the past and will in the future incur damages, including without limitation, loss of wages and benefits, pain and suffering, embarrassment, humiliation, mental anguish, sustained loss of future earnings, severe emotional and psychological distress, loss of self-esteem, loss of enjoyment of life, and loss of future earning capacity, the full extent of which is not known at this time.  Plaintiff Abt is entitled to declaratory and injunctive relief, back pay, front pay or reinstatement, compensatory and punitive damages and interest due thereon as well as attorneys' fees and costs and such other damages and relief as allowed by law or in equity.

202.   The foregoing conduct of Defendant was intentional, malicious, wanton, outrageous under the circumstances and performed either recklessly or with callous indifference to Plaintiff Abt's federally protected rights.  It was done by and with the knowledge of Defendant's upper management and warrants the imposition of punitive damages.

203.   As a direct and proximate result of Defendant's violation of Title VII, Plaintiff Abt will continue to suffer irreparable injury and monetary damages unless and until this Court grants the relief requested herein.

204.   Plaintiff Abt is entitled to the relief requested in the Prayer for Relief below, including declaratory and injunctive relief.

205.   No previous application has been made for the relief requested herein.

64

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Abt prays that the Court grant relief as follows:

a)      A declaratory judgment that the practices complained of herein are unlawful and violate Title VII;

b)      An adjudication that Defendant's violations of Title VII were willful;

c)      A preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and all persons acting in concert with them, as provided by law, to prohibit each of the unlawful practices, policies, and patterns set forth herein;

d)      An Order that Defendant  employ some method to confirm that future decisions affecting employee pay, assignments to promotion track positions, and promotions are made without regard to complaint status, including, but not limited to, hiring an expert Industrial Psychologist to review Defendant's employment practices and develop new practices, a Labor Economist/Statistician to conduct a pay equity analysis, and an external advisor concerning equal employment opportunity and diversity initiatives to monitor the promotion and retention of employees who have complained of sex discrimination; adjusting pay discrepancies that have been based on complaint status so that employees who have complained of sex discrimination are paid the same as their colleagues who have not complained of sex discrimination for doing the same or similar work; posting all job positions and promotional opportunities; eliminating the "bell curve" evaluation system; and providing equal training opportunities to all qualified employees;

65

e)    An Order that Defendant institute sufficient policies to deter and prevent retaliation based on an employee's complaint status in pay, assignments to promotion track positions and promotion;

f)    An Order that Defendant institute a policy which provides for appropriate remedial and corrective action for violators of said policies;

g)    An Order instating Plaintiff Abt to her rightful positions and adjusting her compensation, including wages and benefits to those which would have been attained but for Defendant's retaliatory practices;

h)    An award to Plaintiff Abt of all damages suffered as a result of Defendant's unlawful conduct including back pay, front pay, instatement, promotion, payment of lost compensation and benefits, compensatory damages, and such other legal or equitable relief as to the Court deems appropriate to effectuate the purposes of all statutes pled;

i)    An award to Plaintiff Abt of exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

j)    An award of reasonable attorney's fees and costs incurred by and on behalf of Plaintiff Abt to be paid by Defendant;

k)    Pre-judgment and post-judgment interest, as provided by law; and,

l)    Such other further legal or equitable relief as this Court deems necessary, just and proper.

## COUNT VII

## SEX DISCRIMINATION UNDER TITLE VII

### Plaintiff Walker

206.    Plaintiff Abt incorporates by reference as if fully set forth herein, the allegations of paragraphs 1 through 205 above.

207.    This claim is brought on behalf of Plaintiff Walker.

208.    The foregoing conduct violates Title VII.

209.    Plaintiff Walker filed a charge of discrimination against Lockheed Martin which is attached as Exhibit 7 and incorporated herein by reference.

210.    Lockheed Martin has and continues to maintain procedures and practices for making decisions about promotions, assignments and compensation that is excessively subjective and which have an adverse impact on its female employees, including Plaintiff Walker. These procedures and practices have no business justification.

211.    Lockheed Martin has intentionally discriminated against Plaintiff Walker and  has maintained procedures and practices for making decisions about promotions, assignments and compensation that are excessively subjective and through which it discriminates against its female employees, including Plaintiff Walker.   By committing the foregoing acts of discrimination against Plaintiff Walker, Defendant has willfully and intentionally engaged in unlawful sexual discrimination in violation of Title VII.

212.    The sex of Plaintiff Walker was a motivating and/or determination factor in Defendant's treatment of Plaintiff Walker.

