IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| CAROL BELL, on behalf of herself and those similarly situated, | |
| Plaintiff, | Civil No. 08-6292 (RBK/AMD) |
| v. | **OPINION** |
| LOCKHEED MARTIN CORPORATION, | |
| Defendant. | |

**KUGLER**, United States District Judge:

Before the Court is an employment discrimination class action suit. Plaintiffs assert individual claims for gender discrimination and retaliation under Title VII and the New Jersey Law Against Discrimination ("NJLAD"). Plaintiffs also assert Title VII and NJLAD class action gender discrimination claims on behalf of a putative class of women employed by Defendant Lockheed Martin Corporation ("Lockheed"). The core of Plaintiffs' claims is that certain of Lockheed's company-wide policies and practices have a disparate impact on female employees' compensation and advancement.

This matter comes before the Court pursuant to Lockheed's motion to deny class certification (Doc. No. 420). Also before the Court is Plaintiffs' motion for leave to file a sur-reply (Doc. No. 433). For the reasons discussed below, this Court grants Lockheed's motion to

deny class certification. In addition, the Court denies Plaintiff's motion for leave to file a sur-reply for failure to file a supporting brief pursuant to Local Rule 7.1(d)(1).[1]

## I. BACKGROUND[2]

This is a class action labor discrimination suit against Defendant Lockheed Martin Corporation, which "is the largest information technology services supplier to the United States government." Compl. ¶ 54. Plaintiff asserts individual and class action claims for gender discrimination under Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42. U.S.C. §2000e et seq. Plaintiff's Third Amended Complaint defines the putative class as "[a]ll persons who are female and who were, are, or will be employed by [Defendant] in 'E' or 'L' designated positions as levels 3, 4, 5, or 6 in the United States of America from March 21, 2007 through the date of the final disposition of this action . . . ." Third Am. Compl. ¶ 34. Plaintiff also asserts individual and class action claims under the NJLAD on behalf of a proposed subclass of plaintiffs employed by Lockheed in the State of New Jersey. In addition to their class claims, the three individual class representatives assert individual retaliation claims under both Title VII and the NJLAD.

Plaintiffs' class action claims allege that Lockheed "discriminates against its salaried female employees by advancing male employees more quickly than equally or more qualified female employees through middle management and into upper management level positions, and discriminates in compensation to these female employees, including with respect to pay grade, annual and promotional increases, merit pay increases and bonuses." Third Am. Compl. ¶ 1.

---

[1] Notwithstanding Plaintiffs' failure to file a supporting brief pursuant to Local Rule 7.1(d)(1), the Court finds that Plaintiffs' proposed sur-reply consists substantially of arguments originally made in Plaintiffs' opposition brief to Defendant's motion, and fails to point to any exceptional circumstances warranting the filing of a sur-reply.
[2] The factual background in this case has been set out in detail in the Court's prior opinions (Doc. Nos. 262 and 372). Therefore, only the facts relevant to the resolution of the instant motion will be set forth here.

Plaintiffs allege that disparities between male and female employees "are the result of policies and practices that purposefully discriminate against women." Id. Plaintiff claims that company-wide minimum criteria for all director and officer-level positions are nominal and have the effect of eliminating all but subjective criteria with respect to education and experience, which permits decision-makers to act in a discriminatory manner. Plaintiffs further claim that although all available lower-level positions are posted on the company's intranet, Lockheed has a company-wide policy that available director and officer positions are not to be posted on the intranet. Thus, the only means of learning about those open positions is by word of mouth, which purportedly has a disparate impact on female employees.

Plaintiffs seek class certification under Fed. R. Civ. Proc. 23(b)(2), or in the alternative, under Rule 23(b)(3). Third Am. Compl. ¶ 12. Plaintiffs seek injunctive and declaratory relief under 23(b)(2) in addition to the following relief for their class: "back pay, front pay, instatement, promotion, payment of lost compensation and benefits, compensatory damages, and . . . exemplary and punitive damages." Third Am. Compl. ¶ 66.

