## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                                    :
CAROL BELL,                                         :
                                                    :
                            Plaintiff,              :        Civil No. 08-6292 (RBK/AMD)
                                                    :
              v.                                    :        **OPINION**
                                                    :
LOCKHEED MARTIN CORPORATION,                        :
                                                    :
                            Defendant.              :
_____                :

**KUGLER**, United States District Judge:

        This matter comes before the Court on the motion of Defendant Lockheed Martin

Corporation ("Lockheed") for summary judgment pursuant to Federal Rule of Civil Procedure

56.  For the reasons stated herein, Lockheed's motion will be **GRANTED IN PART**, **DENIED**

**IN PART**.

## I.     BACKGROUND[1]

        This is an employment discrimination case filed by Carol Bell ("Plaintiff") against

Lockheed, her former employer, which "is the largest information technology services supplier

to the United States government."  Fifth Amended Complaint ("Fifth Am. Compl.") ¶ 26.

Plaintiff asserts claims for gender discrimination and retaliation under Title VII of the Civil

Rights Act of 1964 ("Title VII") and the New Jersey Law Against Discrimination ("NJLAD").

Plaintiff initially asserted Title VII and NJLAD gender discrimination claims on behalf of a

putative class of female Lockheed employees, asserting that its policies and practices have a

_____
[1] The factual background in this case has been set out in detail in the Court's prior Opinions (ECF Nos. 262 and
372).  Therefore, only the facts necessary for the resolution of the instant motion will be set forth here.

disparate impact on the compensation and advancement of female employees. After class certification was denied on these claims, Plaintiff proceeded with her action on an individual basis.

Plaintiff was employed by Lockheed until her termination in February 2013.[2] Her employment with Lockheed began when it combined with Martin Marietta, her previous employer, in 1995. Lockheed's Statement of Undisputed Material Facts ("SUMF") ¶ 1.[3] In 2000, Plaintiff resigned from Lockheed to pursue another employment opportunity, however she was rehired by Lockheed in February 2003 as a Procurement Engineer. Id. ¶¶ 3-4. The Procurement Engineer was internally classified as a "Level 4" position, the meaning of which will be explained below. Id. ¶ 4.

---

[2] Plaintiff's last day of work at Lockheed was January 8, 2013, but she remained on an unpaid leave of absence until her employment formally ended on February 6, 2013. Plaintiff's Statement of Facts (Pl.'s "SUMF") ¶ 619.

[3] In addition to the responsive statement of material facts provided for by Local Civil Rule 56.1(a), Plaintiff has also filed what appears to be her own affirmative statement of undisputed material facts. The 627-paragraph document, which contains no title or heading, was electronically filed as "Statement of Facts." See ECF No. 560-10. The local rules provide for an opponent of summary judgment to file a responsive statement of material facts, which addresses each paragraph of the moving party's statement. L. Civ. R. 56.1(a). It also permits the party opposing the motion to "furnish a supplemental statement of disputed material facts." Id. The 627-paragraph document filed by Plaintiff appears to be neither. The Local Rules do not contemplate a nonmoving party furnishing its own statement of undisputed material facts. Further, Plaintiff's statement goes well beyond a statement of material facts and appears to be Plaintiff's attempt to frame the background of this case, and to advance legal arguments, which is expressly proscribed. See L. Civ. R. 56.1(a) ("Each statement of material facts . . . shall not contain legal argument or conclusions of law."); see also, Pl.'s SUMF ¶ 86 ("Because she had met all of her goals for the year, and received no negative comments, there was no reason she should not have been rate[d] as a 'High Contributor'"); id. at ¶ 579 ("Defendant has not offered any competent, non-hearsay evidence . . . ."). Aside from not being contemplated by the local civil rules, such a document is not necessary to defeat summary judgment, as Plaintiff must only show that some material fact is in dispute, and need not affirmatively prove her case at this point. The Court will disregard all legal arguments in any purported Rule 56.1 statements filed in connection with this motion, including evidentiary objections to the court's consideration of certain facts. See Boles v. Wal-Mart Stores, Inc., Civ. No. 12-1762, 2014 WL 1266216, at *1 n.1 (D.N.J. Mar. 26, 2014); Globespanvirata, Inc. v. Texas Instruments, Inc., Civ. No. 03-2854, 2005 WL 3077915, at *2 (D.N.J. Nov. 15, 2005). The Court observes that Lockheed is not entirely blameless in this respect, as in its response to Plaintiff's Statement of Facts, it denies Plaintiff's statements on the basis of relevance over thirty times, which is improper under Rule 56.1. See Durkin v. Wabash Nat'l, Civ. No. 10-2013, 2013 WL 1314744, at *6 (D.N.J. Mar. 28, 2013) (deeming as admitted facts that were disputed as not relevant, because "arguments as to the force of those facts belong[] in the brief."). Further, Lockheed denies over eighty of Plaintiff's facts on the basis of alleged inadmissibility, which is improper legal argument.

In April 2004, she was promoted to a Program Manager position, which was classified as Level 5. Id. ¶ 5. Then, in June 2005, Plaintiff applied for, and was offered, a Level 6 position as a Subcontract Administrator ("SCA") Senior Manager. Id. ¶ 6. She worked at Lockheed's facility in Moorestown, New Jersey for the entire duration of her employment. Pl.'s SUMF ¶ 35.[4]

At Lockheed, every position is assigned a salary grade. SUMF ¶ 9. The salary grade has three components; (1) the "job level;" (2) the "control point;" and (3) whether the job is exempt under the Fair Labor Standards Act. Decl. of Michael S. Burkhardt ("Burkhardt Decl.") Ex. 33. For exempt positions, the job levels range from 1 to 9 based upon the responsibility, authority and accountability associated with the position, with 1 being lowest in the hierarchy, and Level 9 being reserved for the President of the company and certain officers. SUMF ¶¶ 11-13. The control point component is intended to reflect the value of the "job discipline" in the "market place," and the control points range from "D" for job disciplines with the highest external market value to "P" for those with the lowest external market value. Burkhardt Decl. Ex. 33; SUMF ¶ 16. Plaintiff's job as an SCA Senior Manager was classified as salary grade "E6L," which means that the position was an exempt Level 6 job, with market control point "L." SUMF ¶ 19.

Plaintiff alleges various instances of discrimination in connection with advancement opportunities beginning after she was promoted to the SCA Senior Manager position. Lockheed managers described the SCA Senior Manager position as one that could prepare a person for further advancement. Affidavit of James M. Duttera ("Duttera Aff.") Ex. 94, Thomas Dep. 39:1-

---

[4] The Court observes that the operative complaint alleges that Plaintiff worked in Lockheed's Mount Laurel, New Jersey facility. Fifth Am. Compl. ¶¶ 58, 59. The reason for this apparent inconsistency is not evident to the Court, but it is not relevant to the instant motion.

41:24.  Plaintiff asserts that the three previous occupants of the same SCA Senior Manager position, all males, held the job for an average of twenty months before being promoted, so that after approximately eighteen months, according to Plaintiff, "it should have been about time for [Lockheed] to move her onwards."  Pl.'s SUMF ¶¶ 172-173.  In her SCA Senior Manager role at Lockheed, Plaintiff was initially supervised by a man named Douglas Goerke.  Id. ¶ 30.

It was around the time when Plaintiff believed it was time for her to be further promoted within Lockheed, that she first informally raised allegations of sex discrimination.  This occurred in December 2006, when Mr. Goerke met with her to discuss her annual performance review at the end of her first full year in the SCA Senior Manager position.  During Plaintiff's tenure at Lockheed, it conducted annual performance reviews of each employee, known as Performance Assessment and Development Reviews ("PADRs").  SUMF ¶ 28.  There were five possible overall ratings available under the PADR system.  From most unfavorable to most favorable, these ratings were: Unsatisfactory, Basic Contributor, Successful Contributor, High Contributor, and Exceptional.  Id. ¶ 32.  Lockheed provided guidelines to managers responsible for conducting PADRs, indicating what percentage of employees should fall into each PADR rating category, which Plaintiff's manager characterized as a "bell curve."  Burkhardt Decl. Ex. 12, Goerke Dep. 98:15-17.  At least with respect to 2007, Lockheed's instructions provided that between zero and fifteen percent of employees should be rated as "Exceptional," between ten and twenty-five percent should be rated as "High Contributor," and between forty and seventy

percent of employees should receive the middle, "Successful Contributor" rating. Id. ¶ 34; Burkhardt Decl. Exs. 30, 32.[5]

In 2006, Mr. Goerke had recommended that Plaintiff receive the "High Contributor" rating, but after submitting his preliminary ratings to Lockheed's human resources department, he lowered her to "Successful Contributor" as a result of a "calibration meeting" with human resources personnel. Duttera Aff. Ex. 93, Goerke Dep. 99:19-100:5. Therefore, the ultimate rating that Mr. Goerke communicated to Plaintiff in December 2006 was that she had been rated as a "Successful Contributor" for the year. When Mr. Goerke communicated this rating to Plaintiff, she took exception with the rating, believing that she should have been rated a "High Contributor." Duttera Aff. Ex. 90, Bell Dep. 735:22-737:5. She complained to him that her "Successful Contributor" rating was too low, in her opinion, and that she believed it was the result of sex discrimination. Duttera Aff. Ex. 89, Bell Dep. 436:16-437:4. Plaintiff also wrote in the optional "employee comments" field of the review that she disagreed with the rating, that she felt "inadequate, unappreciated, and unmotivated," that "[a]ny delusions that [she] had a career here are now gone," and that "[h]owever, my supervisor should get kudos for following the canned script." Burkhardt Decl. Ex. 24. She also asked Mr. Goerke how many male employees had received higher performance ratings than she had. Id. It is unclear whether Mr. Goerke provided any answer at that time, but it seems that he did not, because at her deposition, Plaintiff

---

[5] It appears that Lockheed employees may have also referred to these five possible ratings using numerical values at times, with "1" corresponding with the highest rating. See Duttera Aff. Ex. 89, Bell Dep. 436:22-23 ("I would ask him point blank, well how many men were rated ones and twos?")

testified that she did not know how Mr. Goerke had rated other employees reporting to him. Duttera Aff. Ex. 90, Bell Dep. 736:18-737:4, 745:15-19.[6]

Shortly after Plaintiff's meeting with Mr. Goerke, on or about January 17, 2007, Plaintiff indicates that she met with her department's Human Resources representative, Monet Cleveland-Nathaniel, and reported that she was being subjected to sex discrimination. Duttera Aff. Ex. 89, Bell Dep. 437:5-438:5.

In May 2007, as part of a talent review of Lockheed employees, Mr. Goerke assisted the human resources department in completing a rating of Plaintiff and other employees that reported to him, which was designed to assess their performance and potential for future growth within Lockheed. Duttera Aff. Ex.95, Holden Dep. 16:2-7. In a draft of the report, Mr. Goerke recommended rating Plaintiff in the lowest possible category on a "nine-block" chart that assessed employees' potential and performance as part of this review. Pl.'s SUMF ¶ 95. Handwritten notes on the draft evaluation indicate that Plaintiff had "responded immaturely" to her last PADR and was "very upset" about her performance review. Duttera Aff. Ex. 104.

Beginning in 2006, Plaintiff sought to attain further advancement within Lockheed. Between 2006 and 2011, she indicated an interest in several Level 7, or "director-level" positions, but she was only interviewed for one of the positions, and was not offered any of

---

[6] By way of further background in connection with Plaintiff's PADRs, in 2006, 2007, 2009, and 2010 Mr. Goerke rated Plaintiff as a "Successful Contributor," which is the middle rating among the five options. SUMF ¶¶ 40-45. In 2008, she was rated as a "High Contributor." Id. ¶ 42. In 2011, Plaintiff again received the rating of "Successful Contributor," although at that time, Plaintiff reported to Michael Gordon, as Mr. Goerke had resigned from Lockheed in early 2011. Id. ¶¶ 46, 47.

them.[7]  Plaintiff also challenges the denial of at least fourteen Level 6 positions that she applied to between 2007 and 2012.