213.    As a direct and proximate result of the aforesaid unlawful employment

67

practices engaged in by Defendant in violation of Title VII, Plaintiff Walker has incurred in the past, and will in the future incur, damages, including without limitation, loss of wages and benefits, pain and suffering, embarrassment, humiliation, mental anguish, sustained loss of future earnings, severe emotional and psychological distress, loss of self esteem, loss of enjoyment of life and loss of future earning capacity, the full extent of which is not known at this time.  Plaintiff Walker is entitled to declaratory and injunctive relief, front pay or reinstatement, compensatory and punitive damages and interest due thereon as well as attorneys' fees and costs and such other damages and relief as allowed by law or in equity.

214.   The foregoing conduct of Defendant was intentional, malicious, wanton, outrageous under the circumstances and performed either recklessly or with callous indifference to Plaintiff Walker's federally protected rights.  This was done by and with the knowledge of Defendant's upper management and warrants the imposition of punitive damages.

215.   As a direct and proximate result of Defendant's violation of Title VII, Plaintiff Walker will continue to suffer irreparable injury and monetary damages unless and until this Court grants the relief requested herein.

216.   Plaintiff Walker is entitled to the relief requested in the Prayer for relief below, including declaratory and injunctive relief.

217.   No previous application has been made for the relief requested herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Walker prays that the Court grant relief as follows:

a)      A declaratory judgment that the practices complained of herein are

unlawful and violate Title VII;

b)      An adjudication that Defendant's violations of Title VII were willful;

c)      A preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and all persons acting in concert with them, as provided by law, to prohibit each of the unlawful practices, policies, and patterns set forth herein;

d)      An Order that Defendant  employ some method to confirm that future decisions affecting employee pay, assignments to promotion track positions, and promotions are made without regard to sex, including, but not limited to, hiring an expert Industrial Psychologist to review Defendant's employment practices and develop new practices, a Labor Economist/Statistician to conduct a pay equity analysis, and an external advisor concerning equal employment opportunity and diversity initiatives to monitor the promotion and retention of female employees; adjusting pay discrepancies that have been based on gender so that female employees are paid the same as their male colleagues for doing the same or similar work; posting all job positions and promotional opportunities; eliminating the "bell curve" evaluation system; and providing equal training opportunities to all qualified employees;

e)      An Order that Defendant institute sufficient policies to deter and prevent discrimination based on sex in pay, assignments to promotion track positions and promotion;

f)      An Order that Defendant institute a policy which provides for appropriate remedial and corrective action for violators of said policies;

69

g)    An Order instating Plaintiff Walker to her rightful positions and adjusting her compensation, including wages and benefits to those which would have been attained but for Defendant's discriminatory practices;

h)    An award to Plaintiff Walker of all damages suffered as a result of Defendant's unlawful conduct including back pay, front pay, instatement, promotion, payment of lost compensation and benefits, compensatory damages, and such other legal or equitable relief as to the Court deems appropriate to effectuate the purposes of all statutes pled;

i)    An award to Plaintiff Walker of exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future conduct;

j)    An award of reasonable attorney's fees and costs incurred by and on behalf of Plaintiff Walker to be paid by Defendant;

k)    Pre-judgment and post-judgment interest, as provided by law; and,

l)    Such other further legal or equitable relief as this Court deems necessary, just and proper.

## ADDITIONAL RELIEF ALLEGATIONS

218.    Plaintiffs, the Class and the Subclass represent that they have no plain, adequate or complete remedy in law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiffs, the Class and the Subclass are now suffering and will continue to suffer irreparable injury from Defendant's discriminatory acts and omissions.

219.    Defendant has caused and continues to cause Plaintiffs and all Class and

Subclass members substantial losses in earnings, promotional opportunities, training, mentoring and other employment benefits.

220.   Plaintiffs, the Class and Subclass are entitled to recover punitive damages as a result of Defendant's malice and/or reckless indifference to their protected rights.

Dated:  June 28, 2010

Respectfully submitted,

CONSOLE LAW OFFICES LLC

By:   s/Andrew L. Mackerer
      Carol Mager
      Stephen G. Console
      Laura C. Mattiacci
      Andrew L. Mackerer
      1525 Locust Street, 9th Floor
      Philadelphia, PA 19102
      215-545-7676
      215-545-8211 (fax)
      mager@consolelaw.com
      console@consolelaw.com
      mattiacci@consolelaw.com
      mackerer@consolelaw.com

      DOFFERMYRE SHIELDS
      CANFIELD & KNOWLES, LLC

      Martha Fessenden
      1355 Peachtree Street
      Suite 1600
      Atlanta, GA 30309
      404-881-3008
      404-881-3007 (fax)
      mfessenden@dsckd.com

      GISKAN SOLOTAROFF
      ANDERSON & STEWART LLP

      Darnley D. Stewart
      11 Broadway, Suite 2150
      New York, NY 1004
      212-500-5106

71

212-414-0347 (fax)
dstewart@gslawny.com

Attorneys for Plaintiffs,
Carol Bell, Linda Abt, Maxine Walker
and those similarly situated