Lockheed moved to deny class certification, arguing that Plaintiffs may not include claims for individualized monetary relief in their class certification. Plaintiffs counter that individualized monetary relief, including back pay and payment of lost compensation, is available under Rule 23(b)(2) as long as the claims for monetary compensation do not predominate over their requests for injunctive and declaratory relief. Plaintiffs also claim that Lockheed's motion should be denied for lack of timeliness, since Plaintiffs were not able to complete discovery. For the reasons expressed below, the Court grants Lockheed's motion to deny class certification.

## II. STANDARD FOR CLASS CERTIFICATION

### A. Rule 23's Explicit Requirements

In order to qualify for class certification under Rule 23, a plaintiff must satisfy the four elements set out in Rule 23(a) and the requirements of one of the three subsections in Rule 23(b). See In re Constar Int'l Inc. Sec. Litig., 585 F.3d 774, 776 (3d Cir. 2009). Rule 23(a) provides that class certification may be proper if:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs seek certification pursuant to subsection (2) of Rule 23(b), which provides that certification is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." In the alternative, Plaintiffs seek certification pursuant to subsection (3) of Rule 23(b), which provides that certification is proper if:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

A plaintiff bears the burden of demonstrating that Rule 23's requirements are met by a preponderance of the evidence, and the district court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 306 (3d Cir. 2008). Thus, a district court should certify a class "only if the court is 'satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006) (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982)).

All of the class certification requirements are intended to serve as "guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (citations and internal quotation marks omitted).

**B. Implicit Requirements for Class Certification**

In addition to Rule 23's explicit requirements, there are also implicit requirements for class certification. "Class certification presupposes the existence of an actual 'class.'" White v. Williams, 208 F.R.D. 123, 129 (D.N.J. 2002) (quoting In re Sch. Asbestos Litig., 56 F.3d 515, 519 (3d Cir. 1995)). A "proposed class must be sufficiently identifiable without being overly broad." Id. It may not be "amorphous, vague, or indeterminate" and it must be "administratively feasible to determine whether a given individual is a member of the class." Id. (quoting Mueller v. CBS, Inc., 200 F.R.D. 227, 233 (W.D. Pa. 2001)); see Allen-Wright v. Allstate Ins. Co., 2008 U.S. Dist. LEXIS 103272, *6-7 (E.D. Pa. Dec. 17, 2008) (identifying problems with a class definition that required case-by-case factual determination); Forman v. Data Transfer, Inc., 164

F.R.D. 400, 403 (E.D. Pa. 1995) (same). A putative class is not appropriate for certification if class membership would "require fact-intensive mini-trials." Solo v. Bausch & Lomb Inc., No. 06-2716, 2009 U.S. Dist. LEXIS 115029, at *14 (D.S.C. Sept. 25, 2009) (citing Cuming v. S.C. Lottery Comm'n, No. 05-3608, 2008 U.S. Dist. LEXIS 26917, at *1 (D.S.C. Mar. 28, 2008)).

## III. ANALYSIS

### A. Timeliness of Lockheed's Motion

Plaintiffs first argue that Lockheed's motion to deny class certification is untimely because Plaintiffs have not had the ability to fully develop their claims through discovery. Pl. br. at 24 (citing Gutierrez v. Johnson & Johnson, 2002 U.S. Dist. Lexis 15418, *16 (D.N.J. 2002)).[3] Lockheed counters that the party seeking certification bears the burden of establishing that the requirements of Rule 23 are satisfied. Def. Reply br. at 5.

In a putative class action suit, a plaintiff is entitled to discover information relevant to Rule 23's class certification requirements. See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 317. Class certification includes a review of "the substantive elements of the [proposed class members'] case in order to envision the form that a trial on those issues would take." Id. The burden to show that the proposed class satisfies each requirement of Rule 23 remains on the Plaintiff. Id. at 309 n.6. Thus, even in a motion to deny class certification, a Plaintiff bears the burden of providing prima facie evidence that the requirements of Rule 23 are satisfied or that discovery is likely to advance the class allegations. Mantolete v. Bolger, 767 F.2d 1416, 1424-1425; see Wright v. Family Dollar, Inc., 2010 WL 4962838, at *2 (N.D. Ill. Nov. 30, 2010) ("Even when the defendant initiates the court's review of class allegations, the burden remains

---

[3] Gutierrez involved a motion for a protective order in a discovery dispute, not a motion to deny class certification. The Gutierrez Court denied the defendant's motion for a protective order because the plaintiff in that class action case had not yet had an adequate opportunity to obtain discovery. See Gutierrez, 2002 U.S. Dist. Lexis 15418, *16.

on the plaintiff to establish that the suit may be maintained as a class action." (citing Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006))).