Plaintiff also made additional allegations of sex discrimination after her meeting with Mr. Goerke in December 2006, and her report to Ms. Cleveland-Nathaniel the following month.  On November 19, 2007, Plaintiff met with Gregory Holden, a Lockheed human resources manager, to complain about discrimination in connection with one of the director-level positions she did not attain.  Duttera Aff. Ex. 95, Holden Dep. 71:5-72:21.[8]  She showed Mr. Holden an organization chart of all of the employees who reported to Jim Broadbent, the hiring manager for one of the director-level positions, and pointed out that there were no women reporting to Mr. Broadbent, except for his secretary.  Id.; Duttera Aff. Ex. 98, Broadbent Dep. 212:22-213:3.  In January 2008, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge against Lockheed alleging sex discrimination.  She subsequently filed additional charges of sex discrimination and retaliation.  This suit was then filed on December 23, 2008.  Plaintiff alleges that discrimination and retaliatory conduct continued after the filing of the EEOC complaint and this suit.

On October 8, 2012, Lockheed announced that it was reorganizing the Electronic Systems business area, where Plaintiff worked, into two new business areas.  SUMF ¶ 154.  The

---

[7] As described later in this Opinion, Lockheed's hiring policies for Level 7 positions at the time did not require that they be formally posted on Lockheed's intranet, as Level 6 and lower positions were.  Therefore, Plaintiff asserts that she was not able to formally apply for these positions, and the Opinion does not describe her as "applying" for these jobs.

[8] Plaintiff only cites her EEOC charge in support of her allegations about the meeting with Holden.  See Pl.'s SUMF ¶ 140.  An EEOC charge is "not evidence competent to combat summary judgment."  Maldonado v. U.S. Bank, 186 F.3d 759, 764 (7th Cir. 1999).  However, Mr. Holden testified about a meeting similar to the one described by Plaintiff, at which Plaintiff complained about a lack of female employees in Mr. Broadbent's unit.  Duttera Aff. Ex. 95, Holden Dep. 71:5-72:21.

two new business areas were to be called Missiles and Fire Control, and Mission Systems and Training.  Id. ¶ 155.  The reorganization was to become effective on December 31, 2012.  The announcement indicated that approximately 200 employees would be affected.  As a result of the reorganization, some departments were eliminated, and some employees of those departments were required to obtain a new positions within the company in order to remain employed by Lockheed.

After the announcement that her department would be affected by the reorganization, Plaintiff applied for 43 positions at Lockheed.  Id. ¶ 171.  However, Plaintiff was not hired for any of these positions, although 30 of them were filled prior to Plaintiff's termination, and she was laid off in February 2013.  Id. ¶¶ 172, 244.

Although her class action allegations are no longer viable, Plaintiff continues to allege that Lockheed engages in discriminatory practices company-wide.  Plaintiff alleges that Lockheed "discriminates against its salaried female employees by advancing male employees more quickly than equally or more qualified female employees through middle management and into upper management level positions, and discriminates in compensation [against] these female employees, including with respect to pay grade, annual and promotional increases, merit pay increases and bonuses." Fifth Am. Compl. ¶ 1.  She alleges that disparities between male and female employees "are the result of policies and practices that purposefully discriminate against women." Id.  Specifically, she claims that although all available lower-level positions are posted on the company's intranet, Lockheed maintained a company-wide policy that available director

and officer positions (levels L7 and above) were not to be posted on the intranet.[9]  Thus, she

claims, the only means of learning about those open positions is by word of mouth, which

purportedly has a disparate impact on female employees.  Additionally, Plaintiff claims that

company-wide minimum criteria for all director and officer-level positions are nominal and have

the effect of eliminating all but subjective criteria with respect to education and experience,

which permits decision-makers to act in a discriminatory manner.

Plaintiff has furnished an expert report that she believes demonstrates that between 2007

and 2010 among level 5 and 6 exempt Lockheed employees, women earned 3.27% less than

men.  Duttera Aff. Ex. 102, Linda Bell Report p.19.  In Plaintiff's business unit, Plaintiff's expert

indicates that the disparity was 14.69%.  Id. at 20.  She also claims that female employees are

more likely to be placed in the SCA position than two other positions—Subcontract Program

Manager and Program Manager—even though the latter two positions are allegedly substantially

similar and more highly compensated.  Pl.'s SUMF ¶¶ 52-56.

Pursuant to an Order and Opinion dated December 14, 2011, the Court denied class

certification, so that now only Plaintiff's individual claims remain.  See ECF No. 452.  Lockheed

has now moved for summary judgment on all of those claims.

## II.    LEGAL STANDARD

The Court should grant a motion for summary judgment when the moving party "shows

that there is no genuine dispute as to any material fact and that the movant is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "material" to the dispute if it could alter

---

[9] Plaintiff has produced evidence that in 2011, Lockheed officially changed its policy so that all positions up to and including Level 7 would be publicly posted and made available for all employees to view and apply to.  Pl.'s SUMF ¶¶ 115-16.

the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. Anderson, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. Id. at 255; Matsushita, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. Anderson, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor. Id. at 257. The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

Title VII of the Civil Rights Act of 1964 makes it unlawful for employers to "discriminate against any individual with respect to compensation, terms, conditions or privileges of employment, because of . . . sex." 42 U.S.C. §2000e-2(a)(1). Because New Jersey courts "have frequently looked to case law under Title VII . . . for guidance in developing

standards to govern the resolution of LAD claims," the Court will analyze the NJLAD claims together with the Title VII claims.  Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 370 (2007).

These claims are analyzed under the burden-shifting approach set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas framework, the plaintiff "bears the initial burden of establishing a prima facie case by a preponderance of the evidence."  Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003) (citation omitted).  To establish a prima facie case of discrimination in connection with failure to promote, a plaintiff must prove that (1) she was in a protected class, (2) she was qualified for the job to which she applied, and (3) another, not in the protected class, was treated more favorably.  Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006) (citing McDonnell Douglas, 411 U.S. at 802-03).

The parties have identified a matter of disagreement in connection with the third element of a prima facie case of discriminatory failure to promote, which requires that another, not in the protected class, was treated more favorably by the employer.  Certain courts within this circuit have described a fourth element in failure to promote claims, which requires a plaintiff to show that "the employer continued to seek out individuals with qualifications similar to [the plaintiff's] to fill the position," or that "the person who filled the desired position had equivalent or lesser qualifications."  See Iyer v. Everson, 382 F. Supp. 2d 749, 756 (E.D. Pa. 2005); Gilmore v. Macys Retail Holdings, Inc., 385 F. App'x 233, 237 (3d Cir. 2010).  Thus, Lockheed argues that Plaintiff must show that her qualifications were at least equal to each successful candidate.  Plaintiff, however, argues that she need not demonstrate that the promotion went to

someone with equal or lesser qualifications in order to make out a prima facie case for each position. Pl.'s Opp'n at 10.

A Third Circuit panel confronted with the same question has observed that "there is support in our prior jurisprudence for both views." Taylor v. Cherry Hill Bd. of Educ., 85 F. App'x 836, 839 n.3 (3d Cir. 2004) (comparing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 523 (3d Cir. 1992) (holding that attorney who claimed she was passed over for law firm partnership because of her gender need only show at prima facie stage that "[s]he was sufficiently qualified to be among those persons from whom a selection . . . would be made") with Jewett v. Int'l Tel. & Tel. Corp., 653 F.2d 89, 91 (3d Cir. 1981) (holding in the failure-to-promote context that the plaintiff failed to make out a prima facie case because the person who was promoted had "superior qualifications"). However, the Third Circuit panel in Taylor did not resolve this seeming conflict in precedent, instead deciding the case on other grounds. Id. at 839-40. Nor does it appear that a definitive answer has been provided since that time.

In support of her position that she need not show she had qualifications at least equal to each successful applicant, Plaintiff cites Scheidemantle v. Slippery Rock State University System of Higher Education, 470 F.3d 535, 539 (3d Cir. 2006), which indicated that the plaintiff was required to demonstrate that "(a) she was a member of a protected class, (b) she was qualified for the [] job to which she applied, and (c) another, not in the protected class, was treated more favorably." Id. at 539. However, the Scheidemantle case favorably referred to the conclusion of a district court that a plaintiff must show as part of a prima facie case that she was at least as qualified as the person selected for the position. Id. at 541 (citing Pinckney v. County of Northampton, 512 F. Supp. 989, 998 (E.D. Pa. 1981), aff'd, 671 F.2d 808 (3d Cir. 1982)).

The Third Circuit also indicated that under the <u>McDonnell Douglas</u> framework, the "more favorable treatment" element includes "seeking someone 'of complainant's qualifications' after rejecting the complainant." <u>Id.</u> at 541 n.7 (citation omitted). Further, in a non-precedential opinion filed after this motion was fully briefed, the Third Circuit again emphasized this requirement, upholding a summary judgment ruling in favor of an employer because, for a plaintiff to prove gender discrimination in a failure-to-hire case, he "must adduce evidence sufficient for a juror to find that he was more qualified for the position than the female candidate that the [employer] interviewed." <u>Besko v. New Jersey Juvenile Justice Comm'n</u>, No. 13-3234, 2014 WL 929171, at *3 (3d Cir. Mar. 11, 2014).[10]

Thus, the Court finds that it is consistent with Third Circuit law to require a plaintiff to show, as part of the third element requiring "more favorable treatment" under the <u>McDonnell Douglas</u> framework, that she was at least equally qualified to the person who obtained the desired position. <u>See</u> <u>Gilmore</u>, 385 F. App'x at 237 (the plaintiff "was required to establish a prima facie case by evidence, among other things, that the person who filled the desired position had equivalent or lesser qualifications."); <u>see also</u> <u>Rogers v. Alt. Res. Corp.</u>, 440 F. Supp. 2d 366, 371 (D.N.J. 2006) ("[i]n order to establish a prima facie case in a failure to promote claim, the plaintiff must prove by a preponderance that . . . (4) nonmembers of his protected class were treated more favorably-alternatively stated, that the promotion went to someone with equal or

---

[10] Although the <u>Besko</u> case appears to articulate an even higher standard than that advocated by Lockheed, requiring a plaintiff to show that he or she is <u>more</u> qualified than other applicants, the Court will only search here for a showing that Plaintiff was <u>at least as qualified</u> as the candidate selected for each position she sought. In light of <u>Besko's</u> non-precedential status and the existence of precedential cases described in this section requiring only a showing of similar qualifications to the chosen candidate, the Court will not read <u>Besko</u> as introducing any heightened showing necessary to make out a prima facie case of discrimination. <u>Besko</u> also dealt with allegations of "reverse discrimination," although it does not appear that the court limited its decision to that type of discrimination case.

lesser qualifications who was not in the protected class"); <u>Pinckney</u>, 512 F. Supp. at 998 (a

plaintiff must "demonstrate that she was as qualified as the promoted person"). After all, if an

applicant is objectively more qualified for a given position, the employer does not treat him

"more favorably" vis-à-vis the discrimination plaintiff by awarding him the desired position. <u>See</u>

<u>Rogers</u>, 440 F. Supp. 2d at 371 (explaining that the "equal or lesser qualifications" requirement

is really part of the "treated more favorably" test). Rather, where one applicant is objectively

more qualified, the employer treats each of them as favorably as should be expected, given the

superior qualifications of one applicant over another. Thus, with respect to each promotion that

Plaintiff challenges as discriminatory, the Court will look to whether she has demonstrated that

she was at least as qualified as the chosen candidate in determining whether she has set forth a

prima facie case of discrimination. In so doing, the Court will draw all inferences as to

Plaintiff's qualifications in her favor, as the nonmoving party. <u>See</u> <u>Farrell v. Planters Lifesavers</u>

<u>Co.</u>, 206 F.3d 271, 278 (3d Cir. 2000).

"After an employee has established a prima facie case, this creates a presumption of

discriminatory intent by the defendant-employer." <u>Stewart v. Rutgers Univ.</u>, 120 F.3d 426, 432

(3d Cir. 1997). "The burden then shifts to the defendant to produce evidence that the adverse

employment action was taken 'for a legitimate, nondiscriminatory reason.'" <u>Id.</u> (quoting <u>Tex.</u>

<u>Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981)). "To accomplish this, the

defendant must clearly set forth, through the introduction of admissible evidence, the reasons for

the plaintiff's rejection, which would support a jury finding that unlawful discrimination was not

the cause of the adverse employment action." <u>Id.</u> (internal quotation marks and citations

omitted). "If the defendant's evidence creates a genuine issue of fact, the presumption of

discrimination drops from the case." Id. (citing Burdine, 450 U.S. at 260 (noting that "the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions")). "The burden then falls upon the plaintiff to prove that the 'employer's proffered reason [for the employment action] was not the true reason for the . . . decision,' but was instead pretextual." Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993)).