Plaintiff has had opportunity to take numerous depositions and obtain detailed discovery of Defendant's corporate hiring and promotion policies.[4] Because the Plaintiff bears the burden of establishing the prima facie viability of the proposed class, the Court finds that Defendant's motion is not untimely at this juncture.

## B. Certification of Plaintiffs' Class Claims

### 1. Wal-Mart Stores v. Dukes

The parties agree that Wal-Mart Stores v. Dukes, 131 S.Ct. 2541 (2011), controls this case. In Dukes, the Supreme Court held that a proposed nationwide class of plaintiffs consisting of former female employees of Wal-Mart could not be certified as a class because the proposed class members could not demonstrate that their common claims for injunctive and declaratory relief predominated over their individualized monetary claims for compensation. See Dukes, 131 S.Ct. at 2561. The plaintiffs in Dukes alleged that Wal-Mart had discriminated against its female employees in violation of Title VII of the Civil Rights Act of 1964. Id. at 2547. Specifically, the plaintiffs claimed that local Wal-Mart managers consistently exercised their discretion over pay and promotions disproportionately in favor of men, and that Wal-Mart's refusal to limit its managers' authority constituted discrimination in violation of Title VII. Id. at 2548. The plaintiffs sought certification of their proposed class under Rule 23(b)(2), or in the alternative, Rule 23(b)(3). Dukes Plaintiffs' Motion for Class Certification in No. 3:01–cv–

---

[4] "Plaintiffs have served 12 sets of Requests for Production, two sets of Interrogatories and three sets of Requests For Admission. In addition, plaintiffs have taken 13 depositions to date. . . . Through these efforts, plaintiffs have obtained the production of Company-wide HR data and documents in over 80 separate productions, totaling approximately 765,345 pages of documents and 100 gigabytes of data. At the time Lockheed filed its Motion to Deny Class Certification, document discovery was substantially complete, subject to unresolved disputes." Pl. br. at 13 n.3.

7

02252–CRB (N.D. Cal.), Doc. 99, p. 47. The plaintiffs sought "injunctive and declaratory relief, punitive damages, and backpay." Dukes, 131 S.Ct. at 2548. They did not seek compensatory damages. Id.

The Dukes Court held that the class could not be certified under Rule 23(b)(2) because the plaintiffs' claims for back pay and other monetary compensation for each member of the proposed class required individualized determinations. See id. at 2558-2561. The Court found that these individualized monetary claims predominated over any class claims for declaratory and injunctive relief. Id. The Dukes Court further held that the plaintiffs' claims for backpay and otherwise individualized monetary compensation was not "incidental to requested injunctive and declaratory relief."[5] Id. at 2560 (citing Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998) (defining incidental monetary relief as "damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief")).

**2. Plaintiffs' Claims for Individualized Monetary Relief Under Rule 23(b)(2) Are Barred as a Matter of Law**

Plaintiffs state that they will not be seeking certification of retaliation claims or compensatory or punitive damages on behalf of their proposed class under Rule 23(b)(2). See Pl. br. at 27. However, Plaintiffs continue to seek backpay, frontpay, and payment of lost compensation and benefits. See Third Am. Compl., Count I, Prayer for Relief ¶ (k). As Dukes made clear, "claims for *individualized* relief (like the backpay at issue here) do not satisfy [Rule 23(b)(2)]." Dukes, 131 S.Ct. at 2557 (emphasis in original).

Furthermore, in requesting injunctive relief, Plaintiffs suggest that "the Court grant . . . a salary adjustment to bring their compensation in line with similarly situated men." Pl. br. at 32

---
[5] The Dukes Court assumed, without deciding, that incidental monetary claims were still available in a 23(b)(2) action. Dukes, 131 S.Ct. at 2560

8

n.10. Plaintiffs' requested individualized salary judgment is precisely the type of individualized monetary claim in a Rule 23(b)(2) action that has been barred by Dukes. Dukes, 131 S.Ct. at 2557 ("[Rule 23(b)(2)] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."). Accordingly, this Court is compelled to grant Lockheed's motion to deny class certification pursuant to Rule 23(b)(2).