In order to demonstrate pretext, the employee must show that her employer's proffered "reason was false and that discrimination was the real reason." Hicks, 509 U.S. at 535. It is insufficient for a plaintiff to show that an adverse employment decision was merely mistaken, wrong, or unfair. Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). Instead, she must show "such weaknesses, implausibilities, inconsistencies, incoherence or contradictions" in the reasons articulated by the employer that a jury reasonably could "find them unworthy of credence." Id. (internal citations omitted).

In order to establish a prima facie case of retaliation under the NJLAD, a plaintiff must show that: (1) she was in a protected class; (2) she was engaged in protected activity known to the employer; (3) she was thereafter subjected to an adverse employment consequence; and (4) there is a causal link between the protected activity and the adverse employment consequence. Victor v. New Jersey, 203 N.J. 383, 409 (2010). The Title VII standard is virtually identical. See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 231-232 (3d Cir. 2007). In order to establish causation, the plaintiff must "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v.

<u>Nassar</u>, 133 S. Ct. 2517, 2534 (2013).[11]  The <u>McDonnell Douglas</u> burden-shifting analysis

applies to retaliation claims just as it does to discrimination claims, except that the plaintiff must

show that retaliation was the real reason for the adverse employment decision.  See <u>Sgro v.</u>

<u>Bloomberg L.P.</u>, 331 F. App'x 932, 939-40 (3d Cir. 2009).

The Court will address in turn the various discrimination and retaliation claims advanced

by Plaintiff, starting with the jobs that she applied for prior to the announcement that her

department was being dissolved, which she challenges as discriminatory.  Plaintiff believes that

she has made a prima facie showing of discrimination or retaliation in connection with her

rejection for each of these positions, and that she can rebut any showing by Lockheed of a

legitimate nondiscriminatory reason for its decision with respect to each of them.

## A. Discriminatory Failure to Promote Claims – Director-Level Jobs

With respect to the director-level, or "Level 7" positions that Plaintiff unsuccessfully

sought, the Court analyzes Plaintiff's discrimination claims under the <u>McDonnell Douglas</u>

burden shifting analysis, and finds that summary judgment is warranted as to each of these

claims.  For some of these positions, Plaintiff fails to set forth a prima facie case of

discrimination.  For others, Lockheed has articulated a nondiscriminatory reason for its decision,

which Plaintiff has not demonstrated is pretext for gender discrimination.[12]

---

[11] The "but-for" causation standard has not been applied to retaliation claims under the NJLAD.  <u>See</u> <u>Vargas v.</u> <u>Piramal Glass, Ltd.</u>, Civ. No. 10-4314, 2012 WL 2462314, at *2 n.4 (D.N.J. June 27, 2012).  However, the Court does not believe this distinction is dispositive with respect to any of Plaintiff's claims.

[12] The Court notes that one of Plaintiff's arguments in opposition to Lockheed's summary judgment motion is that certain of Lockheed's interrogatory responses as to the nondiscriminatory reasons for hiring decisions are inadmissible.  Plaintiff believes that certifications of Lockheed managers regarding information not within their personal knowledge is inadmissible for the purposes of summary judgment.  <u>See</u> Pl.'s Opp'n at 8. (citing <u>Knit With</u> <u>v. Knitting Fever, Inc.</u>, Civ. Nos. 08-4221, 08-4775, 2012 WL 2466616, at *9 (E.D. Pa. June 27, 2012)).  This argument is misplaced.  Lockheed is entitled to rely upon interrogatories in support of summary judgment.  Fed R. Civ. P. 56(c)(1)(A).  When a party responding to interrogatories is a corporation, an authorized agent must be designated to verify the interrogatory responses.  The agent is not required to have personal knowledge of the

1. December 2006 Director-Level Position

The first director-level position chronologically to be challenged by Plaintiff allegedly became available in December 2006. Plaintiff indicates that she learned of a position that needed to be filled because of the departure of the incumbent in that position, a man named Dave Zalewski. Pl.'s SUMF ¶ 189.[13] Plaintiff expressed interest in the position. Id. Plaintiff was not interviewed for the position, and it was given to a man named Michael Lubrano. Id. ¶ 194. Evidently, this was originally a Level 7 position but was later downgraded to a Level 6 position.[14] Duttera Aff. Ex. 89, Bell Dep. 349:20-22. Lockheed did not address this position in its motion, and argued in its reply brief that it was not mentioned in Plaintiff's Fifth Amended Complaint and is time-barred. See Def.'s Reply at 15 n.8. However, it appears to the Court that this position is included in the Fifth Amended Complaint. See Fifth Am. Compl. ¶ 71.

Although Plaintiff believes that summary judgment cannot not be granted with respect to this claim because it was not specifically referred to in Lockheed's motion papers, Lockheed does generally argue as to deficiencies with respect to Plaintiff's claims, and some of those deficiencies are present with respect to this position. Plaintiff does not set forth any facts to indicate that Lubrano was equally or less-qualified, compared to herself. When asked about Lubrano's qualifications at her deposition, she indicated that "[h]e's a very capable guy."

_____

responses. See Andrews v. Home Depot, Inc., Civ. No. 03-5200, 2008 WL 3821792, at *2 (D.N.J. Aug. 12, 2008). Although a party may ask for a person with personal knowledge to respond to interrogatories, there is no indication in the record that Plaintiff did so with respect to the interrogatories that she objects to. See id.

[13] It is unclear why Lockheed denies that this position became available and Plaintiff expressed interest in it. See Def.'s Resp to Pl.'s SUMF ¶ 189. Plaintiff cites to her deposition transcript, where she testified about it. Duttera Aff. Ex. 89, Bell Dep. 350:2-351:23.

[14] Because the record is unclear as to when the position was changed to Level 6, it is not clear whether this position should be addressed in this section or in the section discussing lateral applications. However, summary judgment would be granted as to this position in either case.

Duttera Aff. Ex. 89, Bell Dep. 351:14-15.  She also testified that Lubrano was specifically qualified for the position.  Id. at 351:23.  She sets forth no evidence as to her own qualifications for the position, and could not identify anything that led her to believe the decision was discriminatory, aside from Lockheed's rejection of her request to be included on the slate of candidates.  Id. at 350:6-352:18.

Thus, Plaintiff has not established a prima facie case of discrimination with respect to this position, and summary judgment will be granted as to the position filled by Michael Lubrano.

2. Electronic Systems Operations Director (2007)

The next position that Plaintiff challenges is an Electronic Systems Operations Director[15] position that she learned in 2006 would soon be vacant.  Pl.'s SUMF ¶ 119.  Plaintiff indicates that the prior occupant of the position, Joseph Gonsiewski, had encouraged her to work towards taking it over when he left.  Bell Aff. ¶ 61.  Because it was a Level 7 position that was not publicly posted to Lockheed employees, Plaintiff indicates that formal applications were not accepted for the position.  Pl.'s SUMF ¶ 126.  She told her human resources representative that she wanted to be considered for the position, but she was not invited to interview.  Bell Aff. ¶ 63.  Ultimately a man named Robert O'Brien was selected as the successful candidate, in September 2007.  SUMF ¶ 59.  The evidence in the record provided by Lockheed to justify its selection of O'Brien comes from Jim Thomas, the hiring manager for this position.  Thomas was deposed in

---

[15] Plaintiff refers to the title of this position at times as "Director of Operations and Facilities."  Pl.'s SUMF ¶ 119.  Defendant refers to what is evidently the same position as "Electronic Systems Operations Director."  SUMF ¶ 56.  The Court believes that both descriptions refer to the same position as both sides indicate that the position was ultimately filled by a man named Robert O'Brien.  In addition, Plaintiff's purported Statement of Undisputed Material Facts, which refers to the position as "Director of Operations and Facilities," cites to paragraphs of Plaintiff's affidavit where she refers to the position as "Electronic Systems Operations Director."  Compare Pl.'s SUMF ¶¶ 120-21; Bell Aff. ¶¶ 61, 63.  The Court uses the "Electronic Systems Operations Director" title to describe this position.

this litigation, and testified that he selected O'Brien because of his experience in the field of environmental safety and health, involvement in capital planning, and activity in a number of corporate initiatives. Specifically, Thomas testified that he selected O'Brien because he

> was a subject matter expert in ES&H, environmental safety and health. He was a subject matter expert in facilities, facilities management. He had been in operations for a number of years. He was involved with LM 21 productivity initiatives. And so when we looked at Bob O'Brien's background and what he had done, he was more than qualified. And in addition, he had been involved in things like capital planning and he was also active in a number of corporate initiatives.

Burkhardt Decl. Ex. 15; Thomas Dep. at 108:22-109:8. O'Brien was already a Project Engineering Director at the time of his selection for the job. SUMF ¶ 61.

Lockheed also compares O'Brien's qualifications to those set forth in a written job description, which are found in a document entitled "Director, Operations – Electronic Systems Business Area." Burkhardt Decl. Ex. 38. The two-page, undated document describes the responsibilities associated with the position, which Lockheed argues were a better fit with O'Brien's qualifications than with Plaintiff's.

Lockheed argues that Plaintiff, on the other hand, had never managed a facility, did not have experience with environmental, safety and health ("ES&H") issues, and unlike O'Brien, was not serving in a managerial role at the time. SUMF ¶ 63. It therefore takes the position that because Plaintiff has not shown that she had similar qualifications to O'Brien, she has not set forth a prima facie case of discrimination. Def.'s Mot. Summ. J. at 14.

Plaintiff, in turn, responds that she possessed as many key qualities for the job as O'Brien did. She asserts that her educational background was almost identical to O'Brien's. See Pl.'s SUMF ¶ 125. Her citation to the record in support of this assertion

19

is to her EEOC charge, where she asserted that "Mr. O'Brien's educational background was almost identical to mine." Fifth Am. Compl. Ex. 1, ¶ 22. Plaintiff cites nothing as to the specifics of either of their educational backgrounds. She also cites her affidavit, where she indicates that she had worked "at a business area level in a matrixed environment," while O'Brien had not, that she had led "LM 21 Six Sigma events," while O'Brien had not, and that she had "experience working on Mantech (a government initiative) projects," while O'Brien did not. Bell Aff. ¶¶ 67-68. She cites the job description produced by Lockheed, which indicates that the job involves "organizing an LM21 Six Sigma program," but does not cite to the record to indicate any of her own background traits she discusses were relevant.

With respect to this position, the Court finds that Plaintiff has not set forth a prima facie case of sex discrimination. She has not satisfied the element that requires a showing that she was similarly situated to O'Brien, the chosen candidate for the position, with respect to her own qualifications. She admits that O'Brien was qualified for the position. Burkhardt. Decl. Ex. 4, Bell Dep 455:11-19. She also admits that she had never managed a facility, had no ES&H management experience, was unfamiliar with OSHA laws and regulations, and was not serving in a managerial role at the time. Id. ¶ 63. While "similarly situated" does not mean that their qualifications were identical, a plaintiff must demonstrate that her qualification are similar to the comparison employee, and an unsupported statement by the plaintiff is insufficient. Warfield v. SEPTA, 460 F. App'x 127, 130 (3d Cir. 2012). Plaintiff offers little more than her own opinion that she was at least as qualified as O'Brien. The fact that O'Brien had already served as a director

within the company, while Plaintiff had not, suggests that her qualifications were not equal to O'Brien's in the context of hiring for a director-level position. Further, she has produced no evidence as to O'Brien's educational background that she asserts is similar to her own. See Maldonado v. U.S. Bank, 186 F.3d 759, 764 (7th Cir. 1999) (an EEOC charge is not evidence with which summary judgment can be defeated). Thus, she cannot maintain a discrimination claim in connection with this position.