**3. Plaintiffs Have Failed to Establish the Existence of a Common Claim Under Rule 23(a)(2)**

Plaintiffs also seek certification pursuant to Rule 23(b)(3) based on a disparate impact discrimination theory. To establish a prima facie disparate impact claim under Title VII, a plaintiff must show that certain challenged policies have a disproportionately harmful impact on a legally protected class. Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, 994 (1988). In an attempt to prove their disparate-impact claim, Plaintiffs argue that Lockheed employed "facially neutral employment practices that have significant adverse effects on protected groups." Pl. br. at 33-34 (citing Watson, 487 U.S. at 986-987). Plaintiffs argue that Lockheed's policies and the alleged business necessity for the policies caused a disparately negative impact on Lockheed's female employees. Pl. br. at 34. Specifically, Plaintiffs seek to show that Lockheed's policy for setting compensation at hire has a disparate impact on women, and that this policy is exacerbated by the company's policies governing annual merit and promotion-based increases. Id. at 19.

Plaintiffs are correct to note that Dukes did not address the applicability of Rule 23(b)(3) to the Dukes plaintiffs. Dukes, 131 S.Ct. at 2549 n.2. However, the Dukes Court did not need to address the applicability of Rule 23(b)(3) precisely because the Court held "that the plaintiffs c[ould ]not cross the 'commonality' line set by Rule 23(a)(2)." Dukes, 131 S.Ct. at 2562

(Ginsburg, J., dissenting); see id. at 2556 ("We consider dissimilarities not in order to determine (as Rule 23(b)(3) requires) whether common questions *predominate*, but in order to determine (as Rule 23(a)(2) requires) whether there *is* '[e]ven a single [common] question.' And there is not here.") (emphasis in original) (Scalia, J.). Therefore, the Court's analysis of whether Plaintiffs have satisfied their burden of demonstrating that class certification is appropriate under Rule 23(b)(3) must begin with an analysis of whether a common question exists as required by Rule 23(a)(2). For the reasons discussed below, the Court holds that Plaintiffs have failed to establish the existence of a common question.

**a. The Challenged Lockheed Policies**

In order to establish the existence of a class under Rule 23(a)(2), a plaintiff must show that "there are questions of law or fact common to the class." Rule 23(a)(2). As the Supreme Court explained,

> [T]he mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.
> Dukes, 131 S.Ct. at 2551.

Moreover, in order to establish a disparate-impact claim under Title VII, plaintiffs must identify a specific employment practice that is challenged. Dukes, 131 S.Ct. at 2555. Here, Plaintiffs have identified four Lockheed policies that they claim together constitute a general policy of discrimination against female employees.

First, Plaintiffs allege that, when hiring a new employee, a Lockheed "hiring manager is free to deviate from the recommended compensation rate by as much as 5%." Pl. Ex. 10, Mager Cert. Plaintiffs argue that this policy "'can be charged with bias' because it negatively affects the compensation of women at hire." Pl. br. at 20.

Second, Plaintiffs allege that Lockheed's system of calculating merit pay raises allows managers "to deviate ±2% from the recommended merit raise." Pl. br. at 21. Plaintiffs argue that this policy "perpetuates and compounds the compensation differential between men and women." Id.

Third, Plaintiffs allege that Lockheed's policy for determining compensation upon promotion allows managers "to give up to a six percent increase over an employee's previous salary as a result of a promotion." Id. at 22. Plaintiffs argue that this policy has a disparate impact on women and is "utterly devoid of any legitimate business purpose." Id. at 22.

Fourth, "Plaintiffs allege that throughout the Class Period and until very recently, Lockheed's corporate policy was to mandate corporate wide posting of jobs at job levels L3-L6 [below director level] and to permit discretion for posting of L7 (director) positions. Plaintiffs allege that as a result, most L7 positions were not posted and men disproportionately were picked to fill the non-posted L7 jobs." Id. at 22-23 (citing Third Am. Compl. at ¶¶66-69).