3. MS2, ESH & Business Services Director

The next director-level position that Plaintiff challenged is a position vacated by Mr. O'Brien when he accepted the Electronic Systems Operations Director position.[16] In October 2007, Plaintiff notified the manager responsible for hiring that she was interested in being considered for the MS2, ESH & Business Services Director position. Pl.'s SUMF ¶ 130.

Plaintiff was again not invited to interview, and Jim Morris, a male, was ultimately selected to fill the position vacated by Mr. O'Brien. Id. ¶ 134. The hiring manager for this position was Jim Broadbent. SUMF ¶¶ 66-67. Mr. Broadbent, at his deposition, testified that he selected Morris because of his "leadership innovation and proven experience," including successfully running a two-million square foot facility that "he was directly responsible for." Burkhardt Decl. Ex. 9, Broadbent Dep. 192:16-193:8. Mr. Broadbent indicates that he thus concluded that Mr. Morris was best suited for the job. Mr. Broadbent testified that Plaintiff's name was considered when building the slate of candidates to interview, but she was ultimately not included on the slate. Id. at 187:6-20. Mr. Broadbent testified that he reviewed a slate of six

---

[16] Once again, the parties evidently use different titles to describe the same job. Plaintiff refers to this job as "Director of Facilities and Business Services." Pl.'s SUMF ¶ 129. Both parties refer to it as the job vacated by Mr. O'Brien, and both indicate that it was ultimately filled by Jim Morris, and thus it appears to be the same position.

candidates that was sent to him, all of whom were male, and narrowed it down to three who were actually interviewed for the job. Id. at 187; Duttera Aff. Ex. 107.

Lockheed also points to the job description document for this position. Burkhardt Decl. Ex. 35. This two-page, undated document lists "key criteria for success" in the position, including relevant work history, interpersonal skills, and educational history. Id. Based upon these requirements, Lockheed argues that Morris's qualifications were superior to Plaintiff's.

Plaintiff has not pointed to any evidence indicating that her qualifications were similar or superior to those of Mr. Morris, or that Morris did not possess the qualifications set out in the job description as Lockheed asserts. In fact, she has not produced any evidence germane to Mr. Morris' qualifications at all. Thus, summary judgment must be granted on Plaintiff's discrimination claim with respect to the MS2, ESH & Business Services Director position. See Warfield, 460 F. App'x at 130. It appears that her primary argument with respect to this position is her claim that Mr. Broadbent promised Plaintiff that she would be on the slate of candidates, but she was not placed on the slate. She argues that Mr. Broadbent's "efforts to deceive" her about her candidacy should preclude summary judgment. Pl.'s Opp'n at 32. The Court observes that in the email she cites for this proposition, Mr. Broadbent wrote "We are in the process of building our slate of candidates, I will ensure that you[r] name is considered." Duttera Decl. Ex. 106. Thus, Broadbent did not promise that Plaintiff would be on the slate, only that she would be considered when building the slate. Therefore, Plaintiff has not demonstrated that Mr. Broadbent deceived her. Further, this still would not satisfy the requirement that Plaintiff show that she was at least equally as qualified for the position as Mr. Morris, the chosen candidate. Summary judgment will be granted for Lockheed in connection with this position.

4. Director of Program Material Optimization

In Fall 2008, Plaintiff asked to be considered for another director-level Position, which had the title "Director of Program Material Optimization."  A male employee name Lee Withington was selected to fill this position, and only Mr. Withington and Teresa Scanlon were interviewed.  SUMF ¶ 76.  Lockheed argues that the slate of candidates included only those with prior director-level experience, which is the reason that Plaintiff was not selected for an interview.  Id. ¶ 75.  This job was not posted on Lockheed's intranet, and unlike the previous two positions, Lockheed does not point to a formal job description created contemporaneously with the candidate search.  See SUMF ¶¶ 72-81.  The only evidence in the record as to what Lockheed was looking for in a candidate for this position is the September 12, 2013 declaration of Rich Jager, a Human Resources Director who assisted the hiring manager, John Hatch, in assembling a slate of candidates.  Burkhardt Decl. Ex. 3; Jager Decl.  The declaration indicates that Mr. Hatch chose to interview only candidates with prior director-level experience, which Plaintiff did not have.  Id. ¶ 10.

With respect to this job, Plaintiff raises the issue that the Level 7 jobs were not publicly posted and distributed or made visible to all Lockheed employees, nor was a job description created by Lockheed.[17]  According to Plaintiff, although lower level positions were posted on Lockheed's intranet site, Level 7 positions were not posted on the intranet site during the

_____

[17] Plaintiff actually argues that in connection with three positions, "there were no formal requisitions that set forth the objective qualifications of the jobs." Pl.'s Opp'n at 30.  It is unclear which three positions Plaintiff refers to, but it seems that Plaintiff is referring to the four positions filled by Robert O'Brien, Jim Morris, Lee Withington, and Lauren Plair, and arguing that there was no formal job description for three of those positions.  Id.  However, as described in the previous two sections, Lockheed has furnished a written job description for the positions filled by Mr. O'Brien and Mr. Morris.

relevant time period. Bell Aff. ¶ 59.[18]  Further, unlike the previous two positions discussed in this section, Lockheed did not point to any written job description as part of its moving papers. Without written qualifications for these director-level positions that Plaintiff applied for, the Court cannot decide as a matter of law that Plaintiff was not qualified for the positions, or that she was not at least equally as qualified as the successful candidate.  See Herzog v. City of Watertown, Civ. No. 07-213, 2007 WL 5514740, at *3 (W.D. Wis. Sept. 6, 2007) (denying both parties' motions for summary judgment because no job description or written qualifications existed).  Because there is no measuring stick against which to determine whether Plaintiff was as qualified as Mr. Withington, and because Plaintiff has satisfied the other elements of a prima facie case of discrimination, the Court must find that Plaintiff has established a prima facie case with respect to this position.  See, e.g., Scheidemantle, 470 F.3d at 542 (relying on the job description's "objective requirements" in comparing applicants' qualifications).

Lockheed sets forth allegedly nondiscriminatory reasons for the hiring decision, one of which is that Mr. Withington was already a director and it wanted to hire someone with previous director-level experience for this position.  Lockheed also indicated that it hired Mr. Withington because of:

> Mr. Withington's 13-year career at Lockheed Martin, during which he was deployed within the Aeronautics Business Area as a member of the FPS production optimization task force and had served in several operations and quality positions, including a Director of Quality and Productivity position.

SUMF ¶ 80.  Lockheed also argues that Mr. Withington was an LM21 (Six Sigma) subject matter expert.  Id. ¶ 81.

---

[18] In 2011, Lockheed changed its policy, requiring director-level and below positions to be posted to all employees on the intranet.  See Burkhardt Decl. Exs. 62, 63.

Because Lockheed articulates credible nondiscriminatory reasons for selecting Mr. Withington, Plaintiff must adduce evidence that could lead a jury to conclude that discrimination was the real reason for Plaintiff's non-selection.  First, the Court observes that while the lack of a job description may be sufficient to prevent summary judgment based on Plaintiffs' qualifications, this is insufficient alone to constitute pretext.  The Third Circuit has observed that "[p]ost hoc explanations, like any self-helpful statement made after the initiation of lawsuit, may be to some degree suspect."  Healy v. New York Life Ins. Co., 860 F.2d 1209, 1216 (3d Cir. 1988).  However, the idea that a "post hoc justification ipso facto creates a pretext . . . is plainly wrong."  Id.

Plaintiff's argument as to pretext is that she had seventeen years of operations experience, compared to Mr. Withington's thirteen.  Pl.'s Opp'n at 33-34.  She indicates that she also had significant experience with the LM21 program.  Id.  The Court finds that this falls short of demonstrating evidence of pretext.  A plaintiff cannot show pretext merely by demonstrating that she has more years of experience or possesses some of the same qualities as the selected candidate.  See Walters v. Norton, 326 F. App'x 644, 649 (3d Cir. 2009) (the hiring of a candidate with twelve years of auditing experience over one with sixteen years of auditing experience was not evidence of pretext).  Rather, she must show that Lockheed's proffered reasons could be found to be "unworthy of credence."  Fuentes, 32 F.3d at 765.  The fact that Lockheed chose a candidate with less time at the company or fewer years of experience does not rise to the level of being so implausible or incoherent to support such a finding.  Further, the experience factor does not weigh in Plaintiff's favor as heavily as she suggests.  Plaintiff had no director-level experience, while Mr. Withington did.  Plaintiff offers no argument as to why

Lockheed's stated preference for a candidate with previous director experience, as Withington had and she did not, is evidence of pretext.

Neither can Plaintiff demonstrate pretext through her statistical evidence, as she suggests. Pl.'s Opp'n at 15. Plaintiff has offered evidence indicating that on a company-wide basis, female employees earn 3.27% less than men at Lockheed. Pl.'s SUMF ¶ 45. However, such evidence simply does not fit her failure-to-promote claims. Plaintiff's expert, Linda Bell, admitted that she did not find any statistical evidence indicating that women were discriminated against in connection with promotions at Lockheed. Burkhardt Decl. Ex. 54, Linda Bell Dep. 142:4-143:19. In fact, Dr. Bell indicated that she performed analysis related to promotions, but "[t]he analysis that was performed was not favorable to [Plaintiff]." Id. 142:12-13. She "could not find evidence that supported [Plaintiff's] claim that she was treated truly disproportionately in promotions from [Level] 6 to 7." Id. 146:1-6. Further, even statistical evidence of a company-wide disparity that relates to the claim at issue is insufficient to rebut a legitimate nondiscriminatory reason for an employer's decision. Blue v. Defense Logistics Agency, 181 F. App'x 272, 274 (3d Cir. 2006).[19] Summary judgment will therefore be granted in connection with this position.

5. Multi-Functional Purchasing Director

In 2010, Plaintiff was placed on the slate of candidates to be interviewed for a Level 7, Multi-Functional Purchasing Director Position. SUMF ¶¶ 82-86. Mr. Broadbent indicated that he suggested that Plaintiff be included in the interview slate because her "background was very

_____

[19] For these reasons, Plaintiff's statistical evidence of alleged pay disparities will be deemed insufficient to infer pretext in connection with all of Plaintiff's failure-to-promote claims, and the Court will not refer to the statistical evidence again each time pretext is discussed.

similar to other people that were being interviewed."  Pl.'s SUMF ¶ 301; Duttera Aff. Ex. 98,

Broadbent Dep. 224:12-17.  Phil Goslin, the hiring manager for this position, interviewed several

candidates in addition to Plaintiff and selected a male candidate, Lauren Plair, for the job.

SUMF ¶¶ 86-87.  Defendant indicates that Mr. Plair was chosen due to his "hands-on purchasing

experience, sourcing experience, corporate contracting experience, commodity forecast and

negotiation experience, and problem solving abilities."  SUMF ¶ 88.  This is based upon a

declaration submitted by Mr. Goslin, and is compared with a written requisition setting forth the

job description.  Burkhardt Decl. Ex. 41.[20]

Here, Plaintiff has satisfied all of the elements of a prima facie case of sex discrimination.

She was a member of a protected class, with qualifications similar to that of the successful job

candidate.  This is evident from Mr. Broadbent's own assertion that her background was similar

to the other candidates for the job.  Her argument as to qualifications is further bolstered by

Lockheed's decision to interview her for the job.  See Dunleavy v. Montville Twp., Civ. No. 04-

1154, 2005 WL 1917610, at *2 (D.N.J. Aug. 9, 2005).  Finally, Plaintiff was treated less

favorably than a similarly situated person not in the protected class, in that Mr. Plair was offered

the promotion.

Lockheed articulates a nondiscriminatory reason for its hiring decision through Mr.

Goslin's declaration, as described above.  Plaintiff argues that Lockheed's heavy reliance on Mr.