The Court finds that the allegedly discriminatory Lockheed policies were substantially similar to the Wal-Mart discretionary policies that the Dukes Court found to be immune to a class action suit. In Dukes, the plaintiffs "claim[ed] that their local managers' discretion over

11

pay and promotions is exercised disproportionately in favor of men, leading to an unlawful disparate impact on female employees." Dukes, 131 S.Ct. at 2548. "The basic theory of [the Dukes plaintiffs'] case is that a strong and uniform 'corporate culture' permits bias against women to infect, perhaps subconsciously, the discretionary decisionmaking of each one of Wal-Mart's thousands of managers—thereby making every woman at the company the victim of one common discriminatory practice." Id. Further, similarly to Plaintiffs here, the Dukes plaintiffs also alleged that in-store management "[v]acancies [we]re not regularly posted" and that "from among those employees satisfying minimum qualifications, managers choose whom to promote on the basis of their own subjective impressions." Dukes, 131 S.Ct. at 2563.

Finding that the Dukes plaintiffs failed to identify "a common mode of exercising discretion that pervades the entire company," the Court in Dukes expressly denied class certification based on the lack of commonality between the plaintiffs' claims. See Dukes, 131 S.Ct. at 2554-2555. The Supreme Court stated that "Wal-Mart's 'policy' of allowing discretion by local supervisors over employment matters . . . is . . . a very common and presumptively reasonable way of doing business—one that we have said 'should itself raise no inference of discriminatory conduct.'" Id. at 2554 (citing Watson, 487 U.S. at 990)). Since Lockheed's discretionary employment policies are substantially identical in nature to Wal-Mart's discretionary policies, the Court finds that Lockheed's discretionary policies are entitled to a presumption of validity.

**b. Plaintiffs' Statistical and Anecdotal Proofs**

Plaintiffs' proposed means of rebutting the presumptive reasonableness of Lockheed's policies centers on "statistical and anecdotal evidence" of disparate impact, similar to the

evidence advanced by plaintiffs in Dukes. See Dukes, 131 S.Ct. at 2555. The Supreme Court rejected the Dukes plaintiffs' evidence for "fall[ing] well short" of the proof necessary to demonstrate a common mode of exercising discretion in a discriminatory fashion. Id. In Dukes, the plaintiffs alleged that Wal-Mart's corporate policy of allowing discretion by local supervisors over employment matters gave rise to a culture of discrimination against female employees during promotion decisions. Id. at 2554.

The Dukes plaintiffs relied on sociological data and statistical analyses in an attempt to demonstrate that Wal-Mart's policies discriminated against female Wal-Mart employees. The plaintiffs' statistical evidence consisted primarily of regression analyses[6] that purportedly showed on a region-by-region basis that "there are statistically significant disparities between [the promotion and pay rates of] men and women at Wal-Mart." Id. at 2555. The evidence also purported to demonstrate that Wal-Mart "promotes a lower percentage of women than its competitors." Id. The Court found the plaintiffs' statistical evidence to be insufficient because the commonality of plaintiffs' claims depended on a showing of a uniform, store-by-store disparity, and the disparities at the regional and national level did not establish the existence of disparities at individual stores or districts. Id. The Court in turn rejected plaintiffs' sociological data because plaintiff's expert conceded during deposition that he could not calculate with any accuracy the percentage of the employment decisions at Wal-Mart that were determined by

---

[6] Multivariate regression models seek to determine whether, after accounting for all relevant factors, there remains a disparity in treatment of the putative class. See Segar v. Smith, 738 F.2d 1249, 1274 (D.C. Cir. 1984). To accurately determine disparate impact, these models include as "independent variables" all criteria that may significantly affect the model's outcome. See Bickerstaff v. Vassar Coll., 196 F.3d 435, 449 (2d Cir. 1999); Bruno v. W.B. Saunders Co., 882 F.2d 760, 767-68 (3d Cir. 1989); Segar, 738 F.2d at 1261 ("The choice of proper explanatory variables determines the validity of the regression analysis."); see also Bazemore v. Friday, 478 U.S. 385, 400 n.10 (1986) ("There may, of course, be some regressions so incomplete as to be inadmissible as irrelevant . . ."). This includes legitimate employment criteria such as experience and education. See Bruno, 882 F.2d at 767-68. Incorporating those criteria ensures that, in isolating the effect of gender or other unlawful classifications, the model compares similarly situated samples. See Segar, 738 F.2d at 1274.

stereotyped thinking.  Id. at 2553.  The Dukes Court found that "[i]n a company of Wal-Mart's size and geographic scope, it [wa]s quite unbelievable that all managers would exercise their discretion in a common way without some common direction."  Id. at 2555.