Plair's purchasing experience is evidence of pretext.  The job description does not indicate a

requirement of prior purchasing experience, and she claims that Mr. Plair had less than one year

---

[20] Although a formal job description existed for this position, it was not posted on Lockheed's intranet.  This appears to be indicated by an entry in the job description itself, which states "Do Not Post."  Burkhardt Decl. Ex. 41.

of such experience.  See Burkhardt Decl. Ex. 88.  The Court is unable to detect any indication in the record citation provided by Plaintiff that Mr. Plair only had one year of purchasing experience.  See Duttera Aff. Ex. 138.  Plaintiff's only argument as to pretext is that she and another employee were asked to interview despite a lack of purchasing experience, so therefore Lockheed's proffered reliance on Mr. Plair's purchasing experience must be pretext for discrimination.  Pl.'s Opp'n at 32.  The Court finds this insufficient to demonstrate pretext. Plaintiff has not rebutted Lockheed's seemingly reasonable explanation that it selected Mr. Plair for a Purchasing Director position because he has purchasing experience.  Such experience is relevant, according to the job description.  The fact that it chose to consider candidates who did not have purchasing experience, but ultimately decided to hire Mr. Plair—who did possess this relevant experience, as well as other qualifications not addressed by Plaintiff, is not evidence of pretext.  See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).  Thus, summary judgment will be entered as to Plaintiff's discrimination claim in connection with this position.

6. Electronic Systems Operations Director (2011)[21]

      In December 2011, Mr. O'Brien, who had filled the first director-level job that Plaintiff challenges, moved to a new position, and thus vacated the Electronic Systems Operations Director position.[22]  SUMF ¶ 91.  At this time, Michael Gordon, who supervised Plaintiff at the

---

[21] Once again, this is evidently the same position that Plaintiff sometimes refers to as "Director of Operations and Facilities."  Pl.'s SUMF ¶¶ 119, 128.

[22] Plaintiff's Brief states that "John Ames" was selected for this job the second time it became available, in December 2011.  Pl.'s Opp'n at 31 n.17.  However, Plaintiff's purported Statement of Undisputed Facts indicates that a "Jon Ames" was selected for a "Manufacturing Director" position that Plaintiff applied for in June 2011.  Pl.'s SUMF ¶¶ 349-51. The Court is unable to determine with certainty if "Jon Ames" and "John Ames" are the same individual, but assumes it to be the case.  Further, it is not clear whether Ames was selected for two different jobs that plaintiff challenges, or whether the Manufacturing Director Position and the Electronic Systems Operations Director Position refer to one and the same position.  In any event, Plaintiff admits to Lockheed's statement that Jon Ames was selected for the position the second time the Electronic Systems Operations Director position became available, in 2011.  SUMF ¶ 93.  The Court is further confused by Plaintiff's reference to the "requisition number"

time, was the hiring manager for the position.  Id. ¶ 92.  Mr. Gordon did not interview Plaintiff,

and hired Jon Ames for the position.  Id. ¶ 93.  The selection was allegedly based upon Mr.

Ames's twenty-two years of experience in the areas of facilities and ES&H, which included

serving as the Multi-Functional ES&H Director for Lockheed Martin's Aeronautics Business

Area and the Multi-Functional Facilities Director at the Company's Owego facility.  Burkhardt

Decl. Ex. 17.

Lockheed claims that Plaintiff did not have similar qualification to Mr. Ames.  However,

in its moving papers, Lockheed points to no job description that it relied upon in order to

demonstrate that Plaintiff's qualifications were inferior to those of Mr. Ames with respect to this

particular job.  Because there is no objective evidence of the requirements for this position, as

discussed previously, the Court will not grant summary judgment at the prima facie stage.  Thus,

it is necessary to examine Lockheed's alleged reason for hiring Mr. Ames and Plaintiff's alleged

evidence of pretext.

Lockheed has indicated that it hired Mr. Ames because he had twenty-two years of

experience in the areas of facilities and ES&H, including serving in two prior director-level

positions at Lockheed.  SUMF ¶ 94.  It indicates that Mr. Ames was specifically chosen over

Plaintiff because she had never run a facility and had no ES&H experience.  Id. ¶ 96.

In response, Plaintiff asserts that she was qualified for this job, as she believes she also

was four years prior.  Pl.'s Opp'n at 31.  She also charges that her supervisor, Mr. Gordon, who

was also responsible for hiring for this job, actively discouraged her from applying from the

_____

for this position, which is referred to in Plaintiff's SUMF as "205704BR," Pl.'s SUMF ¶ 349, while it is referred to
in Plaintiff's exhibit chart of challenged positions as "205703BR."  Duttera Aff. Ex. 141.

position, because high-level managers had contacted him to recommend people.  Id.  As

explained previously, Plaintiff's own opinion that she was as qualified for a position as the

successful applicant is insufficient to establish pretext.  Nor has she cited any law suggesting that

being discouraged from applying for a position is evidence of pretext, without any evidence that

the discouragement is for a discriminatory reason.  See Johnson v. Penske Truck Leasing Co.,

949 F. Supp. 1153, 1182 (D.N.J. 1996) (when a decision-maker discouraged an employee from

applying for a manager position, it did not constitute evidence of pretext).  An employer can

have any reason at all for its decisions, "so long as it is not a discriminatory reason."  Brewer v.

Quaker State Oil Refining Corp., 72 F.3d 326, 332 (3d Cir. 1995).  Because Plaintiff provides no

evidence of Lockheed's reasons being mere pretext for discrimination, summary judgment will

be granted for this position.

**B. Retaliation in Connection with Director-Level Jobs**

With respect to retaliation, Plaintiff has produced evidence that she engaged in protected

conduct as early as December 2006, when she informally complained to Mr. Goerke about her

performance evaluation allegedly being discriminatory on the basis of gender.  Not being

considered for any promotion to a Director-Level position thereafter was an adverse employment

consequence.  However, with respect to the first three director-level jobs that Plaintiff

challenges, Plaintiff has not met the third element of a prima facie case of retaliation.  She has

not produced any evidence from which a jury could determine that there was a causal link

between protected conduct and the adverse employment action.  See LeBoon v. Lancaster Jewish

Cmty. Ctr. Ass'n, 503 F.3d 217, 231-232 (3d Cir. 2007).  Although she had every opportunity to

do so during discovery, Plaintiff has not supplied any information even suggesting that the

decision-makers for these three positions knew that Plaintiff had engaged in protected conduct. The decisions not to consider Plaintiff for these positions were all made in or prior to October 2007. Plaintiff has only set forth evidence that she had, by that time, informally alleged to Mr. Goerke that her performance ratings were artificially low due to her gender, and that she had told Monet Cleveland-Nathaniel the same. There is no evidence that either Goerke or Cleveland-Nathaniel were involved in any of these hiring decisions, or that they communicated this information to any of the hiring managers for the first three positions. Thus, summary judgment will be granted as to the retaliation claims.

With respect to the three director-level positions Plaintiff challenges after the filing of her EEOC complaint and this lawsuit, Plaintiff has produced evidence that her allegations were well-known through the company. For example, all managers at Lockheed were advised of Plaintiff's lawsuit in December 2008. Pl.'s SUMF ¶ 158. A number of Lockheed managers who were deposed in this litigation testified that they were aware of Plaintiff's role in the suit at that time. Duttera Aff. Ex. 96, Heisler Dep. 130:13-131:1. All of these positions were denied to Plaintiff while she had a pending federal discrimination lawsuit. With respect to at least one position, Plaintiff has produced evidence showing that a manager involved in the hiring decision was aware of her protected activity. Mr. Holden was part of the decision-making process for the Multi-Functional Purchasing Director position. Pl.'s SUMF ¶ 306. As described previously, he was one of the participants in Plaintiff's nine-block review in 2007, in which it was indicated that Plaintiff had "responded immaturely" to her performance evaluation. Plaintiff had also complained directly to Mr. Holden that gender discrimination was taking place at Lockheed. Duttera Aff. Ex 95, Holden Dep. 70:23-71:20. Plaintiff has also produced evidence that Mr.

Gordon, the hiring manager for the Electronic Systems Operations Director position when it opened in 2011, knew of Plaintiff's discrimination claims. Duttera Aff. Ex. 94, Thomas Dep. 120:8-15. Thus, Plaintiff has demonstrated with respect to two of the final three director-level positions that a hiring manager knew of her discrimination claims, and has produced enough evidence to infer that the other managers responsible for hiring would have known of her claims as well.

However, in order to demonstrate a causal link, a plaintiff in a retaliation suit must do more than demonstrate that a manager who turned her down for a promotion had knowledge of her protected activity. See Victor v. New Jersey, 203 N.J. 383, 409 (2010) (an employer's knowledge of protected activity and a causal link are separate and independent elements). Nor is evidence of "a tense relationship" between the plaintiff and her manager enough alone to infer a causal link between protected activity and retaliation. LeBoon, 503 F.3d at 234. A plaintiff can properly infer a link between protected activity and adverse employment actions by either (1) a temporal proximity between the two, or by (2) pointing to an "ongoing antagonism" between plaintiff and defendant. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000). A plaintiff may rely on circumstantial evidence in order to establish this element, such as inconsistent explanations or discrepancies in the proffered reasons for a decision. Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 288-89 (3d Cir. 2001). The Court observes no such evidence.

Plaintiff has not demonstrated a close temporal proximity between any specific act of protected activity and the denial of any promotion that she challenges. Although she was the plaintiff in a pending federal lawsuit when she was denied the promotions she sought, the court

does not find that sufficient, without more, to infer a causal link.  As one court has observed, finding a temporal proximity based upon ongoing litigation "would subject employers to continuous risk of retaliation suits once litigation commences."  Bergbauer v. Mabus, 934 F. Supp. 2d 55, 86 n.28 (D.D.C. 2013) (citing Taylor v. Solis, 571 F.3d 1313, 1322 (D.C. Cir. 2009)).

Plaintiff argues that comments made by some Lockheed managers could be reasonably interpreted as relating to Plaintiff's protected conduct, and thus could be considered evidence of "ongoing antagonism."  For example, Plaintiff points to Mr. Holden's statement that some of Plaintiff's allegations were "ludicrous."  Pl.'s SUMF ¶ 144.  She also points to an email from Lockheed's general counsel informing managers of the lawsuit.  Id. ¶ 153.  The Court does not find that this evidence, without more, constitutes "ongoing antagonism."  Mr. Holden testified under questioning at his deposition that he thought some of Plaintiff's allegations were "ludicrous."  The Court first observes that, even reading this in the light most favorable to Plaintiff, Mr. Holden was referring to Plaintiff's candidacy for a position, and not to her claims of gender discrimination.  Putting his comment into context, he indicated that "[f]irst of all, I thought the claims were ludicrous.  She was never on any high potential list for facilities . . . .  It was just not reasonable for her to expect that she could be a competitive candidate for that job."  Duttera Aff. Ex. 95, Holden Dep. 73:1-13.  Further, even if Mr. Holden was referring to her discrimination claims, this is not evidence of antagonism.  Plaintiff has pointed to no law requiring managers to find an employee's allegations of discrimination to be meritorious.  Lockheed continues to maintain the position that it did not engage in gender discrimination.

There is nothing improper about one of its managers expressing at a deposition that he does not think the claims have merit.

Plaintiff further points to an email from Lockheed's General Counsel that instructed Vice Presidents and Directors to preserve information and documents that could be potentially relevant to the litigation. Plaintiff cites no law indicating that a litigation hold is retaliatory or antagonistic.

Plaintiff has pointed to no direct or circumstantial evidence that anyone involved in the hiring decisions acted in a retaliatory manner, nor has she established any inconsistent explanations, contradictions, or other evidence of retaliation. As explained in the previous section, she has not demonstrated any "discrepancies in the proffered reasons" offered by Lockheed for its hiring decisions. Abramson, 260 F.3d at 288-89. Thus, summary judgment will be granted on Plaintiff's retaliatory failure-to-promote claims.

## C. Lateral Hiring Claims

Plaintiff also asserts that she was discriminated against, and/or retaliated against,[23] when she was not accepted into lateral positions that she applied for.[24] Because these are not "failure to promote" claims, the Court does not necessarily apply the elements described for that type of claim. The Court observes that denial of an employee's request for a lateral or lower-level transfer cannot, alone, be an adverse employment action. Mallet v. Potter, Civ. No. 05-5586, 2008 WL 724348, at *4 (D.N.J. Mar. 17, 2008) (indicating that "[t]he Third Circuit has held . . .

---

[23] Evidently, Plaintiff challenges all positions that were ultimately awarded to men as discriminatory and retaliatory, while challenging those that went to women as being retaliatory only. See Pl.'s Opp'n at 11 n.6.