Plaintiffs' evidence here consists of substantially the same statistical and anecdotal evidence that the Dukes Court rejected.  "Plaintiffs seek damages based on aggregate statistical analyses that can account for any variable that is business-justified."  Pl. br. at 38.  Plaintiffs claim that they will be able to demonstrate the disparate impact of the challenged Lockheed policies by introducing expert testimony from both parties' statistical experts, as well as by introducing admissions from Lockheed's representatives regarding disparate impact and the lack of business necessity for the policies in question.  Id. at 35.  First, Plaintiffs intend to conduct a regression analysis to demonstrate the disparate impact of Lockheed's policies on gender during employment decisions.  Second, Plaintiffs claim that anecdotal evidence regarding how Lockheed identifies, addresses, and remedies other forms of discrimination may be relevant to proving gender discrimination if Defendant took measures to identify and redress some forms of discrimination but failed to take any measures to identify and redress gender discrimination.  Pl. br. Motion to Consolidate at 14.  Because Plaintiffs' claimed statistical and anecdotal proofs are substantially the same as the proofs rejected by the Dukes Court, the Court holds that Plaintiffs are unable to establish the existence of a common question for the proposed class.

Furthermore, Plaintiffs' claims, which relate to the four challenged Lockheed policies, are not subject to common answers.  See Dukes, 131 S.Ct. at 2551 ("What matters to class certification is not the raising of common 'questions' . . . but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.").  The

women in the proposed class worked in different geographic locations, were in different departments, had different titles, and reported to different supervisors. As Plaintiffs themselves note, "Lockheed Martin employs more than 136,000 people. . . . Lockheed Martin is organizationally divided into four 'business areas' . . . . [e]ach [of which] includes multiple business units employing thousands of employees in multiple locations throughout the United States." Compl. ¶ 54. Plaintiffs attempt to raise discrimination claims that depend on the discretion of individual managers in each of Lockheed's facilities. Pl. br. at 19-20 (arguing that the alleged disparate impact results from each individual Lockheed manager's discretion to determine a newly hired employee's starting salary). This is precisely the type of allegation that the Dukes Court rejected when it explained that for a plaintiff to satisfy the commonality standard, the claim "must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the *same* supervisor." Dukes, 131 S.Ct. at 2551 (emphasis added).

Finally, Plaintiffs claim that they should be allowed to complete discovery, and that they will be able to identify questions of law or fact that are common to the proposed class at the class certification stage. Pl. br. at 33. However, as noted above, Plaintiffs state that discovery is "substantially complete." See supra Part I n.4. Exhaustive discovery is not required prior to an adjudication of Plaintiffs' claims. To the contrary, "[a]ctive judicial supervision may be required to achieve the most effective balance that expedites an informed certification determination without forcing an artificial and ultimately wasteful division between 'certification discovery' and 'merits discovery.'" In re Hydrogen Peroxide Antitrust Litig., 552 F.3d at 319 n.20 (quoting Fed. R. Civ. P. 23 Advisory Committee Note, 2003 Amendments). The burden of showing that

15

class certification is appropriate always remains on the plaintiff. Id. at 309 n.6, 310. In the instant case, Plaintiffs have had adequate time to conduct discovery, and have received numerous documents and taken numerous depositions. Similar to the plaintiffs in Dukes, Plaintiffs here have been unable to "identif[y] a common mode of exercising discretion that pervades the entire company." Dukes, 131 S.Ct. at 2554-2555. Based on the discretionary nature of the policies involved, and the individualized nature of the claims in each proposed class member's case, the Court finds that Plaintiffs have failed to demonstrate a common claim applicable to their proposed class. Accordingly, the Court finds that the proposed class cannot be certified pursuant to Rule 23(b)(3).

## IV. CONCLUSION

For the reasons expressed above, the Court denies Plaintiff's request for leave to file a sur-reply, and grants Defendant's motion to deny class certification. An appropriate order shall be entered.


Dated: 12/14/2011                                /s/ Robert B. Kugler
                                                                                  ROBERT B. KUGLER
                                                                                  United States District Judge