[24] This section does not reach the lateral positions that Plaintiff applied for after she was informed that her department was being dissolved, at which time she needed to successfully post for another job within Lockheed in order to remain employed there. Those claims are discussed in the section discussing the alleged retaliatory termination of Plaintiff's employment.

that the denial of a request for a purely lateral transfer does not, by itself, constitute an adverse employment action." (citing <u>Fallon v. Meissner</u>, 66 F. App'x 348, 351 (3d Cir. 2003)).[25]  In <u>Mallet</u>, the court granted summary judgment against a plaintiff who alleged discrimination on the basis of age and race in connection with the denial of a lateral transfer he applied for, where the desired job was closer to the plaintiff's home, involved fewer physical demands, and allegedly entailed greater networking possibilities, business travel opportunities, and potential for future promotion.  <u>Id.</u>  The court found that because there was no evidence showing that the employer's failure to offer the plaintiff the position affected his compensation or the terms, conditions or privileges of employment, he did not make out a prima facie case of discrimination.  <u>Id.</u> at *5.

Plaintiff cites a case preceding the <u>Mallet</u> and <u>Fallon</u> cases, where a court found that "the denial of a sought after transfer is an adverse action."  <u>Parker v. Del. Dep't of Pub. Safety</u>, 11 F. Supp. 467, 477 (D. Del. 1998) (citing <u>Bruno v. W.B. Saunders Co.</u>, 882 F.2d 760, 762 (3d Cir. 1989)).  The Court finds that despite the language from this case, more is required than merely applying for a lateral position and being turned down, to establish an adverse employment action. The Third Circuit case, <u>Bruno</u>, that the court relied upon in <u>Parker</u>, found that an adverse employment action existed where a plaintiff's employer announced plans to eliminate the department in which she worked.  <u>Id.</u> at 762.  The plaintiff then applied for—and was denied—a

---

[25] The Court observes that Plaintiff alleged in her Fifth Amended Complaint that some of the positions discussed in this section, although part of Level 6, like Plaintiff's existing position, would have entailed higher compensation. <u>See</u> Fifth Am. Compl. ¶ 70.  However, Plaintiff has pointed to no evidence in the record that she would have received a higher salary if she were able to successfully transfer to one of the other Level 6 positions.  She also evidently does not take issue with Lockheed's characterization of these sought-after transfers as lateral in nature, as in her opposition brief she argues that denial of lateral transfers can be adverse employment actions, and then moves on the rest of the burden-shifting test.  Pl.'s Opp'n at 9-10.  As a plaintiff cannot survive summary judgment based upon mere allegations in a pleading, the Court does not entertain the possibility that denial of transfer to these positions may be an adverse employment action because they were more highly paid.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 259 (1986).

newly available position.  Id.  The denial of that lateral application thus cannot be viewed alone.

Coupled with the anticipated elimination of the plaintiff's existing position, it resulted in the

plaintiff ultimately being laid off, similar to the instant Plaintiff's lateral transfer applications that

occurred after the dissolution of her department was announced.  Id. at 763.  The Third Circuit

made no blanket statement in the Bruno case that denial of a lateral transfer, with nothing more,

can be considered an adverse employment action.

On the contrary, the Third Circuit in Fallon considered the case of a plaintiff who sued on

a theory of age discrimination after being denied a lateral transfer.  Fallon, 66 F. App'x at 349.

The reason he sought the transfer was because he had moved and wanted to commute to a job

closer to his new home.  Id.  The Third Circuit affirmed summary judgment, finding that the

determination as to whether a denial of a lateral transfer is a materially adverse employment

action requires a fact-sensitive determination.  The court found that in some cases, "the material

effects of a transfer or refusal to transfer may be significant."  Id. at 351.  It indicated that "in

order to amount to a materially adverse employment action in the sense relevant here, it must be

adverse in the right way.  In particular, it must not arise from the employee's individual

preferences."  Id. (citing Brown v. Brody, 199 F.3d 446, 457 (D.C. Cir. 1999)).  The Third

Circuit also found that the reason for the lateral transfer must be "job-related."  Id.  Finding that

the plaintiff's decision to move to a location distant from his job was his own preference, and not

a job-related decision, the Fallon court found that the plaintiff had not established a prima facie

case of discrimination because he had not established that he had suffered an adverse

employment consequence.  Id.

Thus, Plaintiff may demonstrate that denial of these lateral positions constituted adverse employment actions, but she must make some showing in addition to applying for a lateral job that she would have liked and being denied the job. Here, Plaintiff has alleged discrimination and retaliation claims in connection with fourteen lateral or lower-level transfers that she applied for prior to being informed that her department was going to be eliminated. She has not articulated any job-related reason for seeking a lateral transfer to any of these positions aside from her own subjective preferences.[26] Therefore, the denial of her applications for these jobs are not adverse employment actions, and summary judgment will be granted for Lockheed on these claims.[27]

## D. Failure to Hire Claims not Included in Complaint

With respect to ten positions, Plaintiff indicated in her opposition brief that summary judgment cannot be granted as to the positions, because Lockheed did not move for summary judgment in connection with those positions. Lockheed, in turn, responds that it did not move for summary judgment because those positions were not mentioned in Plaintiff's Fifth Amended Complaint or in her interrogatory response setting forth the selections she challenges. While it appears that Lockheed has not cited the interrogatory responses, the Court has found that all of these positions except for the one given to Mike Lubrano, discussed above, are in fact not

---

[26] It appears that in her Fifth Amended Complaint, Plaintiff alleged that a higher salary was associated with some of these positions. See Fifth Am. Compl. ¶ 70. However, Plaintiff has pointed to no evidence in the record to indicate that any of the jobs that Lockheed challenges as lateral transfers would have involved a salary increase.

[27] Plaintiff's exhibit that charts all of the challenged job lists them by "requisition number," which is evidently a unique number that Lockheed assigns to each open position. See Duttera Aff. Ex. 141. To be clear as to which lateral jobs are included within this discussion, the requisition numbers for these jobs are 13456BR, 24414BR, 24064BR, 63696BR, 80911BR, 18344BR, 112968BR, 121613BR, 185587BR, 188293BR, 210802BR, 224604BR, and 86660BR. It also includes the job that Plaintiff describes as being identical to Requisition Number 185877BR, which was ultimately awarded to Brian Frasco, according to Plaintiff's exhibit. See Duttera Aff. Ex. 141.

mentioned in the Fifth Amended Complaint.  Thus, it is not necessary to enter summary

judgment as to the remaining nine positions because there is no indication that they are part of

Plaintiff's case.  See Marley v. CORT Furniture Rental Corp., Civ. No. 06-4926, 2008 WL

4066345, at *2 n.6 (D.N.J. Aug. 26, 2008), aff'd, 348 F. App'x 798 (3d Cir. 2009) (refusing to

consider employment discrimination claims with respect to positions awarded to other

employees first raised in a sur-reply brief).[28]

## E. Plaintiff's Other Retaliation Claims

Plaintiff alleges retaliation in connection with reviews of her job performance as a result

of her engaging in protected activity.[29]  It appears that Plaintiff no longer maintains her challenge

to her annual performance ratings, however she does allege that a review of her performance and

growth potential, as assessed in a document called a "nine-block" chart, was retaliatory.[30]

---

[28] The requisition numbers connected with these positions are 22321BR, 25765BR, 6815BR, 20816BR, 63720BR, 72765BR, 168295BR, 178195BR, and 147944BR.  See Duttera Aff. Ex. 141

[29] Plaintiff now is only pursuing her claim for retaliation in connection with performance ratings, and not for discrimination in connection with performance ratings. See Pl.'s Opp'n at 25 n.12.  Thus, summary judgment will be granted on the discrimination claims.

[30] Plaintiff does not set forth any argument in her brief as to why any of her annual performance reviews were retaliatory, although she does not explicitly indicate that she is abandoning these claims.  To the extent that Plaintiff does maintain her challenge to these or other performance reviews aside from the nine-block chart, summary judgment will be granted on these claims.  Of her PADRs in the relevant time period, Plaintiff's overall rating was "Successful Contributor" or higher.  "Successful Contributor," as previously explained, is the middle rating of the five available ratings, and Lockheed's policies provided that a substantial percentage of employees must receive this rating.  For at least part of the relevant time period, the policy indicated that 40-70% of all employees should be rated as "Successful Contributor."  Average performance ratings cannot alone constitute an adverse employment action.  See Hayer v. Univ. of Med & Dentistry of N.J., Civ. No. 07-251, 2010 WL 2292174, at *6 (D.N.J. June 2, 2012) (an average rating, indicating that an employee is fully competent, is not an adverse employment action); Hay v. GMAC Mortg. Corp., Civ. No. 01-1030, 2003 WL 22133801, at *6 (E.D. Pa. Sept. 15, 2003) (even a poor performance rating is not an adverse employment action unless it has a tangible effect on the recipient's employment).  Plaintiff cites language from the Hay case indicating that a "satisfactory" performance rating can be an adverse employment action if it has an impact on promotional opportunities.  See id.  However, she has not explained why a jury could find that her "average" performance ratings were retaliatory, as opposed to legitimate evaluations of her performance.  Further, where an employee was unable to show that evaluations performed after protected conduct substantially differed from evaluations completed prior to such conduct, the Third Circuit has indicated that summary judgment is proper on the employee's retaliation claim.  Healy v. New York Life Ins. Co., 860 F.2d 1209, 1215 (3d Cir. 1988).

As described earlier, the record indicates that Lockheed engages in a Talent Review Process, which includes as an element a nine-block review of certain employees on an annual basis. There does not appear to be anything in the record indicating whether Plaintiff had been the subject of previous nine-block reviews. The nine-block review was used by HR for purposes of succession planning for key jobs and categorizing talent in terms of potential and performance. Duttera Aff. Ex. 95, Holden Dep. 15:23-16:7. Mr. Goerke testified that a nine-block review was "part of the talent review process" at Lockheed. Duttera Aff. Ex. 93, Goerke Dep. 106:20-23. The employees that were subject to these nine-block reviews evidently included those in jobs at Levels 4 and above within the company. Pl.'s SUMF ¶ 99. A Lockheed manager testified at his deposition that the nine-block review was "pretty well embedded" in Lockheed's organization. Duttera Aff. Ex. 95, Holden Dep. 12:24-16:14.

The nine-block chart that Plaintiff alleges to be retaliatory appears to be a somewhat informal document, and is evidently a draft that was prepared by Mr. Goerke. Duttera Aff. Ex. 104. Managers at Lockheed who were responsible for this evaluation were required to complete a chart containing the names of all employees directly reporting to them who were subject to this review process. Duttera Aff. Ex. 95, Holden Dep. 13:18-14:18. The chart was prepared in conjunction with human resources employees, and was not reviewed with the employees being evaluated. Duttera Aff. Ex. 93, Goerke Dep 105:19-108:13. The chart, as the name suggests, appears graphically as a three-by-three square containing nine blocks. The columns represent "sustained performance," while the rows represent "employee potential." Duttera Aff. Ex. 131. Thus, the higher that a name appears, the more potential the employee is deemed to have, while the further to the right that a name appears, the better her performance has been. Id. Each block

is identified with a description, ranging from "Consistent Star" in block "1" to "Lower Performer" in block "9" in the lower left. Id.[31]

On May 31, 2007, Mr. Goerke and Mr. Holden prepared a draft of the nine-block chart for Mr. Goerke's unit. Mr. Goerke placed Plaintiff's name in block 9, in the lower left corner, the most unfavorable block possible, which would designate Plaintiff as a "lower performer." Her name also appeared as lower than all of the other names in the chart, who evidently were other employees reporting to Mr. Goerke. Duttera Aff. Ex. 104. This occurred only about five months after Plaintiff's meeting with Mr. Goerke, where she expressed a belief that her performance rating was negatively impacted by her gender. Shortly before that, Mr. Goerke had expressed a desire to rate Plaintiff as a "High Contributor" on her PADR, although he subsequently lowered her rating in order to conform with Lockheed's curve.

The notes accompanying the nine-block chart prepared by Mr. Goerke indicate that he was unhappy with Plaintiff's objection to her performance review. They indicate that Plaintiff "responded immaturely" to her performance evaluation. The notes also indicate that Plaintiff was "not delivering results as expected" and that Plaintiff was not "forceful" or "energetic." Duttera Aff. Ex. 95, Holden Dep. at 24:21-26:6. Lockheed offers no explanation for these comments, because both Mr. Goerke and Mr. Holden deny responsibility for them. Mr. Holden testified that this review was done when he was new in his human resources position, so he did not have any "insight into [Plaintiff] at this point in time." Duttera Aff. Ex. 95, Holden Dep. 25:25-26:10. In contrast, Mr. Goerke testified that "those aren't my words," and that he actually

---

[31] Employees that were viewed as having high potential were sometimes referred to using the term "Hi-Pot" within Lockheed. Duttera Aff. Ex. 93, Goerke Dep. 105:19-106:12. Mr. Goerke explained that a "Hi-Pot" employee is one who has the potential to progress two levels above her current position level. Id. at 105:13-18.

did not agree with the "responded immaturely" or "not forceful or energetic" descriptions. Duttera Aff. Ex. 93, Goerke Dep. 47:19-48:15. It seems clear that either Mr. Holden or Mr. Goerke, or the two of them jointly, authored the comments about Plaintiff. Viewing the evidence in the light most favorable to Plaintiff, as the Court must, the Court assumes that Mr. Goerke had some responsibility for the comments. He was Plaintiff's immediate supervisor at the time, and he had been present when Plaintiff reacted negatively to her PADR, while Mr. Holden had not. Assuming for the purposes of this motion that Mr. Goerke authored these comments about Plaintiff, the Court analyzes the nine-block review under the applicable retaliation standard.

First, Lockheed does not dispute that Plaintiff is in a protected class and engaged in protected conduct by alleging that sex discrimination had taken place. Next, Plaintiff's being rated in the lowest block possible as part of the Talent Review Process constitutes an adverse employment action. Plaintiff has produced evidence tending to show that it was necessary to have a positive nine-block review in order to advance within the company. Duttera Aff. Ex. 89, Bell Dep. at 283:23-284:17. Thus, although the review itself does not change the terms of Plaintiff's employment, it could be expected to have a tangible effect on her employment, including an "impact on promotional opportunities," which is sufficient to constitute an adverse employment action. Hay v. GMAC Mortgage Corp., Civ. No. 01-1030, 2003 WL 22133801, at *18 (E.D. Pa. Sept. 15, 2003). Finally, the fourth element of a retaliation claim is satisfied, in that a rational jury could conclude that Goerke's rating of Plaintiff on the nine-block chart was causally linked to her response to her performance review, which constituted protected conduct. Temporal proximity may be considered in order to infer a causal link between protected conduct and adverse employment actions. Farrell, 206 F.3d at 279. Although several months had passed

since Plaintiff accused Mr. Goerke of rating her performance too low due to her gender, it appears that the Talent Review Process may have been the next opportunity Mr. Goerke had to formally assess her performance. Lockheed has not pointed to anything else that took place between December 2007 and May 2008 that would cause Plaintiff's supervisor to change his opinion about her job performance. Yet over the course of those five months, Mr. Goerke went from recommending that Plaintiff be rated as a "High Contributor," ranked higher than at least 40-70% of other Lockheed employees, to assessing her as a "Lower Performer," in the bottom category in terms of both performance and potential. The difference between these two assessments could be viewed as inconsistent by a jury. See Abramson v. William Paterson College, 260 F.3d 265, 288-89 (3d Cir. 2001). A reasonable jury could also conclude that this apparent change in his opinion of Plaintiff's ability, combined with the comments indicating that she was "not delivering results as expected," or not "forceful" or "energetic," which Lockheed offers no explanation for, could be causally linked to protected conduct, rather than a legitimate evaluation of her work performance.

Plaintiff further alleges that she was retaliated against in February 2008, when she was denied a "critical skills" salary increase one month after filing a charge of discrimination with the EEOC. This is a type of salary increase that employees receive who possess "critical skills" that are set out on an annual basis in each business area. Pl.'s SUMF ¶ 105. Each manager determines on a discretionary basis whether each of his or her employees have the critical skills. Id. ¶106. Plaintiff alleges that in February 2008, each employee supervised by Mr. Goerke

received a critical skills salary increase except for her.  Id. ¶ 108.[32]  Plaintiff also challenges the stripping of certain job responsibilities after the filing of her EEOC charge and lawsuit as being retaliatory.

Lockheed objects to these retaliation claims on the basis that they are new allegations.  Def.'s Reply at 13 n.5.  It appears that Plaintiff did not allege retaliation in connection with her critical skills increase or the stripping of job responsibilities in her Fifth Amended Complaint or in any of her EEOC charges.[33]  Further, Plaintiff does not cite any deposition or interrogatory response that refers to the critical skills increase, but rather cites the affidavit of counsel, who indicates that he has reviewed materials produced in discovery in support of this claim.  Because new theories of liability first raised in opposition to a summary judgment motion are generally considered "too late," the Court will also grant summary judgment on these other retaliation claims that Plaintiff now asserts.  Laurie v. Nat'l Passenger R.R. Corp., 105 F. App'x 387, 392 (3d Cir. 2004) (citing OTA Ltd. P'ship v. Forcenergy, Inc., 237 F. Supp. 2d 558, 561 n.3 (E.D. Pa. 2002)).  Further, the parameters of a retaliation suit are defined by the scope of a plaintiff's EEOC charges.  Bialko v. Quaker Oats Co., 434 F. App'x 139, 143 (3d Cir. 2011) (citing Atkinson v. Lafayette Coll., 460 F.3d 447, 453 (3d Cir. 2006)).

---

[32] Lockheed claims that both Plaintiff and a male employee who worked for Mr. Goerke did not receive a critical skills increase.  Burkhardt Decl. ¶ 9.  However, the data relied upon by Lockheed appears to indicate that the male employee transferred on May 17, 2007, and he is the only employee listed there with no activity showing after that time.  Burkhardt Decl. Ex. 59.  Thus, at least viewing the evidence in the light most favorably to Lockheed, the male employee left the department and did not work for Mr. Goerke in February 2008.

[33] The Court has reviewed all of Plaintiff's EEOC charges that she attached as exhibits to her Fifth Amended Complaint and found that none of them refer to Plaintiff's failure to receive a critical skills increase or the stripping of job responsibilities from Plaintiff.

Thus, Lockheed's motion for summary judgment will be denied as to Plaintiff's allegation of retaliatory conduct in connection with her nine-block review. The motion will be granted in connection with Plaintiff's other retaliation claims.

**F. Post-October 2012 Positions**

Plaintiff also asserts claims in connection with a number of positions that she applied to between October 2012 and January 2013, and the termination of her employment with Lockheed that resulted when she was unable to secure one of these positions. The Court will grant summary judgment in favor of Lockheed on all of her claims asserted in connection with the termination of her employment, except for one position.

In 2012, Lockheed announced that it was dissolving the Electronic Systems Business Area, which would result in the elimination of Plaintiff's entire department. Plaintiff does not allege that this decision was discriminatory or retaliatory. Rather, she argues that Lockheed's actions during the ensuing transition process, during which other employees whose positions were being eliminated secured jobs but she did not, were retaliatory. Between the announcement relating to the elimination of Plaintiff's department in October 2012, and her last day at work, on January 8, 2013, she applied for forty-three jobs internally at Lockheed. SUMF ¶ 171. Thirty of them were offered to other applicants prior to the time that Plaintiff was laid off. SUMF ¶¶ 171-72. Ultimately, Plaintiff was one of a small minority of employees in her department who were unable to find a job internally, resulting in their termination. SUMF ¶ 243.

The Court first finds that Plaintiff has set forth a prima facie case of retaliation with respect to these claims. Plaintiff is a member of a protected class who engaged in protected conduct, as discussed above. She was subjected to an adverse employment action as a result of

being turned down for these positions.  Rejection for lateral positions that she applied to during

her last few months at Lockheed constituted adverse employment consequences, as the

alternative to attaining one of the positions was being laid off.  See Bruno, 882 F.2d at 763.  The

causal link between the two is a close question.  Plaintiff has not demonstrated that each of the

managers making the individual decisions as to these positions knew of her protected activity.

Nor has she shown temporal proximity between any particular act of protected conduct and the

adverse consequences.  However, given the large number of jobs that Plaintiff sought, and the

final result where she was one of a minority of employees in her department unable to secure a

new job at Lockheed, a reasonable jury could conclude that as a whole, Plaintiff's inability to

obtain one of the jobs she applied for was causally connected to protected conduct.  In

appropriate circumstances, evidence probative of a causal link can be "gleaned from the record

as a whole," which the Court finds to be appropriate here.  Farrell, 206 F.3d at 279 n.5.

Lockheed has articulated what it characterizes as a legitimate, nondiscriminatory reason

for selecting someone else for each of the thirty positions that were awarded to another

candidate.  Burkhardt Decl., Ex. 1.  Plaintiff does not contend that Lockheed has not offered a

nondiscriminatory reason for its selection as to these positions.[34]  Thus, it is Plaintiff's burden to

make a showing that the alleged nondiscriminatory reasons set forth by Lockheed are pretexts for

retaliation.  With only several exceptions, Plaintiff seeks to do so by relying on an affidavit

submitted with her opposition papers, in which she indicates that she is qualified for each of the

respective positions, and in many cases, indicates that she has more years of relevant experience

---

[34] Plaintiff's brief does challenge some of the alleged nondiscriminatory reasons on the grounds that Lockheed's
evidence is incompetent because it consists of interrogatory answers not based upon personal knowledge.  As
discussed in an earlier footnote, Plaintiff's has failed to demonstrate that this evidence is incompetent.

than the candidates ultimately selected.  She also urges the court to view the denial of the thirty jobs as a whole, rather than analyzing each job decision individually.[35]

First, the Court rejects her affidavit indicating that she is more qualified than the successful applicants as evidence of pretext.  An affidavit wherein Plaintiff expresses a bald opinion that she is qualified for a job and setting forth that she has more years of experience with Lockheed and in a particular discipline falls far short of a showing of pretext.  A showing of pretext requires that a Plaintiff demonstrate "both that the proffered reason was false and that discrimination was the real reason."  Hicks, 509 U.S. at 535.  A showing that an employer's decision was mistaken, wrong, imprudent, unfair, or even incompetent is insufficient to rebut a proffered legitimate, nondiscriminatory reason for a hiring decision.  Fuentes, 32 F.3d at 765.  A plaintiff must show such "weaknesses, implausibilities, inconsistencies, incoherence or contradictions in the reasons articulated by the employer that a jury could find them unworthy of credence."  Id.  Plaintiff's being qualified for a position and having more years of experience than the selected candidate falls far short of such a standard.  Reliance upon her own affidavit, in which she claims that she has reviewed the qualifications of the successful candidate, and found that her own qualifications are superior, is insufficient to withstand summary judgment.  Thus, taking each of the jobs Plaintiff applied for individually, she cannot rebut Lockheed's nondiscriminatory reason for its decision by arguing that her qualifications are better than the selected individuals.

---

[35] The Court observes that in her exhibit which sets forth the alleged evidence of pretext for each of these jobs, the box that is designated as purported evidence of pretext is blank with respect to ten of the thirty jobs Plaintiff was denied after October 2012.  See Duttera Aff. Ex. 141.  It is thus unclear whether Plaintiff is no longer challenging the denial of these positions.

The Court observes only three instances in which Plaintiff attempts to rebut the alleged nondiscriminatory reason for Lockheed's decision with an argument other than her own opinion that she was more qualified. With respect to two positions, both Level 7 director positions, Plaintiff argues that Lockheed's alleged nondiscriminatory reason consists of merely reciting a portion of the successful applicant's résumé. <u>See</u> Duttera Aff. Ex. 141, lines 47-48. With respect to a third Level 7 position, she attempts to rebut Lockheed's reference to the chosen applicant's "strong program management skills" by arguing that the applicant had been removed from a previous program manager position because of poor job performance. <u>Id.</u> line 52.

The Court turns to the first two of these positions, where Plaintiff argues that pretext exists because Lockheed cited material from the successful applicants' résumés as its proffered nondiscriminatory reason. In connection with a Program Management Subcontractor Director Position, Lockheed indicates that twenty-seven candidates applied, and it selected Elton Koonsman for the position. Burkhardt Decl. Ex. 18, Second Supp. Resp. to Pl.'s May 2012 Interrog. at No. 11(gg). Lockheed indicated that the hiring manager's selection "was based on Mr. Koonsman's material management experience including planning, acquisition and inventory control of all items required to produce aircraft and support multiple manufacturing facilities." SUMF ¶ 212. Plaintiff also applied for a second position with the same title. Lockheed indicates that seventeen candidates applied for that position, and it selected Dennis Pieczonka. Burkhardt Decl. Ex. 18, Second Supp. Resp. to Pl.'s May 2012 Interrog. at No. 11(hh). It indicates that Mr. Pieczonka was the most qualified applicant because of his "domestic and international subcontract management, subcontract management operations and project management experience, and his acquisition planning and major proposal preparation experience." SUMF ¶

214.  Plaintiff argues that Lockheed's proffered reasons for hiring these two men instead of her

are a pretext for retaliation because the stated reasons can be matched almost verbatim to

material from the successful applicants' respective résumés.  The Court finds that this is not

evidence of pretext.  Information about a job applicant's qualifications can usually be found in

his or her résumé.  Thus, Lockheed's citation to qualifications contained in the candidates'

résumés does not alone suggest pretext.  Plaintiff does not argue that Mr. Koonsman and Mr.

Pieczonka do not possess the cited qualifications, or that the qualifications are not relevant to the

respective positions.  To defeat summary judgment, she must show that a reasonable factfinder

could conclude that Lockheed's proffered justifications are "unworthy of credence."  Fuentes, 32

F.3d at 765.  The Court finds that no reasonable factfinder could conclude that the idea that an

employer hired a job candidate because of relevant qualifications found on his résumé is

"unworthy of credence."

Next, the Court addresses Plaintiff's challenge to a Project Engineering Director position

that she applied for.  Lockheed indicates that thirty-one candidates applied, and that the hiring

manager selected James Craig for the position.  Burkhardt Decl. Ex. 18, Second Supp. Resp. to

Pl.'s May 2012 Interrog. at No. 11(mm).  Lockheed indicates that Mr. Craig was hired because

of his "strong project management skills and demonstrated ability to provide project leadership

and drive change."  SUMF ¶ 224.  Plaintiff responds by citing her affidavit, where she indicates

that:

> As part of my final job with [Lockheed], I tracked the progress of various
> programs, which were rated as "red", "yellow", or "green" based on their
> progress, with red being behind schedule.  Mr. Craig was removed from a past
> position as a line of business manager because too many of his programs were
> coded as "red."

Bell Aff. ¶ 338. Thus, Plaintiff argues that because she has personal knowledge that Mr. Craig had been an ineffective program manager in the past, a jury could find that Lockheed's proffered reason that he was selected because of strong management skills was pretext for retaliation. Lockheed claims that Plaintiff's assertion about Mr. Craig is inadmissible hearsay. Def.'s Resp. to Pl.'s SUMF ¶ 581. It is unclear why Lockheed believes that Plaintiff's assertion that Mr. Craig was an ineffective manager is hearsay. Her assertion is allegedly based on personal knowledge that she gained while working for Lockheed tracking the progress of programs, including those run by Mr. Craig. A plaintiff is entitled to rely on her own affidavit in opposition to summary judgment, which alone can be sufficient to defeat summary judgment. See Gray v.York Newspapers, 957 F.2d 1070, 1080 (3d Cir. 1992). While such an affidavit may not contradict her prior testimony without a plausible explanation, Lockheed does not suggest that her affidavit creates such a contradiction with respect to Mr. Craig. See Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 251 (3d Cir. 2007). Thus, because the evidence submitted by Plaintiff contradicts the only legitimate reason proffered by Lockheed for selecting Mr. Craig, summary judgment will be denied for the Project Engineering Director position.

The Court next examines Plaintiff's argument that the positions she applied for after October 2012 should all be viewed collectively as a retaliatory termination claim. Closely connected with this issue is Plaintiff's allegation that she was the only employee in her department who applied for jobs within Lockheed, but was not offered one and was terminated. The parties disagree on this issue, and thus the Court must resolve it.

Plaintiff initially conceded that one other employee in a lower job grade was terminated. See Pl.'s Resp. to SUMF ¶ 243. However, Plaintiff has since submitted a supplemental affidavit

indicating that on March 6, 2014, she was told by the other employee, Joyce Payton, that someone from Lockheed had contacted her to tell her to apply for a position, and that after doing so, Ms. Payton was rehired, and remains a Lockheed employee. Bell Supp. Aff. (ECF No. 567). Lockheed has urged the court to disregard this affidavit, since it is based entirely upon hearsay. (ECF No. 568). As Plaintiff reports what Ms. Payton allegedly told her, and in some cases, what Lockheed managers allegedly told Ms. Payton, her affidavit does not appear to contain admissible material.[36] Thus, for the purposes of this motion, Ms. Payton will also be deemed a terminated employee from Plaintiff's department. Lockheed further denies that Plaintiff and Ms. Payton were the only employees terminated as part of the restructuring. It has produced an exhibit purporting to list thirty-two employees in Plaintiff's department whose jobs were eliminated, and indicating that seven of them were terminated or laid off, including Plaintiff and Ms. Payton. See Burkhardt Decl. Ex. 61. Lockheed also indicates that three of these employees, not including Plaintiff and Ms. Payton, applied for other positions, but were nonetheless terminated. See id. Ex. 60. Plaintiff's argument that only she and Ms. Payton were laid off appears to be based only upon the affidavit of Plaintiff's counsel. See Pl.'s SUMF 612. There is no indication that Plaintiff's counsel has personal knowledge of which employees were or were not laid off from Lockheed. Nor has Plaintiff's counsel cited the materials that he allegedly

---

[36] Although the parties have not raised this issue, the Court recognizes that in some cases, a statement in inadmissible form may be considered for the purposes of a summary judgment motion if it is capable of being admitted at trial. Howley v. Experian Info. Solutions, Inc., 813 F. Supp. 2d 629, 637 (D.N.J. 2011) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1235 n.9 (3d Cir. 1993)). However, the proponent of the alleged hearsay must demonstrate that the statement will be admissible at trial. Bender v. Norfolk S. Corp., Civ. No. 12-1198, 2014 WL 131638, at *3 (M.D. Pa. Jan. 14, 2014). The proponent may do so by demonstrating that a hearsay exception exists, that the statement is not hearsay, or by showing some likelihood that the declarant will appear and testify at trial. Id. Because Plaintiff has made no such showing, the Court cannot consider her supplemental affidavit.

reviewed to determine that no other employees were laid off.  <u>See</u> Duttera Aff. ¶ 71.  Thus, for

the purposes of this motion, the Court must assume that five out of thirty-two employees in

Plaintiff's department were involuntarily terminated in early 2013 after Lockheed dissolved the

unit.[37]

Showing that Plaintiff was one of a small group of employees who was terminated when

her department was eliminated is insufficient to show pretext.  The fact that Plaintiff was laid off

was evidence that she used to establish a prima facie case of retaliation.  Although sometimes the

evidence used at both stages may overlap, to allow Plaintiff to demonstrate pretext with exactly

the same evidence that she used to set forth a prima facie case of retaliation would eviscerate the

burden-shifting approach that the court must follow.

Plaintiff further has not demonstrated that a single one of the hiring managers for these

positions knew of any of her protected activity, much less failed to hire her because of it.  Rather,

her argument consists primarily of speculation that because many other employees in the

department slated for dissolution successfully posted for positions, while she did not, Lockheed

must have "blackballed" her in order to prevent her from continuing her employment there.

Even drawing all reasonable inferences in Plaintiff's favor, speculation such as Plaintiff's

assertion that "if they wanted you to have a job, they would have found one for you" is

insufficient to survive summary judgment as to these retaliatory termination claims.  <u>See</u> Pl.'s

Opp'n at 38.

---

[37] The five employees are Plaintiff, Ms. Payton, Tynizia Jackman-Davis, Michael David Jeter, and Carolyn
Williams.  <u>See</u> Burkhardt Decl. Exs. 60-61.

Summary judgment will be granted in favor of Lockheed in connection with all of the positions that Plaintiff applied for in or after October 2012, except for the Project Engineering Director position that James Craig was selected for. Because Plaintiff has not established a general retaliatory termination claim, summary judgment will be granted on that claim. The claim that survives in connection with the Project Engineering Director position is a retaliatory failure-to-promote claim, and not any claim of wrongful termination in connection with the position.

## G. Wage Discrimination Claim

Plaintiff has also advanced a claim that her compensation level was discriminatory because her SCA position should have been paid at the same level as the Subcontract Program Manager ("SPM") position. She has asserted that the male employees who occupied the Subcontract Program Manager and Program Manager roles—positions different from Plaintiff's own role at Lockheed— received higher pay for equal work. However, she has produced insufficient evidence that that those positions involved "equal work."

To maintain a wage discrimination claim, a plaintiff must show that "employees . . . were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000). In order for her equal pay claim to survive, she would need to show either that a male employee with the same job—an SCA position, was paid more for equal work, or that the SCA and the PM/SPM position are the same position, not merely positions with some overlapping responsibilities. "Different positions with different qualifications, even if they are superficially comparable, are not 'similarly situated' for purposes of establishing a prima facie

52

wage discrimination claim." Nagle v. RMA, Risk Mgmt. Ass'n, 513 F. Supp. 2d 383, 388-89 (E.D. Pa. 2007). The only evidence in the record that Plaintiff points to establishing that the jobs entail "equal work" is her own affidavit indicating that "[t]he skill set required to perform" the SCA and SPM jobs "are identical." Bell Aff. ¶ 37. She also indicates that she surveyed employees in these two positions and that "those surveyed stated that they did not perceive a difference in the skills or value of the employees based on whether they had been designated as a SCA or SPM." Id. ¶ 38. Her own opinion that the "skill sets" are similar does not establish evidence that the two positions involve equal work. Nor does her reference to her own ill-defined survey or her paraphrased summary of what those surveyed indicated.

Further, even if SCAs and PM/SPMs are paid differently for the same work, Plaintiff has not set forth evidence that the discrepancy is gender-based. Her argument is essentially that SCAs are paid less than PMs and SPMs, although the work responsibilities are similar, and that Lockheed disproportionately "places" women into SCA roles, while disproportionately "placing" males in the PM and SPM roles. However, the record contains no such evidence. While Plaintiff's expert report shows that a higher percentage of males occupy the PM and SPM positions across the company than occupy the SCA positions, Plaintiff has pointed to no evidence that Lockheed "placed" any of them in these positions based upon their gender. See Duttera Aff. 102 Ex. 102, Dr. Bell Report Ex. 12. Plaintiff has not produced any evidence relevant to the candidate pools for these positions, or tending to show that Lockheed prevents female employees from occupying the PM or SPM positions on the basis of their gender. See Johnson v. Penske Truck Leasing Co., 949 F. Supp. 1152, 1177 (D.N.J. 1996) (statistical evidence was not probative "because it fail[ed] to include the gender composition of the qualified

applicant pool for any of the jobs" in which women were allegedly underrepresented); <u>Casseus v. Kessler Inst. of Rehab.</u>, 45 F. App'x 167, 169 (3d Cir. 2002) (a showing of failure to hire individuals in a protected class requires a demonstration that members of the protected class have actually applied for the jobs in question).

## H. Disparate Impact Claims

As Plaintiff has indicated that she has made the decision not to pursue her disparate impact claims, summary judgment will be granted on these.  <u>See</u> Pl.'s Opp'n at 35 n.20.

## IV. CONCLUSION

For the reasons expressed above, Defendant's motion will be **GRANTED IN PART, DENIED IN PART**.  The motion will also be **DENIED** as to Plaintiff's retaliation claim in connection with the Project Engineering Director position she applied for, and as to her retaliation claims in connection with the nine-block chart prepared as part of Lockheed's Talent Review process.  The motion will be **GRANTED** as to the remainder of Plaintiff's discrimination and retaliation claims.  An appropriate Order shall enter.

Dated: 6/27/2014                            s/ Robert B. Kugler
                                               ROBERT B. KUGLER
                                               United States District Judge